**RECORD NO. 18-1827**

In The

# United States Court of Appeals

For The Fourth Circuit

## LULA WILLIAMS; GLORIA TURNAGE;
## GEORGE HENGLE; DOWIN COFFY; FELIX GILLISON, JR.,
**on behalf of themselves and all individuals similarly situated,**

*Plaintiffs – Appellees*,

v.

## BIG PICTURE LOANS, LLC;
## ASCENSION TECHNOLOGIES, LLC,

*Defendants – Appellants*,

**and**

## MATT MARTORELLO; DANIEL GRAVEL;
## JAMES WILLIAMS, JR.; GERTRUDE MCGESHICK;
## SUSAN MCGESHICK; GIIWEGIIZHIGOOKWAY MARTIN,

*Defendants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND**

_____

**JOINT APPENDIX
VOLUME I OF IV
(Pages 1 – 230)**

_____

William H. Hurd
David N. Anthony
Timothy J. St. George
TROUTMAN SANDERS, LLP
1001 Haxall Point
Richmond, Virginia 23219
(804) 697-5410

*Counsel for Appellants*

Justin A. Gray
ROSETTE, LLP
25344 Red Arrow Highway
Mattawan, Michigan 49071
(269) 283-5005

*Counsel for Appellants*

Kristi C. Kelly
Casey S. Nash
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, Virginia 22030
(703) 424-7572

*Counsel for Appellees*

Matthew W. H. Wessler
GUPTA WESSLER PLLC
1900 L Street, N.W., Suite 312
Washington, D.C. 20036
(202) 888-1741

*Counsel for Appellees*

# TABLE OF CONTENTS
## VOLUME I OF IV

**Appendix Page**

Docket Entries.................................................................1

**Class Action Complaint**
    filed June 22, 2017 ..............................................28

**Order of**
**The Honorable Robert E. Payne**
**Re:  Jurisdiction Discovery**
    filed September 1, 2017 .........................................60

**Defendants' Answer to Complaint**
    filed September 29, 2017 ........................................62

**Defendant Martorello's Answer and**
**Affirmative Defenses to Plaintiffs' Complaint**
    filed September 29, 2017 ........................................78

**Transcript of The Conference Call before**
**The Honorable Robert E. Payne**
    on October 16, 2017.............................................105

**Order of**
**The Honorable Robert E. Payne**
**Re:  Denying Defendant Martorello's Motion to Dismiss**
    filed March 12, 2018 ..........................................139

**Order of**
**The Honorable Robert E. Payne**
**Re:  Denying Defendants Big Picture Loans, LLC and**
**Ascension Technologies, Inc.'s Motion to Dismiss**
    filed June 16, 2018 ...........................................141

**Order of**
**The Honorable Robert E. Payne**
**Re:  Denying Defendants' Motion to Dismiss for Failure to State a Claim**
    filed June 26, 2018 ...........................................142

**Defendants Big Picture Loans, LLC and**
**Ascension Technologies, Inc.'s Notice of Appeal**
      **filed July 19, 2018** ........................................................... 145

**Order of**
**The Honorable Robert E. Payne**
**Re: Denying Defendant Big Picture's Motion to**
**Dismiss for Failure to Exhaust Tribal Remedies and**
**Under the Doctrine of Forum Non Conveniens**
      **filed July 25, 2018** ........................................................... 148

**Memorandum Opinion of**
**The Honorable Robert E. Payne**
      **filed July 27, 2018** ........................................................... 150

# TABLE OF CONTENTS
## VOLUME II OF IV – EXHIBITS

**Appendix Page**

**Exhibits to Class Action Complaint
filed June 22, 2017:**

1.  Consent to Electronic Communications
    dated February 15, 2016 ........................................................ 231

2.  Pre-Approval Certificate
    dated February 27, 2017 ........................................................ 237

**Exhibits to Defendants Big Picture Loans, LLC and
Ascension Technologies, Inc.'s Brief in Support of
Motion to Dismiss for Lack of Subject Matter Jurisdiction
filed September 29, 2017:**

**Exhibits:**

1.  The Lac Vieux Desert Band of
    Lake Superior Chippewa Indians Constitution, Preamble
    dated June 18, 1934 ............................................................. 239

2.  Affidavit of Michelle Hazen
    dated September 28, 2017 ...................................................... 261

3.  Resolution No. 2011-053,
    Approval and Adoption of the Amendments to
    Consumer Financial Services Regulatory Code
    dated November 18, 2011 ...................................................... 267

4.  The Lac Vieux Desert Band of Lake Superior
    Chippewa Indians Tribal Consumer Financial
    Services Regulatory Code
    undated ............................................................................. 269

5.  Resolution No. 2011-30,
    Approval and Adoption of the Tribal Lending Regulatory Code
    dated July 8, 2011 ............................................................... 304

Exhibits to Defendants Big Picture Loans, LLC and
Ascension Technologies, Inc.'s Brief in Support of
Motion to Dismiss for Lack of Subject Matter Jurisdiction
    filed September 29, 2017:

<u>Exhibits</u>, continued:

6.    Resolution No. T2014-068,
      Approval and Adoption of the Business Entity Ordinance
            dated August 26, 2014 ......................................................... 306

7.    Lac Vieux Desert Band of Lake Superior
      Chippewa Indians Business Entity Ordinance
            undated ................................................................................ 308

8.    Resolution No. 2011-041,
      Approving the Creation of The Lac Vieux
      Desert Band of Lake Superior Indians Tribal Lending
      Enterprise – Red Rock Tribal Lending, LLC
            dated September 14, 2011 ..................................................... 360

9.    Articles of Organization of the Red Rock Tribal Lending, LLC
            dated September 14, 2011 ..................................................... 362

10.   Resolution No. 2011-066,
      Approving the Creation of the Wholly Owned and
      Operated Tribal Lending Entity – Big Picture Loans, LLC
            dated August 26, 2014 ......................................................... 364

11.   Resolution No. T2015-09,
      Authorizing and Approving First
      Amended Articles of Organization and
      First Amended Operating Agreement of
      Big Picture Loans, LLC to Reflect Tribal Economic
      Development Holdings, LLC as Member
            dated February 4, 2015 ......................................................... 367

12.   First Amended Articles of Organization of
      Big Picture Loans, LLC
            dated February 5, 2015 ......................................................... 369

Exhibits to Defendants Big Picture Loans, LLC and
Ascension Technologies, Inc.'s Brief in Support of
Motion to Dismiss for Lack of Subject Matter Jurisdiction
        filed September 29, 2017:

**Exhibits**, continued:

13.    Resolution No. T2015-08,
       Approving the Creation of the Wholly Owned and
       Operated Tribal Holding Company – Tribal Economic
       Development Holdings, LLC
            dated February 5, 2015 ..................................................... 372

14.    First Amended and Restated Articles of Organization of
       Tribal Economic Development Holdings, LLC
            dated July 7, 2016 ................................................. 375

15.    Resolution No. T2016-047,
       Authorizing and Approving First Amended and
       Restated Articles of Organization and
       First Amended and Restated Operating Agreement of
       Tribal Economic Development Holdings, LLC
            dated July 7, 2016 ................................................. 378

16.    Resolution No. T2015-10,
       Approving the Creation of the
       Wholly Owned and Operated Tribal Servicing
       Entity – Ascension Technologies, LLC
            dated February 5, 2015 ..................................................... 380

17.    First Amended and Restated Articles of Organization of
       Ascension Technologies, LLC
            dated July 7, 2016 ................................................. 384

18.    First Amended and Restated Operating Agreement of
       Ascension Technologies, LLC
            dated July 7, 2016 ................................................. 387

19.    Resolution Number T2015-059
            dated September 14, 2015 ................................................. 397

**Exhibits to Defendants Big Picture Loans, LLC and Ascension Technologies, Inc.'s Brief in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction filed September 29, 2017:**

**Exhibits**, continued:

20. **Resolution Number T2015-060**
    **dated September 14, 2015** ..................................................... 406

21. **Financial Services License of**
    **Big Picture Loans, LLC**
    **dated December 14, 2016** ..................................................... 413

22. **Intratribal Servicing Agreement between**
    **Big Picture Loans, LLC and Ascension Technologies, LLC**
    **dated January 2016** ................................................................ 414

23. **Resolution Number T2016-018**
    **dated February 16, 2016** ....................................................... 428

24. **Assignment and Assumption Agreement**
    **dated February 16, 2016** ....................................................... 431

25. **Big Picture Loans' Template Letter**
    **dated February 17, 2016** ....................................................... 436

26. **Resolution Number T2016-021**
    **dated February 16, 2016** ....................................................... 437

27. **Lac Vieux Desert Band of Lake Superior Chippewa Indians**
    **Articles of Dissolution – Limited Liability Companies**
    **dated February 16 and 17, 2016** ............................................ 441

28. **Notice of Dissolution of Red Rock Tribal Lending, LLC**
    **d/b/a Castle Payday**
    **dated February 17, 2016** ....................................................... 442

Exhibits to Defendants Big Picture Loans, LLC and
Ascension Technologies, Inc.'s Brief in Support of
Motion to Dismiss for Lack of Subject Matter Jurisdiction
  filed September 29, 2017:

**Exhibits,** continued:

29. Letter to
  Tribal Financial Services Regulatory Authority from
  Michelle Hazen
  Re:  Dissolution of Red Rock Tribal Lending, LLC;
  Assignment of Active Loans
   dated August 3, 2016 ........................................... 443

30. Co-Manager Meeting Minutes Hiring Employees
   dated February 2015 ............................................ 447

31. Excerpts of First Amended Operating Agreement of
  Big Picture Loans, LLC
   dated November 30, 2015 ..................................... 457

32. Ascension Technologies, LLC
  Delegation of Authority Policy
   dated January 22, 2016 ......................................... 460

33. First Amended and Restated Operating Agreement of
  Tribal Economic Development Holdings, LLC
   dated July 7, 2016 ................................................ 464

34. Excerpts of First Amended Operating Agreement of
  Big Picture Loans, LLC
   undated ................................................................ 474

35. Resolution Number T2014-096
   dated December 3, 2014 ....................................... 480

36. Affidavit of James Williams, Jr.
   dated September 28, 2017 ..................................... 483

37. Recommendation to Take Action and Request for Approval
   dated January 19, 2017 ......................................... 487

Exhibits to Defendants Big Picture Loans, LLC and
Ascension Technologies, Inc.'s Brief in Support of
Motion to Dismiss for Lack of Subject Matter Jurisdiction
     filed September 29, 2017:

**Exhibits,** continued:

38.   **Resolution Number T2016-048**
          dated July 7, 2016 ................................................................... 503

39.   **Order of**
      **The Virgin Islands of the United States Department of Labor**
      **Hearings and Appeals Unite**
      **Re:  Granting Respondent's Motion and Dismissing**
      **Complainant's Complaint with Prejudice**
          dated August 2, 2016 ............................................................ 505

40.   **Lac Vieux Desert Tribal Court Rules of 2008**
          dated 2008 ............................................................................... 508

41.   **Procedures for the Recognition and Enforcement of**
      **Foreign Court Subpoenas**
          dated December 27, 2013 ..................................................... 732

42.   **Affidavit of Michelle Hazen**
      **Authenticating Big Picture Records**
          dated September 29, 2017 ..................................................... 736

43.   **Affidavit of Gertrude McGeshick**
      **Authenticating Tribal Records**
          dated September 28, 2017 ..................................................... 738

# TABLE OF CONTENTS
## VOLUME III OF IV – EXHIBITS

**Appendix Page**

**Exhibits to Plaintiffs' Memorandum in Opposition to Defendants
Big Picture Loans, LLC and Ascension Technologies, Inc.'s
Motion to Dismiss for Lack of Subject Matter Jurisdiction**
        filed December 7, 2017:

### Exhibits:

2.    Redacted Amended and Restated Servicing Agreement between
        Red Rock Tribal Lending, LLC and Sourcepoint VI, LLC
                dated July 31, 2012 – October 25, 2011 .................................. 743

4.    Redacted Email from
        James Dowd
        Re:  Direct Mail Recommendation Call
                dated June 3, 2014 ................................................................. 782

5.    Redacted Defendant Big Picture Loans, LLC's
        First Amended and Supplemented Response to
        Plaintiff Lula Williams's First Set of Interrogatories
                dated October 11, 2017 ......................................................... 784

6.    Redacted Email to
        Rob Rosette, John McGeshick, Gkway from
        Matt Martorello
        Re:  Meeting with Cheryl Parker Rose at CFPB
                dated January 3, 2014 ........................................................... 798

7.    Redacted Emails between
        Jim Williams and Matt Martorello
        Re:  Contact
                various dates ...................................................................... 807

8.    Redacted Email
                undated ............................................................................ 810

Exhibits to Plaintiffs' Memorandum in Opposition to Defendants
Big Picture Loans, LLC and Ascension Technologies, Inc.'s
Motion to Dismiss for Lack of Subject Matter Jurisdiction
    filed December 7, 2017:

    <u>Exhibits</u>, continued:

9.    Redacted Email to
Karrie Wichtman, Justin Martorello, Brian McFadden from
Matt Martorello
Re: Sale Model
    dated September 11, 2015.....................................................825

10.    Lac Vieux Desert Band of Lake Superior Chippewa Indians
Articles of Dissolution – Limited Liability Companies
    dated January 28, 2016 .......................................................826

11.    Redacted Secured Promissory Note
    dated 2016 ..........................................................................827

12.    Schedule A of The Operating Agreement of
Eventide Credit Acquisitions, LLC
Member Listing/Interest/Percentage Interest
    dated January 27, 2016 .......................................................835

13.    Redacted Defendant Ascension Technologies, LLC's
First Amended and Supplemented Response to
Plaintiff Lula Williams's First Set of Interrogatories
    dated October 11, 2017 .......................................................836

14.    Ascension Technologies, LLC
Delegation of Authority Policy
    dated January 22, 2016 .......................................................850

15.    Redacted Excerpts of Transcript of
Videotaped Deposition of James Williams Jr.
    on November 13, 2017.........................................................853

    Examination by Mr. Guzzo..................................................856

Exhibits to Plaintiffs' Memorandum in Opposition to Defendants
Big Picture Loans, LLC and Ascension Technologies, Inc.'s
Motion to Dismiss for Lack of Subject Matter Jurisdiction
        filed December 7, 2017:

    <u>Exhibits</u>, continued:

16      Redacted Excerpts of Transcript of
        Videotaped Deposition of Susan McGeshick
                on November 14, 2017..........................................................875

                Examination by Mr. Guzzo.................................................878

17.     Redacted Loan and Security Agreement
                dated September 14, 2015 ......................................... 915

18.     Intratribal Servicing Agreement between
        Big Picture Loans, LLC and Ascension Technologies, LLC
                dated February 16, 2016 .......................................... 945

19.     Addendum to Secured Promissory Note
                dated January 1, 2017 ............................................ 959

22.     Redacted Deposit Account Control Agreement
                dated January 2016................................................ 962

23.     Redacted Meeting Minutes
                dated September 21, 2015 ..................................... 973

24.     Redacted Emails between
        Luis Jimenez, Carol Robles, Matt Martorello,
        Simon Liang, and Brian McFadden
        Re:  Eventide Repayment
                various dates ........................................................ 975

25.     Redacted Excerpts of Transcript of
        Videotaped Deposition of Giiwegiizhigookway Martin
                on November 14, 2017........................................1019

                Examination by Mr. Guzzo.................................1022

Exhibits to Plaintiffs' Memorandum in Opposition to Defendants
Big Picture Loans, LLC and Ascension Technologies, Inc.'s
Motion to Dismiss for Lack of Subject Matter Jurisdiction
filed December 7, 2017:

**Exhibits,** continued:

26. **Redacted Excerpts of Transcript of
Videotaped Deposition of Gertrude McGeshick
on November 13, 2017**........................................................**1040**

   **Examination by Mr. Guzzo**.................................................**1043**

27. **Resolution Number T2017-006
dated February 15, 2017** .......................................................**1055**

28. **Resolution Number T2015-867
dated October 7, 2015** ...........................................................**1058**

29. **Resolution Number T2015-068
dated October 7, 2015** ...........................................................**1061**

30. **Redacted Excerpts of Transcript of
Deposition of Michelle Hazen
on October 16, 2017**.............................................................**1064**

   **Examination by Ms. Kelly**...................................................**1068**

31. **Letter to
Bellicose VI Employees from
Brian McFadden
Re:  Changes
dated February 24, 2015** .......................................................**1090**

32. **Redacted Assignment and Assumption Agreement
dated February 16, 2016** ........................................................**1091**

Exhibits to Big Picture Loans and Ascension Technologies' Reply in Support of Its Motion to Dismiss for Lack of Subject Matter Jurisdiction filed December 21, 2017:

**Exhibits:**

1.  Declaration of Matthew Martorello in Support of
    Defendants Big Picture Loans, LLC and
    Ascension Technologies, LLC's Reply in
    Support of Their Motion to Dismiss for
    Lack of Subject Matter Jurisdiction
        dated December 21, 2017 ...................................................1096

2.  Certificate of Authorization of
    U.S. Foreign Limited Liability Company
        dated February 26, 2015 ..................................................... 1113

3.  Defendant Big Picture Loans, LLC's
    Second Amended and Supplemented Response to
    Plaintiff Lula Williams's First Set of Interrogatories
        dated November 3, 2017 ...................................................1132

4.  Redacted Excerpts of Transcript of
    Videotaped Deposition of Giiwegiizhigookway Martin
        on November 14, 2017.........................................................1143

        Examination by Mr. Guzzo................................................1146

5.  Redacted Work History of Tribal Members
        various dates .......................................................................1152

6.  Redacted Excerpts of Transcript of
    Videotaped Deposition of Gertrude McGeshick
        on November 13, 2017.........................................................1156

        Examination by Mr. Guzzo...............................................1159

Exhibits to Big Picture Loans and Ascension Technologies' Reply in Support of Its Motion to Dismiss for Lack of Subject Matter Jurisdiction filed December 21, 2017:

**Exhibits**, continued:

7.     Redacted Excerpts of Transcript of
       Videotaped Deposition of James Williams, Jr.
              on November 13, 2017........................................................1163

              Examination by Mr. Guzzo..................................................1166

8.     Excerpts of Transcript of
       Videotaped Deposition of
       Michelle Hazen
              on October 16, 2017...........................................................1177

              Examination by Ms. Kelly..................................................1181

9.     Recommendation to Take Action and
       Request for Approval
              dated June 7, 2016 .............................................................1191

10.    Meeting Minutes
              dated February 7, 2017......................................................1193

11.    Redacted Excerpts of Transcript of
       Videotaped Deposition of Susan McGeshick
              on November 14, 2017.......................................................1196

              Examination by Mr. Guzzo.................................................1199

12.    Resolutions
              various dates .......................................................................1201

13.    BPL and Ascension Technologies
       Compliance Organization Chart
              undated ...............................................................................1219

14.    AT/BPL Co-Managers Request Log
              various dates .......................................................................1221

**Exhibits to Big Picture Loans and Ascension Technologies' Reply in Support of Its Motion to Dismiss for Lack of Subject Matter Jurisdiction filed December 21, 2017:**

**Exhibits, continued:**

15. **Email to Chairman James Williams from Shelly Hazen**
    dated February 23, 2016 ......................................................1230

16. **Meeting Minutes**
    dated December 1, 2015 ......................................................1232

17. **Filed Under Seal**
    undated ...............................................................................1234

18. **Meeting Minutes**
    dated January 27, 2016 ......................................................1235

19. **Filed Under Seal**
    undated ...............................................................................1238

20. **Meeting Minutes**
    dated February 18, 2015 ......................................................1239

21. **Affidavit of Brian McFadden**
    dated December 21, 2017 ......................................................1242

22. **Redacted Emails between Luis Jimenez, Carol Robles, Simon Liang, Brian McFadden, and Matt Martorello Re:  Eventide Repayment**
    various dates ......................................................................1246

**TABLE OF CONTENTS**
**VOLUME IV OF IV – EXHIBITS**
**UNDER SEAL**

**Appendix Page**

**Exhibits to Defendants Big Picture Loans, LLC and**
**Ascension Technologies, Inc.'s Brief in Support of**
**Motion to Dismiss for Lack of Subject Matter Jurisdiction**
       **filed September 29, 2017:**

       **Exhibits:**

       24.   **Assignment and Assumption Agreement**
                   **dated February 16, 2016** .......................................................1251

       29.   **Letter to**
             **Tribal Financial Services Regulatory Authority from**
             **Michelle Hazen**
             **Re: Dissolution of Red Rock Tribal Lending, LLC;**
             **Assignment of Active Loans**
                   **dated August 3, 2016**............................................................1255

       31.   **Co-Manager Meeting Minutes Hiring Employees**
                   **dated November 30, 2015** ....................................................1258

       34.   **Excerpts of First Amended Operating Agreement of**
             **Big Picture Loans, LLC**
                   **undated** ...............................................................................1260

**Exhibits to Plaintiffs' Memorandum in Opposition to Defendants**
**Big Picture Loans, LLC and Ascension Technologies, Inc.'s**
**Motion to Dismiss for Lack of Subject Matter Jurisdiction**
       **filed December 7, 2017:**

       **Exhibits:**

       1.    **Statement for the Year**
                   **dated December 31, 2015** ....................................................1265

Exhibits to Plaintiffs' Memorandum in Opposition to Defendants
Big Picture Loans, LLC and Ascension Technologies, Inc.'s
Motion to Dismiss for Lack of Subject Matter Jurisdiction
       filed December 7, 2017:

<u>Exhibits</u>, continued:

2.    **Amended and Restated Servicing Agreement between**
       **Red Rock Tribal Lending, LLC and Sourcepoint VI, LLC**
              dated July 31, 2012 – October 25, 2011 ...............................1266

3.    **Red Rock Tribal Lending, LLC Net Profits Calculation**
              various dates .......................................................................1303

4.    **Email to**
       **Gkway and Chairman Williams from**
       **James Dowd**
       **Re:  Direct Mail Recommendation Call**
              dated June 3, 2014 .............................................................1307

5.    **Defendant Big Picture Loans, LLC's**
       **First Amended and Supplemented Response to**
       **Plaintiff Lula Williams's First Set of Interrogatories**
              dated October 11, 2017 .......................................................1308

6.    **Email to**
       **Rob Rosette, John McGeshick, Gkway from**
       **Matt Martorello**
       **Re:  Meeting with Cheryl Parker Rose at CFPB**
              dated January 3, 2014 .........................................................1321

7.    **Emails between**
       **Jim Williams and Matt Martorello**
       **Re:  Contact**
              various dates .......................................................................1329

Exhibits to Plaintiffs' Memorandum in Opposition to Defendants
Big Picture Loans, LLC and Ascension Technologies, Inc.'s
Motion to Dismiss for Lack of Subject Matter Jurisdiction
        filed December 7, 2017:

**Exhibits,** continued:

8.      Email to
        Karrie Wichtman, Justin Martorello, Brian McFadden from
        Matt Martorello
        Re:  Sale Model
                dated September 11, 2015.....................................................1331

11.     Secured Promissory Note
                dated 2016 ...........................................................................1345

13.     Defendant Ascension Technologies, LLC's
        First Amended and Supplemented Response to
        Plaintiff Lula Williams's First Set of Interrogatories
                dated October 11, 2017 .......................................................1352

15.     Excerpts of Transcript of
        Videotaped Deposition of James Williams, Jr.
                on November 13, 2017.........................................................1365

                Examination by Mr. Guzzo................................................1367

16.     Excerpts of Transcript of
        Videotaped Deposition of Susan McGeshick
                on November 14, 2017.........................................................1386

                Examination by Mr. Guzzo................................................1388

17.     Loan and Security Agreement
                dated September 14, 2015 ..................................................1425

20.     Tribal Distribution Sheet
                various dates ........................................................................1454

21.     Business Plan
                various dates ........................................................................1460

Exhibits to Plaintiffs' Memorandum in Opposition to Defendants
Big Picture Loans, LLC and Ascension Technologies, Inc.'s
Motion to Dismiss for Lack of Subject Matter Jurisdiction
    filed December 7, 2017:

**Exhibits,** continued:

22.    **Deposit Account Control Agreement**
           dated January 2016............................................................1461

23.    **Meeting Minutes**
           dated September 21, 2015 ..................................................1471

24.    **Emails between**
       **Luis Jimenez, Carol Robles, Matt Martorello,**
       **Simon Liang, and Brian McFadden**
       **Re: Eventide Repayment**
           various dates .......................................................................1472

25.    **Excerpts of Transcript of**
       **Videotaped Deposition of Giiwegiizhigookway Martin**
           on November 14, 2017.........................................................1515

           Examination by Mr. Guzzo................................................1517

26.    **Excerpts of Transcript of**
       **Videotaped Deposition of Gertrude McGeshick**
           on November 13, 2017.........................................................1535

           Examination by Mr. Guzzo................................................1537

30.    **Excerpts of Transcript of**
       **Deposition of Michelle Hazen**
           on October 16, 2017.............................................................1549

           Examination by Ms. Kelly...................................................1552

32.    **Assignment and Assumption Agreement**
           dated February 16, 2016 .....................................................1574

Exhibits to Plaintiffs' Opposition to
Defendant Big Picture Loans, LLC's Brief in
Support of its Motion to Dismiss for Failure to
Exhaust Tribal Remedies and Under the Doctrine of
*Forum Non Conveniens*
    filed December 7, 2017:

<u>Exhibits:</u>

1.    **Emails between**
      **Justin Martorello, Brian McFadden, Karrie Wichtman,**
      **Tanya Gibbs, Matt Martorello, Jim Williams and Shelly Hazen**
      **Re:  LVD Regulatory Office**
              **dated June 10, 2015** ...........................................................1578

2.    **Emails between**
      **Brian McFadden, Justin Martorello, and Matt Martorello**
      **Re:  Standing Bi-Monthly Meeting**
              **dated June 9, 2015** .............................................................1582

3.    **Email from**
      **Tanya Gibbs to**
      **Shelly Hazen, Jim Williams, Karrie Wichtman,**
      **Justin Gray, and Ken Akini**
      **Re:  August Bi-Monthly Caucus Meeting**
              **dated August 17, 2015** ........................................................1586

4.    **Excerpts of Transcript of**
      **Videotaped Deposition of James Williams, Jr.**
              **on November 13, 2017**.........................................................1587

              **Examination by Mr. Guzzo**................................................1589

5.    **Excerpts of Transcript of**
      **Videotaped Deposition of Susan McGeshick**
              **on November 14, 2017**.........................................................1592

              **Examination** ........................................................................1593

Exhibits to Plaintiffs' Opposition to
Defendant Big Picture Loans, LLC's Brief in
Support of its Motion to Dismiss for Failure to
Exhaust Tribal Remedies and Under the Doctrine of
*Forum Non Conveniens*
      filed December 7, 2017:

     Exhibits, continued:

6.     Excerpts of Transcript of Deposition of
      Michelle Hazen
          on October 16, 2017.............................................1596

          Examination by Ms. Kelly..................................1599

Exhibits to Big Picture Loans and Ascension Technologies' Reply in
Support of Its Motion to Dismiss for Lack of Subject Matter Jurisdiction
      filed December 21, 2017:

     Exhibits:

3.     Defendant Big Picture Loans, LLC's
      Second Amended and Supplemented Response to
      Plaintiff Lula William's First Set of Interrogatories
          dated November 3, 2017 .....................................1602

4.     Excerpts of Transcript of Videotaped Deposition of
      Giiwegiizhigookway Martin
          on November 14, 2017........................................1612

          Examination by Mr. Guzzo.................................1614

5.     Work History of Tribal Members
          various dates .......................................................1620

6.     Excerpts of Transcript of
      Videotaped Deposition of Gertrude McGeshick
          on November 13, 2017........................................1623

          Examination by Mr. Guzzo.................................1625

Exhibits to Big Picture Loans and Ascension Technologies' Reply in Support of Its Motion to Dismiss for Lack of Subject Matter Jurisdiction filed December 21, 2017:

**Exhibits**, continued:

7.    Excerpts of Transcript of
      Videotaped Deposition of James Williams, Jr.
            on November 13, 2017......................................................1629

            Examination by Mr. Guzzo.................................................1631

11.   Excerpts of Transcript of
      Videotaped Deposition of Susan McGeshick
            on November 14, 2017......................................................1642

            Examination by Mr. Guzzo.................................................1644

13.   BPL and Ascension Technologies
      Compliance Organization Chart
            undated ...........................................................................1646

17.   Big Picture Loans Employee Handbook
            dated January 1, 2017 .......................................................1647

19.   Ascension Technologies, LLC's Employee Handbook
            dated January, 2016..........................................................1685

22.   Emails between
      Luis Jimenez, Carol Robles, Simon Liang,
      Brian McFadden, and Matt Martorello
      Re: Eventide Repayment
            various dates ...................................................................1721

APPEAL,JURY,PROTO

# U.S. District Court
## Eastern District of Virginia – (Richmond)
## CIVIL DOCKET FOR CASE #: 3:17–cv–00461–REP–RCY

Williams et al v. Big Picture Loans, LLC et al
Assigned to: District Judge Robert E. Payne
Referred to: Magistrate Judge Roderick C. Young
        Magistrate Judge David J. Novak (Settlement)
 related Cases:  3:18–mc–00001–REP
                4:18–cv–00075–HCM–RJK
                3:18–cv–00100–REP
 Case in other court:  USCA, 18–01827
Cause: 28:1331 Fed. Question: Racketeering (RICO) Act

Date Filed: 06/22/2017
Jury Demand: Plaintiff
Nature of Suit: 470 Racketeer/Corrupt Organization
Jurisdiction: Federal Question

**Plaintiff**

**Lula Williams**
*on behalf of themselves and all individuals similarly situated*

represented by

**Kristi Cahoon Kelly**
Kelly & Crandall PLC
3925 Chain Bridge Road
Suite 202
Fairfax, VA 22030
703–424–7570
Fax: 703–591–9285
Email: kkelly@kellyandcrandall.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Joseph Guzzo**
Kelly & Crandall PLC
3925 Chain Bridge Road
Suite 202
Fairfax, VA 22030
703–424–7576
Fax: 703–591–0167
Email: aguzzo@kellyandcrandall.com
*ATTORNEY TO BE NOTICED*

**Beth Ellen Terrell**
Terrell Marshall Law Group PLLC
936 North 34th St
Suite 300
Seattle, WA 98103–6689
**NA**
(206) 816–6603
Fax: (206) 319–5450
Email: bterrell@terrellmarshall.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Casey Shannon Nash**
Kelly & Crandall PLC
3925 Chain Bridge Road
Suite 202
Fairfax, VA 22030
703–640–3334
Fax: 703–591–9285
Email: casey@kellyandcrandall.com
*ATTORNEY TO BE NOTICED*

**Eleanor Michelle Drake**
Berger & Montague PC
43 S.E. Main Street

Suite 505
Minneapolis, MN 55414
**NA**
(612) 594–5999
Fax: (612) 584–4470
Email: emdrake@bm.net
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Anne Adams**
Terrell Marshall Law Group PLLC
936 North 34th St
Suite 300
Seattle, WA 98103–6689
**NA**
(206) 816–6603
Fax: (206) 319–5450
Email: eadams@terrellmarshall.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth W. Hanes**
Consumer Litigation Associates
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
(757) 930–3660
Fax: (757) 930–3662
Email: elizabeth@clalegal.com
*ATTORNEY TO BE NOTICED*

**James Wilson Speer**
Virginia Proverty Law Center
919 E Main Street
Suite 610
Richmond, VA 23219
804–782–9430
Fax: (804) 649–0974
Email: jay@vplc.org
*ATTORNEY TO BE NOTICED*

**Jennifer Rust Murray**
Terrell Marshall Law Group PLLC
936 North 34th St
Suite 300
Seattle, WA 98103–6689
**NA**
(206) 816–6603
Fax: (206) 319–5450
Email: jmurray@terrellmarshall.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Gerard Albanese**
Berger & Montague PC
43 S.E. Main Street
Suite 505
Minneapolis, MN 55414
**NA**
(612) 594–5999
Fax: (612) 584–4470
Email: jalbanese@bm.net
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

-2-

**Leonard Anthony Bennett**
Consumer Litigation Associates
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
757–930–3660
Fax: 757–930–3662
Email: lenbennett@clalegal.com
*ATTORNEY TO BE NOTICED*

**Matthew William Wessler**
Gupta Wessler PLLC
1900 L Street NW
Suite 312
Washington, DC 20036
**NA**
(202) 888–1741
Fax: (202) 888–7792
Email: matt@guptawessler.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Gloria Turnage** | represented by | **Kristi Cahoon Kelly**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Andrew Joseph Guzzo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Beth Ellen Terrell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Casey Shannon Nash**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eleanor Michelle Drake**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Anne Adams**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth W. Hanes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Wilson Speer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Rust Murray**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Gerard Albanese**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leonard Anthony Bennett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

George Hengle                    represented by   **Kristi Cahoon Kelly**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Joseph Guzzo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Beth Ellen Terrell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Casey Shannon Nash**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eleanor Michelle Drake**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Anne Adams**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth W. Hanes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Wilson Speer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Rust Murray**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Gerard Albanese**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leonard Anthony Bennett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew William Wessler**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

-4-

**Plaintiff**

**Dowin Coffy**                    represented by     **Kristi Cahoon Kelly**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Andrew Joseph Guzzo**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Beth Ellen Terrell**
                                                      (See above for address)
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Casey Shannon Nash**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Eleanor Michelle Drake**
                                                      (See above for address)
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Elizabeth Anne Adams**
                                                      (See above for address)
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Elizabeth W. Hanes**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **James Wilson Speer**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Jennifer Rust Murray**
                                                      (See above for address)
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **John Gerard Albanese**
                                                      (See above for address)
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Leonard Anthony Bennett**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Matthew William Wessler**
                                                      (See above for address)
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Felix Gillison, Jr.**            represented by     **Kristi Cahoon Kelly**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Andrew Joseph Guzzo**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Beth Ellen Terrell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Casey Shannon Nash**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eleanor Michelle Drake**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Anne Adams**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth W. Hanes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Wilson Speer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Rust Murray**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Gerard Albanese**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leonard Anthony Bennett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew William Wessler**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Big Picture Loans, LLC**                    represented by **David Neal Anthony**
Troutman Sanders LLP (Richmond)
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23218
804−697−5410
Fax: 804−698−5118
Email: david.anthony@troutmansanders.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin Alexander Gray**
Rosette, LLP

25344 Red Arrow Highway
Mattawan, MI 49071
NA
269–283–5005
Fax: 517–916–6443
Email: jgray@rosettelaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karrie Sue Wichtman**
Rosette, LLP
25344 Red Arrow Highway
Mattawan, MI 49071
NA
269–283–5005
Fax: 517–913–6443
Email: kwichtman@rosettelaw.com
*TERMINATED: 08/21/2018*
*PRO HAC VICE*

**Timothy James St. George**
Troutman Sanders LLP (Richmond)
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23218
804–697–1254
Email: tim.stgeorge@troutmansanders.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Matt Martorello**                    represented by    **David Neal Anthony**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Foster Herman**
Montgomery McCracken Walker &
Rhoads LLP
123 S Broad St
Philadelphia, PA 19109
**NA**
215–772–1500
Fax: 215–772–7620
Email: dherman@mmwr.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Hugh McCoy Fain , III**
Spotts Fain PC
411 E Franklin St
PO Box 1555
Richmond, VA 23218–1555
(804) 788–1190
Email: hfain@spottsfain.com
*ATTORNEY TO BE NOTICED*

**John Michael Erbach**
Spotts Fain PC
411 E Franklin St
Suite 600
Richmond, VA 23219
804–697–2044
Fax: 804–697–2144

Email: jerbach@spottsfain.com
*ATTORNEY TO BE NOTICED*

**Jonathan Peter Boughrum**
Montgomery McCracken Walker &
Rhoads LLP
123 S Broad St
Philadelphia, PA 19109
**NA**
215–772–7228
Fax: 215–731–3804
Email: jboughrum@mmwr.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maurice Francis Mullins**
Spotts Fain PC
411 E Franklin St
Suite 600
Richmond, VA 23219
(804) 697–2000
Fax: (804) 697–2169
Email: cmullins@spottsfain.com
*ATTORNEY TO BE NOTICED*

**Richard Lawrence Scheff**
Montgomery McCracken Walker &
Rhoads LLP
123 S Broad St
Philadelphia, PA 19109
**NA**
215–772–7502
Fax: 215–772–7620
Email: rscheff@mmwr.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy James St. George**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ascension Technologies, Inc.**          represented by **David Neal Anthony**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin Alexander Gray**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karrie Sue Wichtman**
(See above for address)
*TERMINATED: 08/21/2018*
*PRO HAC VICE*

**Timothy James St. George**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Daniel Gravel**          represented by **David Neal Anthony**
*TERMINATED: 10/18/2017*          (See above for address)

-8-

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**James Williams, Jr.**
*TERMINATED: 04/05/2018*

represented by **David Neal Anthony**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin Alexander Gray**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karrie Sue Wichtman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy James St. George**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Gertrude McGeshick**
*TERMINATED: 04/05/2018*

represented by **David Neal Anthony**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin Alexander Gray**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karrie Sue Wichtman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy James St. George**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Susan McGeshick**
*TERMINATED: 04/05/2018*

represented by **David Neal Anthony**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin Alexander Gray**
Rosette, LLP
25344 Red Arrow Highway
Mattawan, MI 49071
**NA**
269–283–5005
Fax: 517–916–6443
Email: jgray@rosettelaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karrie Sue Wichtman**
Rosette, LLP
25344 Red Arrow Highway

Mattawan, MI 49071
**NA**
269–283–5005
Fax: 517–913–6443
Email: kwichtman@rosettelaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy James St. George**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Giiwegiizhigookway Martin**          represented by **David Neal Anthony**
*TERMINATED: 04/05/2018*                (See above for address)
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

                                        **Justin Alexander Gray**
                                        (See above for address)
                                        *PRO HAC VICE*
                                        *ATTORNEY TO BE NOTICED*

                                        **Karrie Sue Wichtman**
                                        (See above for address)
                                        *PRO HAC VICE*
                                        *ATTORNEY TO BE NOTICED*

                                        **Timothy James St. George**
                                        (See above for address)
                                        *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/22/2017 | 1 | COMPLAINT against All Defendants (Filing fee: $400, receipt number: 0422–5585119) filed by George Hengle, Felix Gillison, Jr, Lula Williams, Dowin Coffy, and Gloria Turnage. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Civil Cover Sheet) (jsmi, ) (Entered: 06/23/2017) |
| 06/23/2017 | 2 | Summons Issued as to All Defendants. NOTICE TO ATTORNEY: Print out two electronically issued summons and one copy of the attachments for each defendant to be served with the complaint. (jsmi, ) (Entered: 06/23/2017) |
| 06/30/2017 | 3 | WAIVER OF SERVICE Returned Executed as to all defendants waiver sent on 6/29/2017, answer due 8/28/2017. (Attachments: # 1 Letter) (jsmi, ) (Entered: 07/03/2017) |
| 07/14/2017 | 4 | Certificate of Compliance as to All Defendants. See 3 Waiver of Service Returned Executed for answer deadline. (jsmi, ) (Entered: 07/14/2017) |
| 07/25/2017 | 5 | Motion to appear Pro Hac Vice by Karrie Sue Wichtman and Certification of Local Counsel David N. Anthony Filing fee $ 75, receipt number 0422–5633481. by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (Anthony, David) (Entered: 07/25/2017) |
| 07/25/2017 | 6 | Motion to appear Pro Hac Vice by Justin Alexander Gray and Certification of Local Counsel David N. Anthony Filing fee $ 75, receipt number 0422–5633503. by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (Anthony, David) (Entered: 07/25/2017) |
| 07/28/2017 | 7 | ORDER granting 5 Motion for Pro hac vice and 6 Motion for Pro hac vice. Karrie Sue Wichtman and Justin Alexander Gray for Giiwegiizhigookway Martin, Susan McGeshick, Ascension Technologies, Inc., Big Picture Loans, LLC, Gertrude |

| | | McGeshick, James Williams, Jr. Signed by District Judge Robert E. Payne on 7/28/2017. (jsmi, ). Modified to add additional defendants on 8/7/2017 (nbrow). (Entered: 07/28/2017) |
|---|---|---|
| 08/28/2017 | 8 | Consent MOTION for Extension of Time to File Answer by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (Attachments: # 1 Exhibit 1 (Proposed Order))(Anthony, David) (Entered: 08/28/2017) |
| 08/28/2017 | 9 | Consent MOTION for Extension of Time to File Answer by Matt Martorello. (Attachments: # 1 Exhibit 1 (Proposed Order))(Anthony, David) (Entered: 08/28/2017) |
| 08/28/2017 | 10 | Consent MOTION for Extension of Time to File Answer by Daniel Gravel. (Attachments: # 1 Exhibit 1 (Proposed Order))(Anthony, David) (Entered: 08/28/2017) |
| 08/28/2017 | 11 | Motion to appear Pro Hac Vice by David Foster Herman and Certification of Local Counsel David N. Anthony Filing fee $ 75, receipt number 0422–5685554. by Matt Martorello. (Anthony, David) (Entered: 08/28/2017) |
| 08/29/2017 | 12 | Motion to appear Pro Hac Vice by Richard Lawrence Scheff and Certification of Local Counsel David N. Anthony Filing fee $ 75, receipt number 0422–5686427. by Matt Martorello. (Anthony, David) (Entered: 08/29/2017) |
| 08/29/2017 | 13 | Motion to appear Pro Hac Vice by Jonathan Peter Boughrum and Certification of Local Counsel David N. Anthony Filing fee $ 75, receipt number 0422–5686442. by Matt Martorello. (Anthony, David) (Entered: 08/29/2017) |
| 08/30/2017 | 14 | ORDER granting 12 Motion for Richard Lawrence Scheff to appear as Pro Hac Vice for Matt Martorello. Signed by District Judge Robert E. Payne on 8/29/2017. (sbea, ) (Entered: 08/30/2017) |
| 08/30/2017 | 15 | ORDER granting 13 Motion for Jonathan Peter Boughrum to appear as Pro Hac Vice for Matt Martorello. Signed by District Judge Robert E. Payne on 8/29/2017. (sbea, ) (Entered: 08/30/2017) |
| 08/30/2017 | 16 | ORDER granting 11 Motion for David Foster Herman to appear as Pro Hac Vice for Matt Martorello. Signed by District Judge Robert E. Payne on 8/30/2017. (sbea, ) (Entered: 08/30/2017) |
| 08/30/2017 | | Minute Entry for proceedings held before District Judge Robert E. Payne:Telephone Conference held on 8/30/2017. (Court Reporter Peppy Peterson, OCR.)(khan, ) (Entered: 09/08/2017) |
| 09/01/2017 | 17 | ORDER that Defendants' several CONSENT MOTIONS FOR EXTENSION OF TIME TO FILE RESPONSIVE PLEADINGS (ECF Nos. 8 , 9 , and 10 ) are denied. Defendants shall file their Answers to the Complaint by September 29, 2017. Furthermore, it is ORDERED that Defendants shall file any motions to dismiss by September 29, 2017; Plaintiffs shall respond by October 31, 2017, and Defendants shall reply by November 8, 2017. Furthermore, it is ORDERED that Plaintiffs shall submit to Defendants any discovery requests respecting the Court's jurisdiction over the Defendants by September 14, 2017, and Defendants shall submit to Plaintiffs any discovery requests respecting the Court's jurisdiction by September 29, 2017. Furthermore, it is ORDERED that Plaintiffs shall, as necessary, conduct depositions concerning the Court's jurisdiction over Defendants by October 31, 2017. It is so ORDERED. Signed by District Judge Robert E. Payne on 8/31/2017. (sbea, ) (SEE ORDER 42 AMENDING DEADLINES entered on 10/10/17. Modified on 10/11/2017 (jtho, ). (Entered: 09/01/2017) |
| 09/20/2017 | 18 | Joint MOTION for Protective Order by Ascension Technologies, Inc., Big Picture Loans, LLC, Daniel Gravel, Giiwegiizhigookway Martin, Matt Martorello, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (Attachments: # 1 Exhibit 1 (Proposed Stipulated Protective Order))(Anthony, David) (Entered: 09/20/2017) |
| 09/22/2017 | 19 | STIPULATED PROTECTIVE ORDER. See Order for details. Signed by District Judge Robert E. Payne on 9/22/2017. (Attachments: # 1 Exhibit A) (jsmi, ) (Entered: 09/22/2017) |

| 09/28/2017 | 20 | NOTICE of Appearance by Casey Shannon Nash on behalf of Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams (Nash, Casey) (Entered: 09/28/2017) |
|---|---|---|
| 09/29/2017 | 21 | Consent MOTION for Extension of Time to File Response/Reply *Pleadings* by Daniel Gravel. (Attachments: # 1 Exhibit 1)(Anthony, David) (Entered: 09/29/2017) |
| 09/29/2017 | 22 | MOTION to Dismiss for Lack of Jurisdiction by Ascension Technologies, Inc., Big Picture Loans, LLC. (Anthony, David) (Entered: 09/29/2017) |
| 09/29/2017 | 23 | Memorandum in Support re 22 MOTION to Dismiss for Lack of Jurisdiction filed by Ascension Technologies, Inc., Big Picture Loans, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 30, # 30 Exhibit 31, # 31 Exhibit 32, # 32 Exhibit 33, # 33 Exhibit 34, # 34 Exhibit 35, # 35 Exhibit 36, # 36 Exhibit 37, # 37 Exhibit 38, # 38 Exhibit 39, # 39 Exhibit 40, # 40 Exhibit 41, # 41 Exhibit 42, # 42 Exhibit 43, # 43 Exhibit 44)(Anthony, David) (Attachment 19 replaced on 10/2/2017) (jsmi, ). (Attachment 33 replaced on 10/2/2017) (jsmi, ). (Attachment 36 replaced on 10/2/2017) (jsmi, ). (Attachment 34 replaced on 10/2/2017) (jsmi, ). (Attachment 37 replaced on 10/2/2017) (jsmi, ). (Attachment 4 replaced on 11/21/2017 per Order 81 entered on 11/21/17) (jtho, ). (Attachment 24 replaced on 7/27/2018) (jsmi, ). (Attachment 29 replaced on 7/27/2018) (jsmi, ). (Attachment 31 replaced on 7/27/2018) (jsmi, ). (Attachment 34 replaced on 7/27/2018) (jsmi, ). (Entered: 09/29/2017) |
| 09/29/2017 | 24 | MOTION to Dismiss for Failure to State a Claim by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (Anthony, David) (Entered: 09/29/2017) |
| 09/29/2017 | 25 | Memorandum in Support re 24 MOTION to Dismiss for Failure to State a Claim filed by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (Anthony, David) (Entered: 09/29/2017) |
| 09/29/2017 | 26 | MOTION to Dismiss *for Failure to Exhaust Tribal Remedies and Under the Doctrine of Forum Non Conveniens* by Big Picture Loans, LLC. (Anthony, David) (Entered: 09/29/2017) |
| 09/29/2017 | 27 | Memorandum in Support re 26 MOTION to Dismiss *for Failure to Exhaust Tribal Remedies and Under the Doctrine of Forum Non Conveniens* filed by Big Picture Loans, LLC. (Anthony, David) (Entered: 09/29/2017) |
| 09/29/2017 | 28 | MOTION to Dismiss for Lack of Jurisdiction *(Subject Matter Jurisdiction, Personal Jurisdiction, and Article III Standing)* by Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (Anthony, David) (Entered: 09/29/2017) |
| 09/29/2017 | 29 | Memorandum in Support re 28 MOTION to Dismiss for Lack of Jurisdiction *(Subject Matter Jurisdiction, Personal Jurisdiction, and Article III Standing)* filed by Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (Attachments: # 1 Affidavit G. McGeshick, # 2 Affidavit J. Williams, # 3 Affidavit S. McGeshick, # 4 Affidavit G. Martin)(Anthony, David) (Entered: 09/29/2017) |
| 09/29/2017 | 30 | ANSWER to 1 Complaint, by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr.(Anthony, David) (Entered: 09/29/2017) |
| 09/29/2017 | 31 | MOTION to Seal by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (Anthony, David) (Entered: 09/29/2017) |
| 09/29/2017 | 32 | Memorandum in Support re 31 MOTION to Seal filed by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, |

| | | Susan McGeshick, James Williams, Jr. (Attachments: # 1 Appendix 1, # 2 Exhibit 1)(Anthony, David) (Entered: 09/29/2017) |
| --- | --- | --- |
| 09/29/2017 | 33 | Notice of Filing Sealing Motion LCvR5(C) by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr re 28 MOTION to Dismiss for Lack of Jurisdiction *(Subject Matter Jurisdiction, Personal Jurisdiction, and Article III Standing)*, 24 MOTION to Dismiss for Failure to State a Claim , 26 MOTION to Dismiss *for Failure to Exhaust Tribal Remedies and Under the Doctrine of Forum Non Conveniens*, 22 MOTION to Dismiss for Lack of Jurisdiction (Anthony, David) (Entered: 09/29/2017) |
| 09/29/2017 | 34 | Sealed Attachment/Exhibit(s). (Attachments: # 1 Exhibit 2, # 2 Exhibit 19, # 3 Exhibit 20, # 4 Exhibit 22, # 5 Exhibit 24, # 6 Exhibit 30, # 7 Exhibit 32, # 8 Exhibit 33, # 9 Exhibit 35, # 10 Exhibit 36, # 11 Exhibit 38)(Anthony, David) (Entered: 09/29/2017) |
| 09/29/2017 | 35 | ANSWER to 1 Complaint, by Matt Martorello.(Anthony, David) (Entered: 09/29/2017) |
| 09/29/2017 | 36 | MOTION to Dismiss for Failure to State a Claim by Matt Martorello. (Anthony, David) (Entered: 09/29/2017) |
| 09/29/2017 | 37 | Memorandum in Support re 36 MOTION to Dismiss for Failure to State a Claim filed by Matt Martorello. (Anthony, David) (Entered: 09/29/2017) |
| 10/02/2017 | 38 | Financial Interest Disclosure Statement (Local Rule 7.1) by Big Picture Loans, LLC. (Anthony, David) (Entered: 10/02/2017) |
| 10/02/2017 | 39 | Financial Interest Disclosure Statement (Local Rule 7.1) by Ascension Technologies, Inc.. (Anthony, David) (Entered: 10/02/2017) |
| 10/03/2017 | 40 | ORDER that 21 CONSENT MOTION FOR EXTENSION OF TIME TO FILE RESPONSIVE PLEADINGS is granted. It is further ORDERED that the defendant, Daniel Gravel, shall file his Answer and any other motions with respect to the Complaint by October 13, 2017. Signed by District Judge Robert E. Payne on 10/2/2017. (jsmi, ) (Entered: 10/03/2017) |
| 10/09/2017 | 41 | Joint MOTION for Extension of Time to File Response/Reply as to 28 MOTION to Dismiss for Lack of Jurisdiction *(Subject Matter Jurisdiction, Personal Jurisdiction, and Article III Standing)*, 24 MOTION to Dismiss for Failure to State a Claim , 36 MOTION to Dismiss for Failure to State a Claim , 26 MOTION to Dismiss *for Failure to Exhaust Tribal Remedies and Under the Doctrine of Forum Non Conveniens*, 22 MOTION to Dismiss for Lack of Jurisdiction *to Extend Briefing Schedule* by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Matt Martorello, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (Attachments: # 1 Exhibit 1 (Proposed Order))(Anthony, David) (Entered: 10/09/2017) |
| 10/11/2017 | 42 | ORDER having considered the Joint Motion to Extend Briefing Schedule and for good cause shown, it is hereby ORDERED that the Joint Motion to Extend Briefing Schedule 41 is granted. It is further ORDERED that the Order 17 entered on September 1, 2017 is amended to reflect that plaintiffs shall file their response to the motions to dismiss by November 3, 2017 and the defendants shall file their replies by November 11, 2017. In all other respects the Order entered on September 1, 2017 shall remain unaffected and shall continue in full force and effect. Signed by District Judge Robert E. Payne on 10/10/17. (jtho, ) (Entered: 10/11/2017) |
| 10/11/2017 | 43 | ORDER that having considered DEFENDANTS BIG PICTURE LOANS, LLC, ASCENSIONTECHNOLOGIES, LLC, JAMES WILLIAMS, JR., GERTRUDE MCGESHICK, SUSANMCGESHICK, AND GIIWEGIIZHIGOOKWAY MARTIN'S Motion to Seal 31 and for good cause shown and the requirements of Local Civil Rule 5 having been met, it is hereby ORDERED that the Motion to Seal 31 is GRANTED and certain exhibits 34 to the pleadings as outlined in the Order are filed under seal provided that appropriately redacted versions thereof are filed in the public record. (SEE ORDER FOR DETAILS). Signed by District Judge Robert E. Payne on 10/10/17. (Entered: 10/11/2017) |
| 10/12/2017 | 44 | ORDER that any disputes related to the parties' discovery concerning the Court's jurisdiction over the Defendants are referred to United States Magistrate Judge Roderick C. Young for disposition. Signed by District Judge Robert E. Payne on |

| | | |
|---|---|---|
| | | 10/11/2017. (jsmi, ) (Entered: 10/12/2017) |
| 10/12/2017 | | Case referred to Magistrate Judge Roderick C. Young. (jsmi, ) (Entered: 10/12/2017) |
| 10/13/2017 | 45 | VACATED PER 47 ORDER ENTERED ON 10/16/2017 – ORDER that the parties file a joint motion – in accordance with this Order – addressing the current discovery disputes no later than 10 days from the entry of this Order. The parties are reminded that discovery disputes requiring judicial intervention are strongly disfavored and that the Court will consider imposing sanctions pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37 against any party not acting in good faith to resolve a dispute before involving the Court. See Order for details. Signed by Magistrate Judge Roderick C. Young on 10/13/2017. (jsmi, ) Modified on 10/16/2017 (jsmi, ). (Entered: 10/13/2017) |
| 10/13/2017 | 46 | Joint MOTION to Voluntarily Dismiss *(Defendant Daniel Gravel)* by Daniel Gravel. (Attachments: # 1 Exhibit 1 (Proposed Dismissal Order))(Anthony, David) (Entered: 10/13/2017) |
| 10/16/2017 | 47 | ORDER that the Court hereby vacates 45 Order previously issued on October 13, 2017. See Order for details. Signed by Magistrate Judge Roderick C. Young on 10/16/2017. (jsmi, ) (Entered: 10/16/2017) |
| 10/16/2017 | 48 | TRANSCRIPT of proceedings held on October 16, 2017, before Judge Robert E. Payne, Court Reporter Peppy Peterson, Telephone number 804–916–2267. **NOTICE RE REDACTION OF TRANSCRIPTS: The parties have thirty (30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 11/15/2017. Redacted Transcript Deadline set for 12/18/2017. Release of Transcript Restriction set for 1/16/2018.**(peterson, peppy) (Entered: 10/16/2017) |
| 10/16/2017 | | Minute Entry for proceedings held before District Judge Robert E. Payne:Telephone Conference held on 10/16/2017. (Court Reporter Peppy Peterson, OCR.)(khan, ) (Entered: 11/02/2017) |
| 10/18/2017 | 49 | ORDER that Plaintiffs' motion for waiver of the privileges claimed in Defendants' attorney–client and work–product privilege logs and their supporting brief shall be filed by October 23, 2017; Defendants' response shall be filed by October 30, 2017, and Plaintiffs' reply shall be filed by November 8, 2017; Documents relating to the vendors of Big Picture Loans,LLC, may be produced in redacted form; All documents concerning the capital sources of Big Picture Loans, LLC, shall be produced in un–redacted form, and Defendants' objection to providing documents relating to the structure and operation of the business is OVERRULED; Defendants' objection to Plaintiffs ' subpoenas on the ground that they are intended to frustrate business operations is OVERRULED; All of Defendants' discovery requests are stricken, with the exception of Defendants' depositions of Plaintiffs; Defendants' request for a limitation on discovery to "Tier One" only is DENIED as premature; The provisions of this Court's 42 ORDER of October 11, 2017 requiring Plaintiffs to file their responses to Defendants' motions to dismiss by November 3, 2017 and Defendants to file their replies by November 11, 2017 shall be held in suspension until the parties have conferred with respect to the discovery required by this ORDER and a new schedule can be determined. See Order for additional details and deadlines. Signed by District Judge Robert E. Payne on 10/17/2017. (jsmi, ) (Entered: 10/18/2017) |
| 10/18/2017 | 50 | DISMISSAL ORDER. It is, hereby ORDERED, ADJUDGED, and DECREED that the Complaint against DANIEL GRAVEL is DISMISSED without prejudice. Signed by District Judge Robert E. Payne on 10/17/2017. (jsmi, ) (Entered: 10/18/2017) |
| 10/23/2017 | 51 | MOTION to Compel *Documents Withheld on the Basis of Attorney–Client Privilege* by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Proposed Order)(Kelly, Kristi) (Entered: 10/23/2017) |

| 10/23/2017 | 52 | Memorandum in Support re 51 MOTION to Compel *Documents Withheld on the Basis of Attorney–Client Privilege* filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Exhibit 1 – Oct. 2 Privilege Log, # 2 Exhibit 2 – Oct. 10 Privilege Log, # 3 Exhibit 3 – Oct. 13 Privilege Log, # 4 Exhibit 4 – July 2012 Amended & Restated Servicing Agreement (Redacted), # 5 Exhibit 5 – BPL's Interrogatory Responses (Redacted), # 6 Exhibit 6 – Resume of James Dowd (Redacted), # 7 Exhibit 7 – Sept. 2015 Loan and Security Agreement (Redacted), # 8 Exhibit 8 – Ascension Employee List (Redacted), # 9 Exhibit 9 – Feb. 2015 Letter from McFadden (Redacted), # 10 Exhibit 10 – Promissory Note (Redacted), # 11 Exhibit 11 – Sept. 14, 2015 Agreement and Plan of Merger (Redacted))(Kelly, Kristi) (Entered: 10/23/2017) |
| 10/23/2017 | 53 | MOTION to Seal by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Proposed Order)(Kelly, Kristi) (Entered: 10/23/2017) |
| 10/23/2017 | 54 | Notice of Filing Sealing Motion LCvR5(C) by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams re 53 MOTION to Seal (Kelly, Kristi) (Entered: 10/23/2017) |
| 10/23/2017 | 55 | Sealed Memorandum in Support re 53 MOTION to Seal . (Kelly, Kristi) (Entered: 10/23/2017) |
| 10/23/2017 | 56 | Sealed Attachment/Exhibit(s) re 53 MOTION to Seal . (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit)(Kelly, Kristi) (Entered: 10/23/2017) |
| 10/23/2017 | 57 | Memorandum in Support re 53 MOTION to Seal filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Kelly, Kristi) (Entered: 10/23/2017) |
| 10/24/2017 | 58 | NOTICE of Appearance by Timothy James St. George on behalf of Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Matt Martorello, Gertrude McGeshick, Susan McGeshick, James Williams, Jr (St. George, Timothy) (Entered: 10/24/2017) |
| 10/24/2017 | 59 | Joint MOTION for Entry of Agreed Order by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Exhibit 1. Agreed Order)(Kelly, Kristi) (Entered: 10/24/2017) |
| 10/26/2017 | 60 | AGREED ORDER. It is ORDERED that the deadlines set forth in the Court's September 1, 2017 17 Order regarding the Defendants' motions to dismiss are hereby AMENDED as follows: Plaintiffs shall respond to the Defendants' motions to dismiss by December 7, 2017, and Defendants shall file their replies by December 21, 2017. Signed by District Judge Robert E. Payne on 10/26/2017. (jsmi, ) (Entered: 10/26/2017) |
| 10/27/2017 | 61 | MOTION for Protective Order *to Protect Privileged Attorney–Client Communications* by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (St. George, Timothy) (Entered: 10/27/2017) |
| 10/27/2017 | 62 | Memorandum in Support re 61 MOTION for Protective Order *to Protect Privileged Attorney–Client Communications* filed by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (Attachments: # 1 Exhibit A)(St. George, Timothy) (Entered: 10/27/2017) |
| 10/30/2017 | 63 | RESPONSE in Support re 53 MOTION to Seal filed by Matt Martorello. (St. George, Timothy) (Entered: 10/30/2017) |
| 10/30/2017 | 64 | RESPONSE in Support re 53 MOTION to Seal filed by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (St. George, Timothy) (Entered: 10/30/2017) |
| 10/30/2017 | 65 | Memorandum in Opposition re 51 MOTION to Compel *Documents Withheld on the Basis of Attorney–Client Privilege* filed by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, |

| | | |
|---|---|---|
| | | James Williams, Jr. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(St. George, Timothy) (Entered: 10/30/2017) |
| 10/30/2017 | 66 | Second MOTION to Seal by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (St. George, Timothy) (Entered: 10/30/2017) |
| 10/30/2017 | 67 | Memorandum in Support re 66 Second MOTION to Seal filed by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (Attachments: # 1 Appendix 1)(St. George, Timothy) (Entered: 10/30/2017) |
| 10/30/2017 | 68 | Notice of Filing Sealing Motion LCvR5(C) by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr re 66 Second MOTION to Seal (St. George, Timothy) (Entered: 10/30/2017) |
| 10/30/2017 | 69 | Sealed Response/Reply/Opposition. (Attachments: # 1 Exhibit 2, # 2 Exhibit 3, # 3 Exhibit 4, # 4 Exhibit 5, # 5 Certificate of Service)(St. George, Timothy) (Entered: 10/30/2017) |
| 11/02/2017 | 70 | ORDER that the plaintiffs' 53 MOTION TO SEAL is granted in part and denied in part. The Motion is granted with respect to the PLAINTIFFS' 55 MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DOCUMENTS WITHHELD ON THE BASIS OF ATTORNEY−CLIENT PRIVILEGE and Exhibits 4, 5, 7, 8, 9, 10, and 11 thereto and those documents are filed under seal; provided that appropriately redacted versions thereof are filed in the public record. The plaintiffs' MOTION TO SEAL is denied with respect Exhibit 6, the Resume of James V. Dowd, and the plaintiffs are directed to file a version of the resume redacting the personal identifiers of Mr. Dowd forthwith. Signed by District Judge Robert E. Payne on 11/1/2017. (jsmi, ) (Entered: 11/02/2017) |
| 11/08/2017 | 71 | REPLY to Response to Motion re 51 MOTION to Compel *Documents Withheld on the Basis of Attorney−Client Privilege* filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Kelly, Kristi) (Entered: 11/08/2017) |
| 11/08/2017 | 72 | Memorandum in Opposition re 61 MOTION for Protective Order *to Protect Privileged Attorney−Client Communications* filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Kelly, Kristi) (Entered: 11/08/2017) |
| 11/09/2017 | 73 | ORDER granting 66 TRIBAL DEFENDANTS' Motion to Seal MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL and Exhibits 2, 3, 4, and 5 thereto provided that appropriately redacted versions thereof are filed in the public record. It is so ORDERED. Signed by District Judge Robert E. Payne on 11/09/2017. (nbrow) (Entered: 11/09/2017) |
| 11/17/2017 | 74 | MOTION For Leave to Replace Exhibit No. 4 re 23 Memorandum in Support,,,, *(Unopposed)* by Ascension Technologies, Inc., Big Picture Loans, LLC. (St. George, Timothy) (Entered: 11/17/2017) |
| 11/17/2017 | 75 | Memorandum in Support re 74 MOTION For Leave to Replace Exhibit No. 4 re 23 Memorandum in Support,,,, *(Unopposed)* filed by Ascension Technologies, Inc., Big Picture Loans, LLC. (Attachments: # 1 Exhibit A)(St. George, Timothy) (Entered: 11/17/2017) |
| 11/20/2017 | 76 | REPLY to Response to Motion re 61 MOTION for Protective Order *to Protect Privileged Attorney−Client Communications* filed by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(St. George, Timothy) (Entered: 11/20/2017) |
| 11/20/2017 | 77 | MOTION Leave to File Sur−Reply in Opposition to Plaintiffs' Motion to Compel re 52 Memorandum in Support,,, by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (St. George, Timothy) (Entered: 11/20/2017) |

| 11/20/2017 | 78 | Memorandum in Support re 77 MOTION Leave to File Sur–Reply in Opposition to Plaintiffs' Motion to Compel re 52 Memorandum in Support,,, filed by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (Attachments: # 1 Exhibit A)(St. George, Timothy) (Entered: 11/20/2017) |
|---|---|---|
| 11/21/2017 | 79 | Memorandum in Opposition re 77 MOTION Leave to File Sur–Reply in Opposition to Plaintiffs' Motion to Compel re 52 Memorandum in Support,,, filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Kelly, Kristi) (Entered: 11/21/2017) |
| 11/21/2017 | 80 | REPLY to Response to Motion re 77 MOTION Leave to File Sur–Reply in Opposition to Plaintiffs' Motion to Compel re 52 Memorandum in Support,,, filed by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (St. George, Timothy) (Entered: 11/21/2017) |
| 11/21/2017 | 81 | ORDER having considered the Unopposed 74 Motion for Leave to Replace Exhibit, 23–4, and there being no objection, it is hereby ORDERED that the Clerk is directed to substitute the corrected Exhibit (ECF No. 75–1) in place of Exhibit 4 (ECF No. 23–4) to Big Picture Loans, LLC and Ascension Technologies, Inc.'s Brief in Support of their Motion to Dismiss for Lack of Subject Matter Jurisdiction. Signed by District Judge Robert E. Payne on 11/21/17. (jtho, ) (Entered: 11/21/2017) |
| 11/27/2017 | 82 | NOTICE by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams re 70 Order on Motion to Seal,, *(Notice of Filing Regarding Plaintiffs' Motion to Seal)* (Attachments: # 1 Exhibit (Redacted Amended Servicing Agreement), # 2 Exhibit (Redacted Interrogatory Responses), # 3 Exhibit (Redacted Resume of James Dowd), # 4 Exhibit (Redacted Loan and Security Agreement), # 5 Exhibit (Redacted Ascension Employee List), # 6 Exhibit (Unredacted Feb. 2015 Letter), # 7 Exhibit (Redacted Promissory Note), # 8 Exhibit (Redacted Plan of Merger))(Kelly, Kristi) (Entered: 11/27/2017) |
| 12/07/2017 | 83 | Memorandum in Opposition re: 22 MOTION to Dismiss for Lack of Subject Matter Jurisdiction filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit, # 25 Exhibit, # 26 Exhibit, # 27 Exhibit, # 28 Exhibit, # 29 Exhibit, # 30 Exhibit, # 31 Exhibit, # 32 Exhibit). (Kelly, Kristi). Modified docket entry on 12/08/2017. (walk, ). (Attachment 5 replaced on 2/22/2018) (jsmi, ). (Attachment 2 replaced on 7/27/2018) (jsmi, ). (Attachment 4 replaced on 7/27/2018) (jsmi, ). (Attachment 5 replaced on 7/27/2018) (jsmi, ). (Attachment 6 replaced on 7/27/2018) (jsmi, ). (Attachment 7 replaced on 7/27/2018) (jsmi, ). (Attachment 8 replaced on 7/27/2018) (jsmi, ). (Attachment 11 replaced on 7/27/2018) (jsmi, ). (Attachment 13 replaced on 7/27/2018) (jsmi, ). (Attachment 15 replaced on 7/27/2018) (jsmi, ). (Attachment 16 replaced on 7/27/2018) (jsmi, ). (Attachment 17 replaced on 7/27/2018) (jsmi, ). (Attachment 22 replaced on 7/27/2018) (jsmi, ). (Attachment 23 replaced on 7/27/2018) (jsmi, ). (Attachment 24 replaced on 7/27/2018) (jsmi, ). (Attachment 25 replaced on 7/27/2018) (jsmi, ). (Attachment 26 replaced on 7/27/2018) (jsmi, ). (Attachment 30 replaced on 7/27/2018) (jsmi, ). (Attachment 32 replaced on 7/27/2018) (jsmi, ). (Entered: 12/07/2017) |
| 12/07/2017 | 84 | Memorandum in Opposition re 24 MOTION to Dismiss for Failure to State a Claim filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Kelly, Kristi) (Entered: 12/07/2017) |
| 12/07/2017 | 85 | Memorandum in Opposition re 36 MOTION to Dismiss for Failure to State a Claim filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Exhibit 1 – Excerpt of Hearing Transcript)(Kelly, Kristi) (Entered: 12/07/2017) |
| 12/07/2017 | 86 | Memorandum in Opposition re: 26 MOTION to Dismiss *for Failure to Exhaust Tribal Remedies and Under the Doctrine of Forum Non Conveniens* filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit). (Kelly, Kristi). |

| | | |
|---|---|---|
| | | Modified docket entry on 12/08/2017. (walk, ). (Entered: 12/07/2017) |
| 12/07/2017 | 87 | Memorandum in Opposition re 28 MOTION to Dismiss for Lack of Jurisdiction *(Subject Matter Jurisdiction, Personal Jurisdiction, and Article III Standing)* filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Kelly, Kristi) (Entered: 12/07/2017) |
| 12/07/2017 | 88 | MOTION to Seal *83 Memorandum in Opposition re: 22 MOTION to Dismiss for Lack of Subject Matter Jurisdiction* by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Proposed Order). (Kelly, Kristi). Modified docket entry on 12/08/2017. (walk, ). (Entered: 12/07/2017) |
| 12/07/2017 | 89 | Notice of Filing Sealing Motion LCvR5(C) by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams re 88 MOTION to Seal (Kelly, Kristi) (Entered: 12/07/2017) |
| 12/07/2017 | 90 | Sealed Memorandum in Opposition to 22 MOTION to Dismiss for Lack of Subject Matter Jurisdiction re: 88 MOTION to Seal. (Kelly, Kristi). Modified docket entry on 12/08/2017. (walk, ). (Entered: 12/07/2017) |
| 12/07/2017 | 91 | Sealed Exhibits re: 90 Sealed Memorandum in Opposition to 22 MOTION to Dismiss for Lack of Subject Matter Jurisdiction re: 88 MOTION to Seal. (Attachments: # 1 Exhibit #2 to Plaintiffs' Opposition, # 2 Exhibit #3 to Plaintiffs' Opposition, # 3 Exhibit #4 to Plaintiffs' Opposition, # 4 Exhibit #5 to Plaintiffs' Opposition, # 5 Exhibit #6 to Plaintiffs' Opposition, # 6 Exhibit #7 to Plaintiffs' Opposition, # 7 Exhibit #8 to Plaintiffs' Opposition, # 8 Exhibit #9 to Plaintiffs' Opposition, # 9 Exhibit #10 to Plaintiffs' Opposition, # 10 Exhibit #11 to Plaintiffs' Opposition, # 11 Exhibit #12 to Plaintiffs' Opposition, # 12 Exhibit #13 to Plaintiffs' Opposition, # 13 Exhibit #14 to Plaintiffs' Opposition, # 14 Exhibit #15 to Plaintiffs' Opposition, # 15 Exhibit #16 to Plaintiffs' Opposition, # 16 Exhibit #17 to Plaintiffs' Opposition, # 17 Exhibit #18 to Plaintiffs' Opposition, # 18 Exhibit #19 to Plaintiffs' Opposition, # 19 Exhibit #20 to Plaintiffs' Opposition, # 20 Exhibit #21 to Plaintiffs' Opposition, # 21 Exhibit #22 to Plaintiffs' Opposition, # 22 Exhibit #23 to Plaintiffs' Opposition, # 23 Exhibit #24 to Plaintiffs' Opposition, # 24 Exhibit #25 to Plaintiffs' Opposition, # 25 Exhibit #26 to Plaintiffs' Opposition, # 26 Exhibit #27 to Plaintiffs' Opposition, # 27 Exhibit #28 to Plaintiffs' Opposition, # 28 Exhibit #29 to Plaintiffs' Opposition, # 29 Exhibit #30 to Plaintiffs' Opposition, # 30 Exhibit #31 to Plaintiffs' Opposition, # 31 Exhibit #32 to Plaintiffs' Opposition). (Kelly, Kristi). Modified docket entry on 12/08/2017. (walk, ). (Attachment 4 replaced on 2/22/2018) (jsmi, ). (Entered: 12/07/2017) |
| 12/07/2017 | 92 | Memorandum in Support re 88 MOTION to Seal filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Kelly, Kristi) (Entered: 12/07/2017) |
| 12/07/2017 | 93 | MOTION to Seal *86 Memorandum in Opposition re: 26 MOTION to Dismiss for Failure to Exhaust Tribal Remedies and Under the Doctrine of Forum Non Conveniens* by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Proposed Order). (Kelly, Kristi). Modified docket entry on 12/08/2017. (walk, ). (Entered: 12/07/2017) |
| 12/07/2017 | 94 | Notice of Filing Sealing Motion LCvR5(C) by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams re 93 Second MOTION to Seal (Kelly, Kristi) (Entered: 12/07/2017) |
| 12/07/2017 | 95 | Sealed Memorandum in Opposition re: 26 MOTION to Dismiss *for Failure to Exhaust Tribal Remedies and Under the Doctrine of Forum Non Conveniens* re: 93 MOTION to Seal. (Kelly, Kristi). Modified docket entry on 12/08/2017. (walk, ). (Entered: 12/07/2017) |
| 12/07/2017 | 96 | Sealed Exhibits re: 95 Sealed Memorandum in Opposition re: 26 MOTION to Dismiss *for Failure to Exhaust Tribal Remedies and Under the Doctrine of Forum Non Conveniens* re: 93 MOTION to Seal. (Attachments: # 1 Exhibit #2 to Plaintiffs' Opposition, # 2 Exhibit #3 to Plaintiffs' Opposition, # 3 Exhibit #4 to Plaintiffs' Opposition, # 4 Exhibit #5 to Plaintiffs' Opposition, # 5 Exhibit #6 to Plaintiffs' Opposition). (Kelly, Kristi). (Entered: 12/07/2017) |

| 12/07/2017 | 97 | Memorandum in Support re: 93 MOTION to Seal filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Kelly, Kristi). Modified docket entry on 12/08/2017. (walk, ). (Entered: 12/07/2017) |
| 12/21/2017 | 98 | REPLY to Response to Motion re 36 MOTION to Dismiss for Failure to State a Claim filed by Matt Martorello. (St. George, Timothy) (Entered: 12/21/2017) |
| 12/21/2017 | 99 | REPLY to Response to Motion re 24 MOTION to Dismiss for Failure to State a Claim filed by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (Anthony, David) (Entered: 12/21/2017) |
| 12/21/2017 | 100 | REPLY to Response to Motion re 26 MOTION to Dismiss *for Failure to Exhaust Tribal Remedies and Under the Doctrine of Forum Non Conveniens* filed by Big Picture Loans, LLC. (Anthony, David) (Entered: 12/21/2017) |
| 12/21/2017 | 101 | REPLY to Response to Motion re 28 MOTION to Dismiss for Lack of Jurisdiction *(Subject Matter Jurisdiction, Personal Jurisdiction, and Article III Standing)* filed by Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (Anthony, David) (Entered: 12/21/2017) |
| 12/21/2017 | 102 | REPLY to Response to Motion re 22 MOTION to Dismiss for Lack of Jurisdiction filed by Ascension Technologies, Inc., Big Picture Loans, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22)(Anthony, David) (Attachment 3 replaced on 7/27/2018) (jsmi, ). (Attachment 4 replaced on 7/27/2018) (jsmi, ). (Attachment 5 replaced on 7/27/2018) (jsmi, ). (Attachment 6 replaced on 7/27/2018) (jsmi, ). (Attachment 7 replaced on 7/27/2018) (jsmi, ). (Attachment 11 replaced on 7/27/2018) (jsmi, ). (Attachment 13 replaced on 7/27/2018) (jsmi, ). (Attachment 22 replaced on 7/27/2018) (jsmi, ). (Entered: 12/21/2017) |
| 12/21/2017 | 103 | MOTION to Seal by Ascension Technologies, Inc., Big Picture Loans, LLC. (Anthony, David) (Entered: 12/21/2017) |
| 12/21/2017 | 104 | Memorandum in Support re 103 MOTION to Seal filed by Ascension Technologies, Inc., Big Picture Loans, LLC. (Attachments: # 1 Appendix 1)(Anthony, David) (Entered: 12/21/2017) |
| 12/21/2017 | 105 | Notice of Filing Sealing Motion LCvR5(C) by Ascension Technologies, Inc., Big Picture Loans, LLC re 103 MOTION to Seal (Anthony, David) (Entered: 12/21/2017) |
| 12/21/2017 | 106 | Sealed Response/Reply/Opposition. (Attachments: # 1 Exhibit 1, # 2 Exhibit 3, # 3 Exhibit 4, # 4 Exhibit 5, # 5 Exhibit 6, # 6 Exhibit 7, # 7 Exhibit 8, # 8 Exhibit 9, # 9 Exhibit 10, # 10 Exhibit 11, # 11 Exhibit 12, # 12 Exhibit 13, # 13 Exhibit 14, # 14 Exhibit 17, # 15 Exhibit 19, # 16 Exhibit 20, # 17 Exhibit 21, # 18 Exhibit 22, # 19 Certificate of Service)(Anthony, David) (Entered: 12/21/2017) |
| 12/28/2017 | 107 | ORDER that the plaintiffs' 88 MOTION TO SEAL is granted and PLAINTIFFS' 83 MEMORANDUM IN OPPOSITION TO DEFENDANTS BIG PICTURE LOANS, LLC AND ASCENSION TECHNOLOGIES, INC.'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION and Exhibits 1–30, and 32 thereto are filed under seal; provided that appropriately redacted versions thereof are filed in the public record. Signed by District Judge Robert E. Payne on 12/28/2017. (jsmi, ) (Entered: 12/28/2017) |
| 12/28/2017 | 108 | ORDER that the plaintiffs' 93 SECOND MOTION TO SEAL is granted and PLAINTIFFS' 95 OPPOSITION TO DEFENDANT BIG PICTURE LOANS, LLC'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO EXHAUST TRIBAL REMEDIES AND UNDER THE DOCTRINE OF FORUM NON CONVENIENS and 96 Exhibits 1, 2, 3, 4, 5 and 6 thereto are filed under seal; provided that appropriately redacted versions thereof are filed in the public record. Signed by District Judge Robert E. Payne on 12/28/2017. (jsmi, ) (Entered: 12/28/2017) |

| 01/03/2018 | 109 | NOTICE by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr re 73 Order on Motion to Seal, (*Notice of Filing Regarding Defendants' Motion to Seal)* (Attachments: # 1 Exhibit 2 (Redacted), # 2 Exhibit 3, # 3 Exhibit 4 (Redacted), # 4 Exhibit 5 (Redacted))(St. George, Timothy) (Entered: 01/03/2018) |
|---|---|---|
| 01/03/2018 | 110 | ORDER that 103 TRIBAL DEFENDANTS' THIRD MOTION TO SEAL is granted and 106 BIG PICTURE LOANS AND ASCENSION TECHNOLOGIES' REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION and certain exhibits thereto are filed under seal; provided that appropriately redacted versions thereof are filed in the public record. Signed by District Judge Robert E. Payne on 1/3/2018. (cgar, ) (Entered: 01/03/2018) |
| 01/12/2018 | 111 | ORDER re submissions made by the defendants, Big Picture Loans, LLC, Ascension Technologies, LLC, James Williams, Jr., Gertrude McGeshick, Susan McGeshick, and Giiwegiizhiigookway Martin, respecting claims of privilege. It is hereby ORDERED that the claims of privilege are sustained, overruled, or modified as outlined. Documents as to which the claims of privilege have been overruled in whole or in part shall be produced to plaintiffs' counsel by January 20, 2018. See Order for details. Signed by District Judge Robert E. Payne on 1/12/2018. (jsmi, ) (Entered: 01/12/2018) |
| 02/02/2018 | 112 | MOTION for Leave to File *Supplemental Authority* by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Proposed Order)(Kelly, Kristi) (Entered: 02/02/2018) |
| 02/02/2018 | 113 | Memorandum in Support re 112 MOTION for Leave to File *Supplemental Authority* filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Exhibit 1 – Memorandum Opinion in Pennsylvania v. Think Finance, # 2 Exhibit 2 – Finding of Fact and Conclusion of Law in CFPB v. CashCall)(Kelly, Kristi) (Entered: 02/02/2018) |
| 02/06/2018 | 114 | Response to 112 MOTION for Leave to File *Supplemental Authority* filed by Ascension Technologies, Inc., Big Picture Loans, LLC, Giiwegiizhigookway Martin, Gertrude McGeshick, Susan McGeshick, James Williams, Jr. (St. George, Timothy) (Entered: 02/06/2018) |
| 02/08/2018 | 115 | Response to 114 Response, filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Kelly, Kristi) (Entered: 02/08/2018) |
| 02/27/2018 | 116 | ORDER that the following motions are denied as moot: PLAINTIFFS' 51 MOTION TO COMPEL DOCUMENTS WITHHELD ON THE BASIS OF ATTORNEY–CLIENT PRIVILEGE; DEFENDANTS 61 MOTION FOR PROTECTIVE ORDER TO PROTECT PRIVILEGED ATTORNEY–CLIENT COMMUNICATIONS; and TRIBAL DEFENDANTS' 77 MOTION FOR LEAVE TO FILE SUR–REPLY. See Order for details. Signed by District Judge Robert E. Payne on 2/27/2018. (jsmi, ) (Entered: 02/27/2018) |
| 03/12/2018 | 117 | ORDER that defendants' 24 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED is granted in part and taken under advisement in part. The motion is taken under advisement to the extent that Big Picture Loans, LLC and Ascension Technologies, Inc. seek dismissal under Rule 12(b)(6). However, the motion is granted to the extent that the Tribal Officer Defendants seek dismissal under Rule 12(b)(6. By April 5, 2018, Plaintiffs may file an Amended Complaint as to the Tribal Officer Defendants; and the Tribal Officer Defendants shall, by April 30, 2018, file their Answers thereto and any motions respecting the adequacy of the Amended Complaint. It is further ORDERED that the facts and legal contentions are adequately presented in the materials before the Court and oral argument would not aid the decisional process. See Order for details. Signed by District Judge Robert E. Payne on 3/9/2018. (jsmi, ) (Entered: 03/12/2018) |
| 03/12/2018 | 118 | ORDER that Plaintiffs' 112 MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY is granted. Signed by District Judge Robert E. Payne on 3/9/2018. (jsmi, ) (Entered: 03/12/2018) |
| 03/12/2018 | 119 | ORDER that 36 MOTION OF DEFENDANT MATT MARTORELLO TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12 is denied. It is further ORDERED that the facts and legal contentions are adequately presented in the materials before the Court and oral argument would not aid the decisional process. See |

| | | Order for details. Signed by District Judge Robert E. Payne on 3/12/2018. (jsmi, ) (Entered: 03/12/2018) |
|---|---|---|
| 03/12/2018 | 120 | ORDER that DEFENDANTS JAMES WILLIAMS, JR., GERTRUDE MCGESHICK, SUSAN MCGESHICK, AND GIIWEGIIZHIGOOKWAY MARTIN'S 28 MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, PERSONAL JURISDICTION, AND ARTICLE III STANDING is denied as moot. The Tribal Officer Defendants shall file any motions regarding the Court's lack of jurisdiction based on the Amended Complaint by April 30, 2018. Signed by District Judge Robert E. Payne on 3/12/2018. (jsmi, ) (Entered: 03/12/2018) |
| 04/04/2018 | 121 | NOTICE of Voluntary Dismissal *Without Prejudice as to the Tribal Officials* by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams (Kelly, Kristi) (Entered: 04/04/2018) |
| 04/05/2018 | 122 | ORDER that Plaintiffs' 121 notice shall be construed as a notice of its intent not to file an Amended Complaint against the Tribal Officer Defendants. Accordingly, those defendants may be terminated as defendants in this action (please see Order for additional information.) It is so ORDERED. Signed by District Judge Robert E. Payne on 04/04/2018. (walk, ) (Entered: 04/05/2018) |
| 06/25/2018 | 123 | ORDER that the foregoing documents will be unsealed unless the Defendants demonstrate by 5:00 p.m., June 28, 2018 that there are valid reasons for keeping the documents under seal in perspective of the rights of public access to court documents under the common law and the First Amendment, especially those that are key to an understanding of a court decision on an important issue. Signed by District Judge Robert E. Payne on 6/25/2018. (jsmi, ) (Entered: 06/25/2018) |
| 06/26/2018 | 124 | ORDER that DEFENDANTS BIG PICTURE LOANS AND ASCENSION TECHNOLOGIES' 22 MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION is denied. It is further ORDERED that the facts and legal contentions are adequately presented in the materials before the Court and oral argument would not aid the decisional process. As all pending motions to dismiss have been resolved, it is further ORDERED that the parties shall communicate with chambers to set a pretrial and trial schedule in this action. Signed by District Judge Robert E. Payne on 6/26/2018. (jsmi, ) (Entered: 06/26/2018) |
| 06/26/2018 | 125 | ORDER that DEFENDANTS BIG PICTURE LOANS, LLC, ASCENSION TECHNOLOGIES, LLC, JAMES WILLIAMS, JR., GERTRUDE MCGESHICK, SUSAN MCGESHICK, AND GIIWEGIIZHIGOOKWAY MARTIN'S 24 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED is denied as to Big Picture and Ascension. It is further ORDERED that the facts and legal contentions are adequately presented in the materials before the Court and oral argument would not aid the decisional process. Signed by District Judge Robert E. Payne on 6/26/2018. (jsmi, ) (Entered: 06/26/2018) |
| 06/28/2018 | 126 | MOTION To File an Opinion Under Seal or, Alternatively, to Permanently Seal 37 Documents by Ascension Technologies, Inc., Big Picture Loans, LLC. (Anthony, David) (Entered: 06/28/2018) |
| 06/28/2018 | 127 | Memorandum in Support re 126 MOTION To File an Opinion Under Seal or, Alternatively, to Permanently Seal 37 Documents filed by Ascension Technologies, Inc., Big Picture Loans, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Anthony, David) (Entered: 06/28/2018) |
| 07/03/2018 | 128 | ORDER SETTING PRETRIAL CONFERENCE. *See for complete details*. Signed by Nikki Brown with the permission of District Judge Robert E. Payne on 07/03/2018. (nbrow) (Entered: 07/03/2018) |
| 07/03/2018 | 129 | SCHEDULING ORDER: Initial Pretrial Conference set for 7/24/2018 at 11:45 AM in Richmond Judges Chamber before District Judge Robert E. Payne. *See for complete details*. Signed by Nikki Brown with the permission of District Judge Robert E. Payne on 07/03/2018. (Attachment: # 1 Schedule A) (nbrow) (Entered: 07/03/2018) |
| 07/03/2018 | 131 | AMENDED PER ORDER 132 ORDER that TRIBAL DEFENDANTS' 126 MOTION TO FILE AN OPINION UNDER SEAL OR, ALTERNATIVELY, TO PERMANENTLY SEAL 37 DOCUMENTS is granted to the extent that the Tribal |

| | | |
|---|---|---|
| | | Defendants seek to have the Memorandum Opinion regarding DEFENDANTS BIG PICTURE LOANS AND ASCENSION TECHNOLOGIES' 22 MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION temporarily filed under seal. The Clerk is directed to file the Memorandum Opinion under seal, and to provide counsel for Plaintiffs, Big Picture, and Ascension with copies of the Opinion. The Opinion will remain sealed for 14 days. See Order for additional details. Signed by District Judge Robert E. Payne on 7/3/2018. (jsmi, ) Modified on 7/5/2018 (tjoh, ). (Entered: 07/03/2018) |
| 07/05/2018 | 132 | ORDER. Having reconsidered the process described in the Court's previous ORDER (EOF No. 131), it is hereby ORDERED that the Order is amended such that any notebook submitted to the Court for in camera review shall also be provided to Plaintiffs, which may review the notebook consistent with the STIPULATED PROTECTIVE ORDER (EOF No. 19). If Plaintiffs have any response to the request that certain documents remain sealed, they shall respond within ten (10) days of the submission of the notebook, and the party requesting redaction shall reply within three (3) days thereof. Signed by District Judge Robert E. Payne on 07/03/2018. (tjoh, ) (Entered: 07/05/2018) |
| 07/17/2018 | 133 | Response to 131 Order on Motion for Miscellaneous Relief,, filed by Ascension Technologies, Inc., Big Picture Loans, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(St. George, Timothy) (Entered: 07/17/2018) |
| 07/17/2018 | 134 | NOTICE by Ascension Technologies, Inc., Big Picture Loans, LLC re 132 Order,, *of Submission of Documents for In Camera Review Pursuant to the Court's July 3, 2018 Order* (St. George, Timothy) (Entered: 07/17/2018) |
| 07/19/2018 | 135 | NOTICE OF APPEAL as to 124 Order on Motion to Dismiss/Lack of Jurisdiction,, by Ascension Technologies, Inc., Big Picture Loans, LLC. Filing fee $ 505, receipt number 0422–6185152. (St. George, Timothy) (Entered: 07/19/2018) |
| 07/20/2018 | 136 | ORDER that the Initial Pretrial Conference scheduled for 11:45 a.m. July 24, 2018 is rescheduled to 11:30 a.m. July 25, 2018. Signed by District Judge Robert E. Payne on 7/19/2018. (jsmi, ) (Entered: 07/20/2018) |
| 07/20/2018 | | Reset Hearing: Initial Pretrial Conference set for 7/25/2018 at 11:30 AM in Richmond Judges Chamber before District Judge Robert E. Payne. (nbrow) (Entered: 07/20/2018) |
| 07/20/2018 | 137 | MOTION to Stay *Proceedings Pending Appeal* by Ascension Technologies, Inc., Big Picture Loans, LLC. (St. George, Timothy) (Entered: 07/20/2018) |
| 07/20/2018 | 138 | Memorandum in Support re 137 MOTION to Stay *Proceedings Pending Appeal* filed by Ascension Technologies, Inc., Big Picture Loans, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I)(St. George, Timothy) (Entered: 07/20/2018) |
| 07/20/2018 | 139 | Transmission of Notice of Appeal to US Court of Appeals re 135 Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (lgar, ) (Entered: 07/20/2018) |
| 07/23/2018 | | USCA Case Number 18–1827, Case Manager Cathy Herb for 135 Notice of Appeal filed by Big Picture Loans, LLC, Ascension Technologies, Inc.. (lgar, ) (Entered: 07/23/2018) |
| 07/24/2018 | 140 | MOTION to Stay by Matt Martorello. (St. George, Timothy) (Entered: 07/24/2018) |
| 07/24/2018 | 141 | Memorandum in Support re 140 MOTION to Stay filed by Matt Martorello. (St. George, Timothy) (Entered: 07/24/2018) |
| 07/25/2018 | | Minute Entry for proceedings held before District Judge Robert E. Payne: Initial Pretrial Conference held on 7/25/2018. (Court Reporter Peppy Peterson, OCR.) (nbrow) (Entered: 07/25/2018) |
| 07/25/2018 | 142 | ORDER that DEFENDANT BIG PICTURE LOANS, LLC'S 26 MOTION TO DISMISS FOR FAILURE TO EXHAUST TRIBAL REMEDIES AND UNDER THE DOCTRINE OF FORUM NON CONVENIENS is denied. It is further ORDERED that the facts and legal contentions are adequately presented in the materials before the Court and oral argument would not aid the decisional process. See Order for details. |

| | | |
|---|---|---|
| | | Signed by District Judge Robert E. Payne on 7/24/2018. (jsmi, ) (Entered: 07/25/2018) |
| 07/25/2018 | 143 | ORDER that the Clerk shall unseal entirely the following documents: ECF Nos. 34, 34–1, 34–2, 34–3, 34–4, 34–8, 34–10, 34–11, 90, 91–8, 91–9, 91–11, 91–13, 91–17, 91–18, 91–26, 91–27, 91–28, 91–30, 106, 106–1, 106–7, 106–8, 106–9, 106–11, 106–13, 106–16, and 106–17. Furthermore, it is ORDERED that Plaintiffs or Big Picture and Ascension whichever party originally filed the document noted shall re–file the following documents with redactions consistent with those described: ECF Nos. 23–24, 23–29, 23–31, 23–34, 83–2, 83–4, 83–5, 83–6, 83–7, 83–8, 83–11, 83–13, 83–15, 83–16, 83–17, 83–22, 83–23, 83–24, 83–25, 83–26, 83–30, 83–32, 102–3, 102–4, 102–5, 102–6, 102–7, 102–11, 102–13, and 102–22. All other documents not referenced in this Order shall remain sealed. Signed by District Judge Robert E. Payne on 7/25/2018. (jsmi, ) (Entered: 07/25/2018) |
| 07/26/2018 | 144 | JURY INITIAL PRETRIAL ORDER. At a pretrial conference held on July 25, 2018, this action was set for trial by a jury on March 18, 2019, at 9:30 o'clock, a.m. The Scheduling Order and Pretrial Schedule A previously issued in this action shall remain in effect. A Final Pretrial Conference will be conducted at 10:00 o'clock, a.m. on March 11, 2019, at which time trial counsel shall appear and present for entry a Final Pretrial Order setting forth: (*See for complete details*). It is so ORDERED. Signed by District Judge Robert E. Payne on 07/26/2018. (nbrow) (Entered: 07/26/2018) |
| 07/26/2018 | | Set Hearings: Final Pretrial Conference set for 3/11/2019 at 10:00 AM in Richmond Judges Chamber before District Judge Robert E. Payne. Jury Trial set for 3/18/2019 at 09:30 AM in Richmond Courtroom 7400 before District Judge Robert E. Payne. (nbrow) (Entered: 07/26/2018) |
| 07/26/2018 | 145 | ORDER that the settlement conference and proceedings required by paragraph 3 of the Scheduling Order are referred to United States Magistrate Judge David J. Novak. Counsel shall be responsible for contacting the Chambers of Magistrate Judge Novak within 5 days of the date of this Order to schedule the conference to occur within the fifty–day period required by paragraph 3 of the Scheduling Order or at such other time as Magistrate Judge Novak shall approve. Signed by District Judge Robert E. Payne on 7/26/2018. (jsmi, ) (Entered: 07/26/2018) |
| 07/26/2018 | | Case referred to Magistrate Judge David J. Novak. (jsmi, ) (Entered: 07/26/2018) |
| 07/27/2018 | 146 | MEMORANDUM OPINION. Signed by District Judge Robert E. Payne on 07/27/2018. (tjoh, ) (Entered: 07/27/2018) |
| 07/31/2018 | 147 | TRANSCRIPT of proceedings held on July 25, 2018, before Judge Robert E. Payne, Court Reporter Peppy Peterson, Telephone number 804–916–2267. **NOTICE RE REDACTION OF TRANSCRIPTS: The parties have thirty (30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 8/30/2018. Redacted Transcript Deadline set for 10/1/2018. Release of Transcript Restriction set for 10/29/2018.(peterson, peppy) (Entered: 07/31/2018)** |
| 08/02/2018 | 148 | MOTION to Overrule Defendant Martorello's Discovery Objections by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Kelly, Kristi) (Entered: 08/02/2018) |
| 08/02/2018 | 149 | Memorandum in Support re 148 MOTION to Overrule Defendant Martorello's Discovery Objections filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Kelly, Kristi) (Entered: 08/02/2018) |
| 08/03/2018 | | Conference Call set for 8/3/2018 at 11:00 AM before Magistrate Judge David J. Novak. (cgar) (Entered: 08/03/2018) |
| 08/03/2018 | | Minute Entry for proceedings held before Magistrate Judge David J. Novak:Telephone Conference held on 8/3/2018. (cgar) (Entered: 08/03/2018) |

| 08/03/2018 | 150 | Memorandum in Opposition re 137 MOTION to Stay *Proceedings Pending Appeal* filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Kelly, Kristi) (Entered: 08/03/2018) |
| 08/07/2018 | 151 | Memorandum in Opposition re 140 MOTION to Stay filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Exhibit 1 – Oct. 31, 2017 e–mail correspondence, # 2 Exhibit 2 – Aug. 2018 letter correspondence)(Kelly, Kristi) (Entered: 08/07/2018) |
| 08/09/2018 | 152 | REPLY to Response to Motion re 137 MOTION to Stay *Proceedings Pending Appeal* filed by Ascension Technologies, Inc., Big Picture Loans, LLC. (Attachments: # 1 Exhibit A)(St. George, Timothy) (Entered: 08/09/2018) |
| 08/13/2018 | 153 | Consent MOTION for Extension of Time to File Response/Reply *in Support of Motion to Stay* by Matt Martorello. (Attachments: # 1 Proposed Order)(St. George, Timothy) (Entered: 08/13/2018) |
| 08/14/2018 | 154 | ORDER that 153 Motion for Extension of Time to File Reply Brief in Support of Motion to Stay is granted, and that Matt Martorello shall have up to and including August 16, 2018 to file his reply brief in support of his Motion to Stay. Signed by District Judge Robert E. Payne on 8/14/2018. (jsmi, ) (Entered: 08/14/2018) |
| 08/16/2018 | 155 | NOTICE of Appearance by Maurice Francis Mullins on behalf of Matt Martorello (Mullins, Maurice) (Entered: 08/16/2018) |
| 08/16/2018 | 156 | REPLY to Response to Motion re 140 MOTION to Stay filed by Matt Martorello. (Mullins, Maurice) (Entered: 08/16/2018) |
| 08/16/2018 | 157 | Memorandum in Opposition re 148 MOTION to Overrule Defendant Martorello's Discovery Objections filed by Matt Martorello. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Mullins, Maurice) (Entered: 08/16/2018) |
| 08/17/2018 | 158 | MOTION to Withdraw as Attorney *Karrie Sue Wichtman* by Ascension Technologies, Inc., Big Picture Loans, LLC. (Attachments: # 1 Exhibit 1 (Proposed Order))(St. George, Timothy) (Entered: 08/17/2018) |
| 08/17/2018 | 159 | Memorandum in Support re 158 MOTION to Withdraw as Attorney *Karrie Sue Wichtman* filed by Ascension Technologies, Inc., Big Picture Loans, LLC. (St. George, Timothy) (Entered: 08/17/2018) |
| 08/17/2018 | 160 | NOTICE of Appearance by Hugh McCoy Fain, III on behalf of Matt Martorello (Fain, Hugh) (Entered: 08/17/2018) |
| 08/17/2018 | 161 | NOTICE of Appearance by John Michael Erbach on behalf of Matt Martorello (Erbach, John) (Entered: 08/17/2018) |
| 08/20/2018 | 162 | ORDER REGARDING PROCEDURES FOR SETTLEMENT CONFERENCE. The Court has scheduled this case for a settlement conference on **September 4, 2018, at 10:00 a.m.** At that time, the parties shall report to the chambers of United States Magistrate Judge David J. Novak. In addition to counsel, each party must have a representative physically present with the full authority to settle this action. The failure of a party to have a representative physically present with full authority to settle the case may result in the imposition of sanctions upon that party. SEE ORDER FOR DETAILS. Signed by Magistrate Judge David J. Novak on 08/17/2018. (smej, ) (Entered: 08/20/2018) |
| 08/20/2018 | | Settlement Conference set for 9/4/2018 at 10:00 AM in Richmond Judges Chamber before Magistrate Judge David J. Novak. (cgar) (Entered: 08/20/2018) |
| 08/21/2018 | 163 | ORDER that the MOTION TO WITHDRAW COUNSEL [sic] 158 is granted. It is further ORDERED that the Clerk shall remove Karrie Sue Wichtman, Esquire as counsel of record for the defendants, Big Picture Loans, LLC and Ascension Technologies, Inc. Signed by District Judge Robert E. Payne on 08/20/2018. (smej, ) (Entered: 08/21/2018) |
| 08/22/2018 | 164 | REPLY to Response to Motion re 148 MOTION to Overrule Defendant Martorello's Discovery Objections filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 |

| | | |
|---|---|---|
| | | Exhibit 4, # 5 Exhibit 5)(Kelly, Kristi) (Entered: 08/22/2018) |
| 08/22/2018 | 165 | MOTION to Seal by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Proposed Order)(Kelly, Kristi) (Entered: 08/22/2018) |
| 08/22/2018 | 166 | Notice of Filing Sealing Motion LCvR5(C) by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams re 165 MOTION to Seal (Kelly, Kristi) (Entered: 08/22/2018) |
| 08/22/2018 | 167 | Sealed Document re 165 MOTION to Seal . (Attachments: # 1 Exhibit 4 to Reply Brief, # 2 Exhibit 5 to Reply Brief)(Kelly, Kristi) (Entered: 08/22/2018) |
| 08/22/2018 | 168 | Memorandum in Support re 165 MOTION to Seal filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Kelly, Kristi) (Entered: 08/22/2018) |
| 08/24/2018 | 169 | MOTION for Leave to File *a Sur Reply in Opposition to Plaintiffs' Motion to Overrule Discovery Objections* by Matt Martorello. (Attachments: # 1 Proposed Order)(Mullins, Maurice) (Entered: 08/24/2018) |
| 08/24/2018 | 170 | Memorandum in Support re 169 MOTION for Leave to File *a Sur Reply in Opposition to Plaintiffs' Motion to Overrule Discovery Objections* filed by Matt Martorello. (Attachments: # 1 Exhibit Proposed Sur Reply)(Mullins, Maurice) (Entered: 08/24/2018) |
| 08/27/2018 | 171 | NOTICE by Dowin Coffy, Felix Gillison, Jr., George Hengle, Gloria Turnage, Lula Williams Regarding Defendant Martorello's 169 MOTION for Leave to File *a Sur−Reply in Opposition to Plaintiffs' Motion to Overrule Discovery Objections*. (Kelly, Kristi). Modified docket entry on 08/27/2018. (walk, ). (Entered: 08/27/2018) |
| 08/31/2018 | 175 | ORDER that the Plaintiffs' 165 MOTION TO SEAL is granted and PLAINTIFFS' 167 REPLY BRIEF IN SUPPORT OF THEIR MOTION TO OVERRULE DEFENDANT MARTORELLO'S DISCOVERY ORDER and Exhibits 4 and 5 thereto are filed under seal; provided that appropriately redacted versions thereof are filed in the public record. Signed by District Judge Robert E. Payne on 8/30/2018. (jsmi, ) (Entered: 08/31/2018) |
| 09/04/2018 | | Settlement Conference set for 10/16/2018 at 10:00 AM in Richmond Judges Chamber before Magistrate Judge David J. Novak. (cgar) (Entered: 09/04/2018) |
| 09/04/2018 | | Minute Entry for proceedings held before Magistrate Judge David J. Novak:Settlement Conference held on 9/4/18. (cgar) (Entered: 09/05/2018) |
| 09/06/2018 | 176 | Motion to appear Pro Hac Vice by Matthew Wessler and Certification of Local Counsel Leonard A. Bennett Filing fee $ 75, receipt number 0422−6260707. by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Bennett, Leonard) (Entered: 09/06/2018) |
| 09/06/2018 | 177 | Motion to appear Pro Hac Vice by Jennifer Rust Murray and Certification of Local Counsel Leonard A. Bennett Filing fee $ 75, receipt number 0422−6260719. by Dowin Coffy, Felix Gillison, Jr, George Hengle. (Bennett, Leonard) (Entered: 09/06/2018) |
| 09/06/2018 | 178 | Motion to appear Pro Hac Vice by Elizabeth Anne Adams and Certification of Local Counsel Leonard A. Bennett Filing fee $ 75, receipt number 0422−6260729. by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Bennett, Leonard) (Entered: 09/06/2018) |
| 09/06/2018 | 179 | Motion to appear Pro Hac Vice by Beth Ellen Terrell and Certification of Local Counsel Leonard A. Bennett Filing fee $ 75, receipt number 0422−6260749. by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Bennett, Leonard) (Entered: 09/06/2018) |
| 09/11/2018 | 180 | Motion to appear Pro Hac Vice by Eleanor Michelle Drake and Certification of Local Counsel Kristi C. Kelly Filing fee $ 75, receipt number 0422−6266950. by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Kelly, Kristi) (Entered: 09/11/2018) |

| 09/11/2018 | 181 | Motion to appear Pro Hac Vice by John Gerard Albanese and Certification of Local Counsel Kristi C. Kelly Filing fee $ 75, receipt number 0422–6266970. by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Kelly, Kristi) (Entered: 09/11/2018) |
| --- | --- | --- |
| 09/11/2018 | 182 | NOTICE by Ascension Technologies, Inc., Big Picture Loans, LLC *OF COMPLIANCE WITH ORDER ENTERED BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO* (Attachments: # 1 Exhibit A)(St. George, Timothy) (Entered: 09/11/2018) |
| 09/12/2018 | 183 | ORDERS granting 176 , 177 , 178 , and 179 Motiona for Pro hac vice. Matthew William Wessler, Jennifer Rust Murray, Elizabeth Anne Adams, and Beth Ellen Terrell appointed for Lula Williams, Gloria Turnage, George Hengle, Dowin Coffy, and Felix Gillison, Jr. Signed by District Judge Robert E. Payne on 9/11/2018. (jsmi, ) (Entered: 09/12/2018) |
| 09/12/2018 | 184 | NOTICE of Appearance by Elizabeth W. Hanes on behalf of Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams (Hanes, Elizabeth) (Entered: 09/12/2018) |
| 09/13/2018 | 185 | NOTICE by Ascension Technologies, Inc., Big Picture Loans, LLC *of Compliance with Order Entered by the United States District Court for the District of Puerto Rico* (St. George, Timothy) (Entered: 09/13/2018) |
| 09/14/2018 | 186 | MOTION to Substitute Party by Dowin Coffy, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Proposed Order)(Kelly, Kristi) (Entered: 09/14/2018) |
| 09/14/2018 | 187 | Memorandum in Support re 186 MOTION to Substitute Party filed by Dowin Coffy, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Exhibit 1)(Kelly, Kristi) (Entered: 09/14/2018) |
| 09/14/2018 | 188 | ORDER granting 180 and 181 Motions for Pro hac vice. Eleanor Michelle Drake and John Gerard Albanese added for Dowin Coffy, Felix Gillison, Jr., George Hengle, Gloria Turnage, and Lula Williams. Signed by District Judge Robert E. Payne on 9/13/2018. (jsmi, ) ( (Entered: 09/14/2018) |
| 09/14/2018 | 189 | MOTION to Certify Class *against Defendant Matt Martorello* by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Kelly, Kristi) (Entered: 09/14/2018) |
| 09/14/2018 | 190 | Memorandum in Support re 189 MOTION to Certify Class *against Defendant Matt Martorello* filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27)(Kelly, Kristi) (Entered: 09/14/2018) |
| 09/14/2018 | 191 | MOTION to Seal by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Attachments: # 1 Proposed Order)(Kelly, Kristi) (Entered: 09/14/2018) |
| 09/14/2018 | 192 | Notice of Filing Sealing Motion LCvR5(C) by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams re 191 MOTION to Seal (Kelly, Kristi) (Entered: 09/14/2018) |
| 09/14/2018 | 193 | Sealed Document re 191 MOTION to Seal . (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 11, # 10 Exhibit 12, # 11 Exhibit 13, # 12 Exhibit 14, # 13 Exhibit 15, # 14 Exhibit 16, # 15 Exhibit 17, # 16 Exhibit 21)(Kelly, Kristi) (Entered: 09/14/2018) |
| 09/14/2018 | 194 | Memorandum in Support re 191 MOTION to Seal filed by Dowin Coffy, Felix Gillison, Jr, George Hengle, Gloria Turnage, Lula Williams. (Kelly, Kristi) (Entered: 09/14/2018) |
| 09/20/2018 | 195 | ORDER that DEFENDANT MARTORELLO'S 169 MOTION FOR LEAVE TO FILE A SUR–REPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO OVERRULE DISCOVERY OBJECTIONS is granted. It is further ORDERED that the defendant, |

| | | |
|---|---|---|
| | | Matt Martorello, shall electronically file his proposed Sur–Reply forthwith. Signed by District Judge Robert E. Payne on 9/20/2018. (jsmi, ) (Entered: 09/20/2018) |
| 09/20/2018 | 196 | Reply to 148 MOTION to Overrule Defendant Martorello's Discovery Objections *(Defendant Matt Martorello's Sur–Reply in Opposition to Plaintiffs' Motion to Overrule Discovery Objections)* filed by Matt Martorello. (Erbach, John) (Entered: 09/20/2018) |
| 09/26/2018 | 197 | ORDER that Plaintiffs' 191 MOTION TO SEAL is granted and PLAINTIFFS' 193 MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION OF CLAIMS AGAINST DEFENDANT MATT MARTORELLO and certain exhibits thereto are filed under seal; provided that appropriately redacted versions thereof are filed in the public record. Signed by District Judge Robert E. Payne on 9/26/2018. (jsmi, ) (Entered: 09/26/2018) |
| 09/28/2018 | | Minute Entry for proceedings held before Magistrate Judge David J. Novak:Telephone Conference (w/David Anthony) held on 9/28/2018. (cgar) (Entered: 09/28/2018) |
| 10/02/2018 | 198 | Supplemental MOTION to Stay *All Proceedings Pending Appeal of the Court's June 26, 2018 Order* by Ascension Technologies, Inc., Big Picture Loans, LLC. (St. George, Timothy) (Entered: 10/02/2018) |
| 10/02/2018 | 199 | Memorandum in Support re 198 Supplemental MOTION to Stay *All Proceedings Pending Appeal of the Court's June 26, 2018 Order* filed by Ascension Technologies, Inc., Big Picture Loans, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(St. George, Timothy) (Entered: 10/02/2018) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

LULA WILLIAMS, GLORIA TURNAGE,     :
GEORGE HENGLE, DOWIN COFFY, and     :   Civil Case No. _____3:17cv461_____
FELIX GILLISON, JR., *on behalf of themselves*     :
*and all individuals similarly situated*,     :
    :
          Plaintiffs,     :
    :
v.     :
    :
BIG PICTURE LOANS, LLC; MATT MARTORELLO;   :
ASCENSION TECHNOLOGIES, INC.;     :
DANIEL GRAVEL; JAMES WILLIAMS, JR.;     :
GERTRUDE MCGESHICK; SUSAN MCGESHICK;     :
and GIIWEGIIZHIGOOKWAY MARTIN,     :
    :
          Defendants.     :
_____   :

### CLASS ACTION COMPLAINT

COME NOW Plaintiffs, Lula Williams, Gloria Turnage, George Hengle, Dowin Coffy and

Felix Gillison, Jr. ("Plaintiffs"), *on behalf of themselves and all individuals similarly situated*, by

counsel, and for their Class Action Complaint against Defendants, they allege as follows:

### INTRODUCTION

1.      It is well established that Virginia's usury laws "are founded upon considerations

of public policy." *Town of Danville v. Pace*, 66 Va. 1, 19 (1874). Even in an era where "state-by-

state lobbying campaigns" have persuaded state legislators to reverse "nearly three hundred years"

of prohibitions against "double- or even single-digit interest rate caps," Virginia has remained

committed to its *longstanding* view that it is contrary to public policy to charge excessive interest

rates to Virginians. Christopher L. Peterson, *"Warning: Predatory Lender"—A Proposal for*

*Candid Predatory Small Loan Ordinances*, 69 Wash & Lee L. Rev. 893, 896 (2012) (providing

historical context on usury laws). Virginia's strong public policy against excessive interest rates is

not only hammered home by its criminalization of such conduct, but its civil remedies are also severe for it has long been established that "[h]owever small amount of usurious interest contracted for, and however large amount of money loaned, *the contract is declared void, and the lender forfeits the whole amount of the debt and interest.*" *Brockenbrough's Ex'rs v. Spindle's Adm'rs*, 58 Va. 21, 32 (1866) (emphasis added).

2.      This case involves a criminal enterprise that was established with the intent of evading state usury laws. In an apparent attempt to insulate themselves from any legal liability, Defendants established what is commonly referred to as a "rent-a-tribe" business model, where a payday lending scheme associates with a Native American tribe in an attempt to cloak itself in the privileges and immunities enjoyed by the tribe—or to at least create the illusion that it enjoys tribal immunity.

3.      To facilitate blatant violations of state usury laws, Defendant Matt Martorello ("Martorello") approached the Lac Vieux Desert Band of Lake Superior Chippewa Indians (the "Tribe") for the purpose of establishing a rent-a-tribe scheme. Under the rent-a-tribe model, Defendants made high interest loans in the name of Big Picture Loans, LLC ("Big Picture Loans"), which claim to be owned and operated by the Tribe. In reality, Martorello's company, Bellicose Capital, LLC ("Bellicose Capital"), funded the loans, controlled the underwriting, and handled the day-to-day operations of the business. In return for the use of its name, the Tribe received 2% of the revenue,[1] but otherwise the Tribe had no control over the income or expenses of Big Picture Loans.

---

[1] Zeke Faux, *Payday Lenders are Changing the Game Ahead of a U.S. Crackdown,* Bloomberg (Feb. 4, 2016) ("Bellicose has collected tens of millions of dollars, with the tribe keeping about 2 percent of the revenue, according to documents provided by a person involved in the deal."), https://www.bloomberg.com/news/articles/2016-02-04/payday-lenders-are-changing-the-game-ahead-of-a-u-s-crackdown.

4.     This lawsuit challenges the legality of Defendants' loans and seeks to enforce Virginia's longstanding public policy against usurious loans. Plaintiffs seek a declaratory judgment that the loan agreements related to Defendants' rent-a-tribe scheme are void and unenforceable. Defendants' usurious loans were void *ab initio* pursuant to Va. Code. § 6.2-1541(A), which provides that any loan containing an interest rate above 12% "shall be void."[2] Further, Plaintiffs seek a judgment declaring that the loan agreement's choice-of-law and forum selection provisions are unenforceable as a matter of public policy and because the provisions attempt to deprive consumers of both a remedy and of a day in court.

5.     Plaintiffs also seek an injunction against all Defendants, prohibiting them from lending or collecting loans in Virginia[3] as well as actual damages and treble damages from Defendants Big Picture, Ascension Technologies, Martorello, and Daniel Gravel for their participation in the unlawful lending enterprise, which violated Virginia's usury laws, unjustly enriched the Defendants, and violated the Racketeer Influenced and Corrupt Organizations Act ("RICO").[4] As a result of their participation in the enterprise, Big Picture, Ascension Technologies,

---

[2] *Rahmani v. Resorts Intern. Hotel, Inc.*, 20 F. Supp. 2d 932, 935 (E.D. Va. 1998) (Ellis, J.) (explaining that a gambling contract "is void under Virginia law, it is a complete legal nullity, one that has no legal force or binding effect").

[3] Defendants James Williams, Jr., Giiwegiizhigookway Martin, Gertrude McGeshick, and Susan McGeshick are the chief executive officers of the Tribe. This lawsuit seeks to enjoin these tribal officials from ongoing violations of federal law, and, thus, the tribal officials are not protected by the Tribe's immunity. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59 (1978) ("As an officer of the Pueblo, petitioner Lucario Padilla is not protected by the tribe's immunity from suit."); *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2034 (2014) ("As this Court has stated before . . . tribal immunity does not bar such a suit for injunctive relief against *individuals*, including tribal officers, responsible for unlawful conduct." (citing *Santa Clara Pueblo*, 436 U.S. at 59). Plaintiffs do not seek any monetary damages from any of the tribal officials as a result of their participation in the rent-a-tribe scheme.

[4] Plaintiffs anticipate that Big Picture Loan's will claim to be "an arm of the tribe" and thus protected by tribal immunity. Although the doctrine of tribal sovereign immunity protects the Tribe itself, it does not automatically extend to economic subdivisions of a tribe, and the Court must determine whether these entities are "analogous to a governmental agency, which should benefit from sovereign immunity" or whether they are more like a "commercial business enterprise, instituted for the purpose of generating profits for [their] private owners." *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1184 (10th Cir. 2010) (citing *Gavle v. Little Six, Inc.*, 555 N.W.2d 284, 293 (Minn.1996)). In addition to the allegations alleged in this Complaint concerning the creation, purpose, and structure of Big Picture Loans, Big Picture is not entitled to sovereign immunity because 98% of the profits of the scheme went to non-tribal participants and the companies were established for the sole purpose of

Martorello, and Daniel Gravel violated Virginia's usury laws and RICO's prohibition against the "collection of unlawful debt," which RICO defines as a debt incurred in "the business of lending money" where "the usurious rate is at least twice the enforceable rate" under State of Federal law. 18 U.S.C. § 1961(6).

## JURISDICTION

6.      This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1332(d)(2). Moreover, the Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as a majority of Plaintiffs are residents of this District and Division and a substantial part of Plaintiffs' claims occurred in Virginia.

## PARTIES

8.      Plaintiff Lula Williams ("Williams") is a natural person and resident of this Division and District.

9.      Plaintiff Gloria Turnage ("Turnage") is a natural person and resident of this Division and District.

10.     Plaintiff George Hengle ("Hengle") is a natural person and resident of this Division and District.

11.     Plaintiff Felix Gillison, Jr. ("Gillison") is a natural person and resident of this Division and District.

---

evading state usury laws. Further, extending the protections of tribal immunity to the scheme alleged in this case would not serve the policies underlying tribal sovereign immunity.

12.     Plaintiff Dowin Coffy ("Coffy") is a natural person and resident of this Division and District.

13.     Defendant Big Picture Loans is a limited liability company doing business as an internet lending website under the domain name www.bigpictureloans.com. In return for a small fraction of the revenue, the Tribe allowed the lending scheme to use its name and falsely claim that it is operated by the Tribe. At all times relevant hereto, the Tribe did not participate in the day-to-day operations of Big Picture Loans and did not fund the loans or handle the servicing or collection of the loans. Big Picture Loans was formerly known as Red Rock Tribal Lending, LLC, who did business under the domain name www.castlepayday.com.[5] Big Picture Loans is the successor in interest of Red Rock.

14.     Defendant Martorello is a natural person and resident of Puerto Rico. Martorello was the founder and chief executive officer of Bellicose Capital, which Martorello created to make and collect the usurious loans described herein. As explained below, Martorello was the architect of the rent-a-tribe lending scheme and had direct personal involvement in the creation and day-to-day operations of the illegal enterprise.

15.     Defendant Ascension Technologies, LLC, f/k/a Bellicose Capital, LLC was a limited liability company previously organized under the laws of the U.S. Virgin Islands and then Puerto Rico. Bellicose Capital was formed by Martorello in 2011 to make the usurious loans to Virginia consumers. Although Defendants held it out as a "managing consulting company," Bellicose Capital was the actual entity that procured the investment capital, serviced the loans, and received the vast majority of the revenue from the loans, which was then funneled to Martorello. Due to various lawsuits against Martorello's competitors and anticipated regulation from the

---

[5] Castle Payday, *We Have Big News! Castle Payday is now Big Picture Loans*,
https://www.bigpictureloans.com/CastlePaydayRedirectLanding (last visited June 22, 2017).

Consumer Financial Protection Bureau ("CFPB"), Martorello transferred Bellicose to the Tribe in April 2016 in an attempt to shield Bellicose Capital's illegal business practices. The Tribe rebranded Bellicose as Ascension Technologies, which continues to operate with minimal tribal involvement or benefit to the Tribe.

16.     Defendant Daniel Gravel ("Gravel") was the general counsel for Bellicose Capital and was one of the masterminds of the rent-a-tribe lending scheme described herein. As early as August 2012, Gravel had direct personal involvement in the day-to-day operations of the illegal enterprise and participated in the management of the legal affairs of the company, including drafting and reviewing the software, financial, payment processing, and servicing contracts that enabled the enterprise to operate. Additionally, Gravel drafted and reviewed all advertising and marketing materials for the enterprise and made the decisions regarding the legal content in the websites and contracts.

17.     Defendant James Williams, Jr. ("Mr. Williams") is the tribal chairman of the Lac Vieux Desert Band of Lake Superior Chippewa Indians.

18.     Defendant Giiwegiizhigookway Martin ("Ms. Martin") is the tribal chairwoman of the Lac Vieux Desert Band of Lake Superior Chippewa Indians.

19.     Defendant Gertrude McGeshick is the secretary of the Lac Vieux Desert Band of Lake Superior Chippewa Indians.

20.     Defendant Susan McGeshick is the treasurer of the Lac Vieux Desert Band of Lake Superior Chippewa Indians.

## FACTUAL BACKGROUND

**A.      Virginia's Longstanding Public Policy Prohibiting Usurious Loans.**

21.      More than forty years before the signing of the Declaration of Independence, Virginia enacted its first usury law, which capped interest rates at 6 percent. John W. Edmonds, *Virginia Law of Interest and Usury*, 10 U. Rich. L.R. 77 (1975) (citing 4 Hennings Stat. 194).

22.      Virginia's "usury laws serve a beneficial public purpose and are to be liberally construed with a view to advance the remedy and suppress the mischief." *Radford v. Cmty. Mortg. & Inv. Corp.*, 226 Va. 596, 601 (1984).

23.      The Supreme Court of Virginia has repeatedly acknowledged that Virginia's "usury statutes represent a clarification of the public policy of the state that usury is not to be tolerated, and the court should therefore be chary in permitting this policy to be thwarted." *Id.* (quoting *Heubusch & Reynolds v. Boone*, 213 Va. 414 (1972).

24.      In accordance with this longstanding public policy, a person may not charge an annual percentage rate ("APR") exceeding 12% without first obtaining a consumer finance license from the Commonwealth. Va. Code §§ 6.2-1501(A), 6.2-303(A).

25.      The consumer finance licensing requirements are designed to protect Virginia consumers from predatory lenders like Defendants. Virginia's licensing requirements include physical presence in the commonwealth and a minimum amount of liquid assets. Va. Code § 6.2-1507(A)(2). Additionally, before granting a license, the Commission must make specific findings concerning the applicant lender such as the character and fitness of the applicant and the applicant's knowledge of applicable Virginia laws and regulations. Va. Code § 6.2-1507.

**B.      Defendants Established an Enterprise to Evade Virginia's Licensing Requirements and Usury Laws.**

26.      Over the last decade, businesses have sought to evade state lending laws like Virginia's by entering into ventures with Native American tribes "so they can use tribal immunity as a shield for conduct of questionable legality." *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2052 (2014) (Scalia, J., dissenting) (citing Nathalie Martin & Joshua Schwartz, *The Alliance Between Payday Lenders and Tribes: Are Both Tribal Sovereignty and Consumer Protection at Risk?* 69 Wash. & Lee L. Rev. 751, 758–759, 777 (2012)).

27.      Defendant Matt Martorello recognized the exorbitant profits he could achieve by not complying with Virginia's usury laws and lending out high interest loans to some of Virginia's most vulnerable consumers.

28.      Recognizing this, Martorello established a rent-a-tribe business model for his company, Bellicose Capital, associating themselves with the Lac Vieux Desert Band of Lake Superior Chippewa Indians (the "Tribe"), a federally recognized tribe located in the Upper Peninsula of Michigan.

29.      With the assistance of Gravel, Martorello and Bellicose helped form Big Picture Loans and Red Rock—two companies formed as "business enterprises" of the Tribe, which claimed to be "wholly owned" and "operated as an instrumentality of the Tribe."[6]

30.      Although the Tribe holds itself out as the actual lender of the internet payday loans, the Tribe is merely a front, and Bellicose Capital provided the infrastructure to market, fund, underwrite, and collect the loans, including by providing the following services: lead generation, technology platforms, payment processing, and collection procedures.

---

[6] *See, e.g.*, Lac Vieux Desert Band of Lake Superior Chippewa Indians, Resolution # T2014-066, Approving the Creation of the Wholly Owned and Operated Lending Entity—Big Picture Loans, LLC (Aug. 26, 2014), http://www.lvdtribal.com/pdf/BPL%20Organizing%20Documents.pdf.

31.    Upon information and belief, the Tribe had no control over the income or expenses of either Red Rock or Big Picture Loans.

32.    Instead, the Tribe allowed Defendants to use their name as a front and, in return, received a nominal, 2% flat fee of the revenue. Delvin D. Hawley, *Payday Lenders on the Run*, Bloomberg Business Week (Feb. 8, 2016) ("Matt Martorello's company, Bellicose Capital, helps an American Indian tribe in Michigan run websites that offer small loans to the public at annualized interest rates as high as 780 percent. The tribe gets 2 percent of the revenue, while Martorello makes millions.").

33.    Upon information and belief, tribal members do not participate in the day-to-day operations of Red Rock or Big Picture Loans and nearly all the activities associated with these companies occurred off the Lac Vieux Reservation, such as the call centers, payment processing, and servicing of the loans.

34.    Despite representations in the loan agreements that Big Picture Loans and Red Rock were owned and operated by the Tribe, Bellicose Capital was the *de facto* owner and controlled the operations of the Big Picture Loans and Red Rock.

35.    Moreover, nearly all activities performed on behalf of Big Picture and Red Rock were performed by officers and employees of Bellicose who were not located on the Lac Vieux Reservation. Instead, they were Bellicose Capital employees located in the Virgin Islands, Puerto Rico, and the Philippines.

36.    Upon information and belief, the money loaned to Plaintiffs was transferred from a bank account owned and operated or controlled by Bellicose Capital and Martorello, and neither the Tribe nor its officials were allowed to access the accounts.

37.     Furthermore, neither Big Picture Loans nor Red Rock ever accepted consumer payments after the loan agreement was executed. Rather, all payments went to Bellicose Capital, who then kicked back, at most, the 2% flat fee to the Tribe.

38.     Additionally, Bellicose Capital also handled the lead generation used to identify and solicit potential consumers.[7]

39.     For example, Bellicose Capital procured consumer reports from Trans Union in an attempt to identify consumers who may be susceptible or in need of a loan.

40.     If a Virginia consumer's report showed that he or she may be susceptible to a high-interest loan, then Bellicose Capital sent correspondences to the home of the consumer in Virginia stating that he or she is "one of 1,442 people in Richmond" that are pre-approved, that the loan is "a smarter way to borrow," and that funds can be deposited "as early as tomorrow." (Feb. 27, 2017 Letter to Turnage).

41.     If a consumer called the number on the letter, he or she would reach a call center in the Philippines, who took direction and instructions from Bellicose Capital and not the Tribe.

42.     Upon information and belief, Bellicose Capital's lead generation procedures were developed by Martorello and Gravel.

43.     In the past few years, federal regulators have begun cracking down on rent-a-tribe arrangements.

---

[7] In order to find potential customers, internet lenders pay companies known as "lead generators," which are businesses that collect information on potential consumers to solicit for high-interest loans. Pew Charitable Trust, *Fraud and Abuse Online: Harmful Practices in Internet Payday Lending* (Oct. 2014), http://www.pewtrusts.org/~/media/assets/2014/10/payday-lending-report/fraud_and_abuse_online_harmful_prac-tices_in_internet_payday_lending.pdf. Lead generators pay high fees to several sources, such as consumer reporting agencies, to acquire borrower information to determine whether a consumer has ever applied or received an internet loan or whether a consumer may be in need or qualify for an additional loan. *Id.*

44.    For example, the United States Attorney for the Southern District of New York has indicted Scott Tucker and Timothy Muir, competitors of Defendants, for engaging in exactly the same unlawful-lending "rent a tribe" and collection practices alleged herein.

45.    The Tucker indictment, which sets out a strikingly similar set of facts, includes: (1) Mr. Tucker, through the use of shell companies, personally lent money to thousands of consumers through payday loans; (2) Tucker personally controlled virtually every aspect of the operations of these sham entities; (3) these sham entities shared employees, computer systems, and "other operating costs and infrastructure of a single lending business"; and (4) Mr. Muir acted as general counsel for one of the Tucker entities. *United States v. Tucker*, Case No. 16-crim-091 (S.D. N.Y. Feb. 9, 2016) (Dot. 1 at ¶¶ 1–3).

46.    For example, the indictment explains:

In truth and in fact, as SCOTT TUCKER and TIMOTHY MUIR, the defendants, well knew, while TUCKER and MUIR took steps to create the sham appearance of tribal ownership and control of the Tucker Payday Lenders, Tribes 1–3 played no substantive role in the ownership or operation of the Tucker Payday Lenders at any time. To create the sham appearance of ownership, TUCKER assigned nominal ownership of the Tucker Payday Lenders to Tribes 1-3 (that is, Ameriloan, United Cash Loans, US Fast Cash, Advantage Cash Services and Star Cash Processing were assigned to Tribe 1, One Click Cash was assigned to Tribe 2, and 500 Fast Cash was assigned to Tribe 3), and from time to time caused Tribes 1-3 to appear as the businesses' owners on certain corporate and financial documents. However, in truth and in fact, at all relevant times, and as TUCKER and MUIR well knew, Tribes 1-3 had no power to make any decisions on behalf of any of the Tucker Payday Lenders, no control over the income or expenses of any of the Tucker Payday Lenders, and no entitlement to the Tucker Payday Lenders' profits.

Similarly, to create the sham appearance that Tribes 1–3 not only owned, but operated, the Tucker Payday Lenders, SCOTT TUCKER, the defendant, caused members of two of the tribes (Tribe 1 and Tribe 2) to have a tribal member press a key on a computer on a daily basis on tribal lands to purportedly "approve" the extension of credit on hundreds or thousands of loans that the Tucker Payday Lenders, through their approximately 600 employees in Kansas, had in fact already approved and agreed to provide to customers. TUCKER did not require a third tribe that purportedly owned and operated one of the Tucker Payday Lenders (Tribe 3) to engage in this sham participation in the operations of his business at all.

*Id.* at ¶¶ 23-24.

47.     Just like the Tucker defendants, Defendants' business relationship with the Tribe was nothing more than an attempt to mislead consumers and regulators by an illusion that Defendants were protected by tribal immunity.

48.     After these rent-a-tribe schemes were uncovered through private lawsuits and governmental enforcement actions against Defendants' competitors, Martorello "sold" Bellicose Capital to the Tribe in an effort to further insulate the scheme from liability. Faux, *supra* note 1.

49.     As part of this arrangement, the Tribe paid Martorello $1.3 million dollars, plus he is entitled to receive as much as $300 million in future payments. Faux, *supra* note 1. In other words, the Tribe continues to accept a nominal fee in return for the use of its name.

50.     And while it is now organized under the laws of the Tribe, Ascension Technologies continues to be operated in the same manner and by the same individuals who ran Bellicose Capital—none of whom are affiliated with the Tribe.

51.     For example, approximately 20 individuals identify Ascension Technologies as their employers on LinkedIn. However, none of these people are located on the reservation.

52.     Instead, many of them list Atlanta, Mississippi, or Puerto Rico as the place where they are located.

53.     Upon information and belief, none of these people are members of the Tribe and nearly all of the activities of Ascension Technologies are performed by these non-tribal members who are not located on the reservation.

**C.      Defendants Made Loans to Virginia Consumers Charging Interest in Excess of 12% APR.**

54.      Defendants marketed, initiated, and collected usurious loans in Virginia. Martorello and Gravel chose Virginia as a place where loans and collection efforts would ensue, and they participated in and knew of the actions of Red Rock, Big Picture, and Bellicose in Virginia.

55.      Martorello and Gravel knew the subject loans were illegal under Virginia law, but they pursued the scheme anyway through Red Rock, Big Picture, and Bellicose in Virginia.

56.      In order to qualify for Defendants' loan product, consumers were required to electronically sign a form contract created by Defendants—not created by the Tribe.

57.      Under the terms of the standard Loan Agreements, the interest rates charged were significantly greater than 12% APR.

58.      For example, Defendants charged Williams with an APR of 649.8%—more than 50 times the 12% interest cap in Virginia for companies that are not licensed by the Commission. Va. Code § 6.2-303(A).

59.      Similarly, Defendants charged Turnage with an APR of 693.2%; Hengle with an APR of 607.5%; Coffy with an APR of 607.5%; and Gillison, Jr. with an APR of 627.2%.

60.      None of the Defendants had a consumer finance license permitting them to make loans charging interest in excess of 12% APR when they made the loans to Plaintiffs nor did they ever attempted to obtain such a license. *See* Va. Code § 6.2-1501. The Tribe also did not have a consumer finance license in Virginia.

61.      Accordingly, Defendants' loans are null and void, and it was unlawful for Defendants or any of their affiliated entities to collect or receive any principal, interest, or charges on the loans, including the amounts paid by Plaintiffs. Va. Code § 6.2-1541(A).

62.     Defendants received at least $1,330 from Williams as a result of Defendants' illegal loan to her—most of which Defendants credited as payment for interest or other fees.

63.     Defendants received at least $319.80 from Turnage as a result of Defendants' illegal loans to her—most of which Defendants credited as payment for interest or other fees.

64.     Defendants received at least $2,500 from Hengle as a result of Defendants' illegal loans to him—most of which Defendants credited as payment for interest or other fees.

65.     Defendants received at least $1,150 from Coffy as a result of Defendants' illegal loans to him—most of which Defendants credited as payment for interest or other fees.

66.     Defendants' conduct also violated § 1962(c) of RICO, which prohibits the "collection of unlawful debt." 18 U.S.C. § 1962(c); *see also* 18 U.S.C. § 1961(6) (defining "unlawful debt" as a debt that was incurred in connection with "the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate").

67.     As a result of Defendants' conduct, including participation in the Enterprise, Defendants are liable to Plaintiffs and the class for twice the total amount of interest paid on the usurious loans pursuant to Va. Code § 6.2-305(A), and Defendants are also jointly and severally liable to Plaintiffs and the putative class members for their actual damages, treble damages, costs, and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

**D.     Defendants' Loan Agreements Are Void and Unenforceable Under Virginia Law.**

68.     Because the loans were made without a consumer finance license and used an annual APR in excess of 12%, the agreements were void *ab initio* under Virginia law. Va. Code. § 6.2-1541(A) ("A loan contract shall be void if any act has been done in the making or collection thereof that violates § 6.2-1501.").

69.     Defendants' loan agreements not only violate Virginia's public policy against usurious loans as codified in Va. Code. § 6.2-1541(A), but they also contain unconscionable and unenforceable choice of law and forum selection provisions that seek to disclaim all laws and deprive consumers of their day in court.

70.     For example, Williams' Loan Agreement provides:

> **GOVERNING LAW AND FORUM SELECTION**: This Agreement will be governed by the laws of the Lac Vieux Desert Band of Lake Superior Chippewa Indians ("Tribal law"), including but not limited to the Code as well as applicable federal law. All disputes shall be solely and exclusively resolved pursuant to the Tribal Dispute Resolution Procedure set forth in Section 9 of the Code and summarized below for your convenience.
>
> . . .
>
> **TRIBAL DISPUTE RESOLUTION PROCEDURE**: The Tribe has established a Tribal Dispute Resolution Procedure (the "Procedure") to review and consider any and all types of complaints made by you or on your behalf relating to or arising from this Agreement. . . . The Tribe and Enterprise intend and require, to the extent permitted by Tribal law, that any complaint lodged, filed, or otherwise submitted by you or on your behalf to follow the Procedure. Under the Procedure, a consumer who, in the course of his otherwise lawful and proper use of Enterprise's business believes himself to be harmed by some aspect of the operation of any part of Enterprise's business, ***shall direct his concerns or dispute to Enterprise in writing***. A person's complaint to the Enterprise shall be considered similar in nature to a petition for redress submitted to a sovereign government, without waiver of sovereign immunity and exclusive jurisdiction, ***and does not create any binding procedural or substantive rights for a petitioner***. The Enterprise will investigate the complaint and respond as soon as reasonably practicable, but no later than thirty (30) days from the receipt of the complaint. In the event that the consumer is dissatisfied with Enterprise's determination, he may initiate Formal Dispute Resolution by requesting an administrative review of Enterprise's determination by submitting such request in writing to the Tribal Financial Services Regulatory Authority ("Authority"), P.O. Box 249, Watersmeet, MI 49969, no later than ninety (90) days after receiving Enterprise's determination.

 (Feb. 15, 2016 Loan Agreement, attached as Ex. 1 at 5).

71.     Turnage, Hengle, Coffy, and Gillison, Jr.'s loan agreements contained virtually identical governing law and forum selection clauses.

72.     Upon information and belief, the governing law and forum selection clauses were template language included in all loan agreements involving Red Rock and Big Picture.

73.     Defendants' governing law clause is unenforceable because it violates public policy concerns in Virginia and was procured through fraud and misrepresentations, including that Red Rock and Big Picture Loans were "wholly owned" and "operated by" the Tribe.

74.     These statements were false, misleading, and designed to create the appearance that consumers were doing business with a neutral, government-like entity.

75.     In reality, the loans were owned and operated by Bellicose Capital, who funded the loans, controlled the underwriting, and handled the day-to-day operations of the businesses, including the interactions with consumers and collections.

76.     Likewise, the forum selection clause is also unenforceable because it seeks to deprive consumers of a remedy and their day in court. Rather than selecting an alternative dispute resolution procedure, Defendants use the forum selection clause as a means of depriving consumers of a remedy and a day in court.

77.     For example, the Tribal Dispute Resolution Procedure claims that consumers do not have "any binding procedural or substantive rights" against Big Picture.

78.     Additionally, the Tribal Dispute Resolution Procedure purportedly allows consumers to lodge a "Formal Dispute Resolution" with the "Tribal Financial Services Regulatory Authority."

79.     However, the Formal Dispute Resolution is a sham because the Tribal Financial Services Regulatory Authority does not have subject matter jurisdiction to consider: (1) any claims brought under state or federal law or (2) claims regarding the legality of the debt. Tribal Financial

Services Authority Comm. Regs., Reg. 1.1 § 4, *available at* http://www.lvdtribal.com/pdf/TFSRA-Regulations.pdf.

80.    In particular, the Regulations indicate that the Tribal Financial Services Regulatory Authority will not "grant the consumer an opportunity be heard" if the only allegation is that the loan "is illegal in a jurisdiction outside the jurisdiction of the Tribe." Tribal Financial Services Authority Comm. Regs., Reg. 1.1 § 4(b).

81.    Additionally, the Regulations provide that the Tribal Financial Services Regulatory Authority may "resolve the dispute in favor of the consumer upon a finding that the [tribal entity] *violated a law or regulation of the Tribe*." Tribal Financial Services Authority Comm. Regs., Reg. 1.1 § 4(c) (emphasis added).

82.    In essence, Defendants used the forum selection and choice of law clauses to convert it into "a choice of no law clause." *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 675 (4th Cir. 2016).

83.    Accordingly, Plaintiffs request the Court to enter a declaratory judgment that the governing law and forum selection provisions are unenforceable as to Virginia consumers.

## COUNT ONE:
## DECLARATORY JUDGMENT
## (CLASS CLAIM AGAINST ALL DEFENDANTS)

84.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

85.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class initially defined as follows:

> **Declaratory Judgment Class**: All persons who: (1) received a loan with either Red Rock or Big Picture Loans (2) when they resided or were located in Virginia and (3) where the loan contained an interest rate greater than 12%.

**Declaratory Judgment Sublass**: All persons who: (1) received a loan with either Red Rock or Big Picture Loans (2) when they resided or were located in Virginia (3) and the agreement concerning the loan included a choice-of- law or forum selection clause similar or identical to one in Paragraph 70.

Plaintiffs are members of the Declaratory Judgment Class and Subclass.

86.   **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

87.   **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether the loan agreements are void under Va. Code. § 6.2-1541(A); (2) whether the loan agreements are void as a matter of public policy; and (3) whether the choice-of-law and forum selection provisions are enforceable.

88.   **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member.  In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

89.   **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the putative class, because their interests coincide with, and are not antagonistic to, the interests of the members of the class they seek to represent; they have retained counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of

USCA4 Appeal: 18-1827    Doc: 22-1    Filed: 10/15/2018    Pg: 69 of 253

the members of the class. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action.

90.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Litigating the validity and enforceability of each loan agreement would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

91.    As explained above, Defendants' loan agreements not only violate Virginia's usury statutes and public policy, but they also contain unconscionable choice of law and forum-selection provisions that are void and unenforceable for public policy concerns.

92.    The dispute and controversy is a justiciable matter that is not speculative, and a resolution by this court will determine the rights and interests of the parties to the Loan Agreements as well as the validity, if any, of the choice of law and forum-selection provisions.

93.    Pursuant to 28 U.S.C. § 2201, there is an actual justiciable controversy, and a declaratory judgment is the appropriate mechanism for resolving the validity and enforceability of the loan agreements.

94.     Accordingly, Plaintiffs seek a declaratory judgment that the choice of law and forum-selection provisions are void and unenforceable under Va. Code. § 6.2-1541(A) and as a matter of Virginia's well-established public policy.

## COUNT TWO:
## VIOLATIONS OF RICO, 18 U.S.C. § 1962(c)
## (CLASS CLAIM AGAINST ALL DEFENDANTS)

95.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.[8]

96.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class—the "Virginia RICO Class"—initially defined as:

> All Virginia residents who executed a loan with Red Rock or Big Picture where the loan was originated and/or any payment was made on or after June 22, 2013.

Plaintiffs are members of the Virginia RICO Class.

97.     **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief and as reflected by the profits generated by Defendants, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

98.     **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include: (1) whether the Enterprise constitutes an "enterprise" under RICO; (2) whether

---

[8] For Counts II and III, Plaintiffs do not seek any monetary relief from Defendants Williams, Jr., Martin, Gertrude McGeshick, and Susan McGeshick. Plaintiffs seek injunctive relief only as to Defendants Williams, Jr., Martin, Gertrude McGeshick, and Susan McGeshick.

Defendants participated in the Enterprise; (3) whether the loans violated Va. Code § 6.2-1501 because the interest rates were too high; and (4) what is the proper recovery for Plaintiffs and the class members against each of the Defendants.

99.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. Plaintiffs are entitled to relief under the same causes of action as the other members of the putative class. Additionally, Plaintiffs' claims are based on the same facts and legal theories as each of the class members.

100.    **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the putative class because their interests coincide with, and are not antagonistic to, the interests of the members of the class that they seek to represent. Plaintiffs have retained counsel competent and experienced in such litigation, and they intend to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiffs nor their counsel have any interests that might cause them to not vigorously pursue this action.

101.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised

by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

102.    **Injunctive Relief Appropriate for the Class.**  **Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Defendants acted on grounds generally applicable to the class, making appropriate injunctive relief with respect to Plaintiffs and the class members. Plaintiff and the putative class seek an injunction ordering Defendants to divest themselves of any interest in the Enterprise, including the receipt of racketeering profits; prohibiting Defendants from continuing to engage in the Enterprise; and ordering the dissolution of any entity associated with the Enterprise.

103.    As alleged above, Defendants violated § 1962(c) of RICO through the "collection of unlawful debt." 18 U.S.C. § 1962(c).

104.    RICO defines "unlawful debt" as a debt which was incurred in connection with "the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

105.    All of the loans made to Virginia residents and collected by Defendants included an interest rate far in excess of twice the enforceable rate in Virginia.

106.    Martorello and Gravel, during the pertinent times, were directly and materially involved in this intentional misconduct and knew the subject loans were illegal under Virginia law, but they pursued the scheme anyway through Bellicose Capital.

107.    This conduct began sometime as early as 2011, continues to date, and will be repeated again and again in the future to the detriment of Virginia consumers.

108.    Plaintiffs and the class members were injured as a result of Defendants' violations of 18 U.S.C. § 1962(c).

109.    Accordingly, Defendants Big Picture Loans, Matt Martorello, Ascension Technologies, and Daniel Gravel are jointly and severally liable to Plaintiffs and the putative class members for their actual damages, treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

**COUNT THREE:**
**VIOLATIONS OF RICO, 18 U.S.C. § 1962(d)**
**(CLASS CLAIM AGAINST ALL DEFENDANTS)**

110.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

111.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class, initially defined as:

> All Virginia residents who executed a loan with Red Rock or Big Picture where the loan was originated and/or any payment was made on or after June 22, 2013.

112.    **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

113.    **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members.

114. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

115. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the putative class because their interests coincide with, and are not antagonistic to, the interests of the members of the class they seek to represent; they have retained counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiffs nor their counsel have any interests which might cause them to not vigorously pursue this action.

116. **Injunctive Relief Appropriate for the Class. Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Defendants acted on grounds generally applicable to the class, making appropriate equitable injunctive relief with respect to Plaintiffs and the class members. Plaintiffs and the putative class seek an injunction ordering Defendants to divest themselves of the Enterprise, including the receipt of racketeering profits; prohibiting Defendants from continuing to engage in the Enterprise; and ordering the dissolution of each entity that has engaged in the Enterprise.

117. As alleged above, Defendants violated § 1962(d) of RICO by entering into a series of agreements to violate § 1962(c) and Virginia's usury laws, including the agreement between Defendants and Tribe that established the terms and operations of the rent-a-tribe business.

118. Accordingly, Defendants Big Picture Loans, Matt Martorello, Ascension Technologies, and Daniel Gravel are jointly and severally liable to Plaintiffs and the putative class

members for their actual damages, treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

## COUNT FOUR:
### VIOLATIONS OF VIRGINIA USURY LAWS
### (CLASS CLAIM AGAINST BIG PICTURE LOANS, MATT MARTORELLO, ASCENSION TECHNOLOGIES, DANIEL GRAVEL)

119.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.[9]

120.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class—the "Virginia Usury Class and Subclass"—initially defined as follows:

**Virginia Usury Class**: All Virginia residents who executed a loan with Red Rock or Big Picture where any amount of principal, interest, fees, or other charges were repaid.

**Virginia Usury Subclass**: All Virginia residents who executed a loan with Red Rock or Big Picture where any interest was paid on or after June 23, 2015.

121.    **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

122.    Based on the estimated size of the class and the volume of loans offered by Defendants, Plaintiffs believe that the amount in controversy easily exceeds $5 million when considering the amounts repaid by Virginia borrowers, as well as the amount of outstanding debt

---

[9] For Counts IV and V, Plaintiffs do not seek any relief from Defendants Williams, Jr., Martin, Gertrude McGeshick, and Susan McGeshick. Plaintiffs use the term "Defendants" in Count IV and V only refers to the defendants identified under the headings, *i.e.*, Big Picture Loans, Matt Martorello, Ascension Technologies, and Daniel Gravel.

that will be cancelled as part of the relief sought in this lawsuit. Settlements involving similar tribal lending enterprises have far exceeded $5 million, including a settlement recently approved by this Court. *See, e.g., Hayes v. Delbert Servs. Corp.*, Preliminary Approval Order, 3:14-cv-00258-JAG, Doc 193 (Jan. 30, 2017) (granting preliminary approval of a class action settlement that included $9.43 million in compensation and forgiving $5.9 million in outstanding debt) https://secure.dahladmin.com/VACASH/content/docu-ments/PreliminaryApprovalOrder.pdf; Press Release, Office of Att'y Gen., Ga., Attorney General Chris Carr Announces $40 Million Plus Settlement with Online Payday Lender (Feb. 8, 2017), https://law.georgia.gov/press-releases/2017-02-08/attorney-general-chris-carr-announces-40million-plus-settlement-online ($23.5 million in compensation, $17 million in loan forgiveness, $1 million civil penalty, and $500,00 attorney's fees and costs).[10]

123.    **Predominance of Common Questions of Law and Fact.** Fed. R. Civ. P. **23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether the loans made by Defendants of the Virginia Usury Class claims violated Virginia Code Section § 6.2-1501 because their interest levels were too high and (2) what is the proper recovery for Plaintiffs and the class members against each of the Defendants.

---

[10] *See also* News Release, Attorney Gen. Pam Bondi, Fl., Attorney General Bondi and OFR Reach Multimillion Dollar Settlements with Online Lender (Jan. 12, 2017), http://myfloridalegal.com/__8525622-20065EE67.nsf/0/2F836464563D0EB5852580A600709370?Open&Highlight=0,western,sky ($11 million in compensation, $15 million in loan forgiveness, $500,000 civil penalty, $500,000 administrative fine, and $250,000 for costs); *Internet Lender CashCall, Inc. Barred from Doing Business in Minnesota*, Minn. Att'y Gen. Lori Swanson, https://www.ag.state.mn.us/Office/PressRelease/20160819InternetLender.asp (last visited May 24, 2017) ($11.7 million in monetary relief including a $4.5 million restitution fund).

124. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member.  In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the putative class. All claims are based on the same facts and legal theories.

125. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the putative class because their interests coincide with, and are not antagonistic to, the interests of the members of the class they seek to represent. Plaintiffs have retained counsel competent and experienced in such litigation, and they intend to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiffs nor their counsel have any interests that might cause them to not vigorously pursue this action.

126. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system because of the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

127.    All of the loans made by Defendants to Virginia consumers used an interest rate greater than 12% and none of the exceptions to Va. Code § 6.2-303 apply.

128.    Accordingly, Plaintiffs and the class Members are entitled to recover from Defendants an amount equal to the total amount of interest paid in excess of 12% plus twice the amount of such usurious interest that was paid in the two years preceding the filing of this action, attorney's fees, and costs. Va. Code § 6.2-305(A).

**COUNT FIVE:**
**UNJUST ENRICHMENT**
**(CLASS CLAIM AGAINST BIG PICTURE LOANS, RED ROCK, MATT MARTORELLO, ASCENSION TECHNOLOGIES, DANIEL GRAVEL)**

129.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

130.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class—the "Virginia Unjust Enrichment Class"—initially defined as follows:

> **Virginia Unjust Enrichment Class**: All Virginia residents who executed a loan with Red Rock or Big Picture where any amount of principal, interest, fees, or other charges were repaid.

131.    **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

132.    Based on the estimated size of the class and the volume of loans offered by Defendants, Plaintiffs believe that the amount in controversy easily exceeds $5 million when considering the amounts repaid by Virginia borrowers, as well as the amount of outstanding debt

that will be cancelled as part of the relief sought in this lawsuit. Settlements involving similar tribal lending enterprises have far exceeded $5 million, including a settlement recently approved by this Court. *See, e.g., Hayes v. Delbert Servs. Corp.*, Preliminary Approval Order, 3:14-cv-00258-JAG, Doc 193 (Jan. 30, 2017) (granting preliminary approval of a class action settlement that included $9.43 million in compensation and forgiving $5.9 million in outstanding debt) https://secure.dahladmin.com/VACASH/content/docu-ments/PreliminaryApprovalOrder.pdf; Press Release, Office of Att'y Gen., Ga., Attorney General Chris Carr Announces $40 Million Plus Settlement with Online Payday Lender (Feb. 8, 2017), https://law.georgia.gov/press-releases/2017-02-08/attorney-general-chris-carr-announces-40million-plus-settlement-online ($23.5 million in compensation, $17 million in loan forgiveness, $1 million civil penalty, and $500,00 attorney's fees and costs).

133.     **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Plaintiffs and the class members conferred a benefit on Defendants of the Virginia Unjust Enrichment Class claims; (2) whether Defendant knew or should have known of the benefit; (3) whether Defendants retained an unjust benefit because the loan was void; and (4) what is the proper recovery for Plaintiffs and the class members against each of Defendants.

134.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member.  In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the putative class. All claims are based on the same facts and legal theories.

135.    **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the putative class because their interests coincide with, and are not antagonistic to, the interests of the members of the class they seek to represent. Plaintiffs have retained counsel competent and experienced in such litigation, and they intend to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiffs nor their counsel have any interests that might cause them to not vigorously pursue this action.

136.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system because of the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

137.    All of the loans made by Defendants to Virginia consumers were void and unenforceable.

138.    Plaintiffs conferred a benefit on Defendants when they repaid the void loans; Defendants knew or should have known of the benefit; and Defendants have been unjustly enriched through their receipt of any amounts in connection with the unlawful loans.

139.    Accordingly, Plaintiffs seek to recover from Defendants, jointly and severally, all amounts repaid on any loans with Big Picture or Red Rock.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request the Court enter judgment for themselves and the class they seek to represent against Defendants, including for:

A.    Certification of this matter to proceed as a class action;

B.    Declaratory, injunctive, and compensatory relief as pled herein;

C.    Attorney's fees, litigation expenses, and costs of suit; and

D.    Any further relief the Court deems proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,
**LULA WILLIAMS, GLORIA TURNAGE, GEORGE HENGLE, DOWIN COFFY, and FELIX GILLISON, JR.,** *on behalf of themselves and all individuals similarly situated*,

By:_____*/s/ Kristi C. Kelly*_____
Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com

James W. Speer, VSB#23046
VIRGINIA POVERTY LAW CENTER
919 E. Main Street, Suite 610
Richmond, VA 23219

(804) 782-9430
(804) 649-0974
Email: jay@vplc.org

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**



LULA WILLIAMS, et al.,
on behalf of themselves and all
individuals similarly situated

    Plaintiffs,

v.                                    Civil Action No. 3:17-cv-461

BIG PICTURE LOANS, LLC, et al.,

    Defendants.

**ORDER**

For the reasons set forth on the record at the conference call
on August 30, 2017, it is hereby ORDERED that Defendants' several
CONSENT MOTIONS FOR EXTENSION OF TIME TO FILE RESPONSIVE PLEADINGS
(ECF Nos. 8, 9, 10) are denied. Defendants shall file their Answers
to the Complaint by September 29, 2017.

Furthermore, it is ORDERED that Defendants shall file any
motions to dismiss by September 29, 2017; Plaintiffs shall respond
by October 31, 2017, and Defendants shall reply by November 8, 2017.

Furthermore, it is ORDERED that Plaintiffs shall submit to
Defendants any discovery requests respecting the Court's
jurisdiction over the Defendants by September 14, 2017, and
Defendants shall submit to Plaintiffs any discovery requests
respecting the Court's jurisdiction by September 29, 2017.

Furthermore, it is ORDERED that Plaintiffs shall, as necessary, conduct depositions concerning the Court's jurisdiction over Defendants by October 31, 2017.

It is so ORDERED.

/s/ _REP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 31, 2017

2

-61-

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

LULA WILLIAMS, GLORIA TURNAGE,
GEORGE HENGLE, DOWIN COFFY, and       Civil Case No. 3:17-cv-00461-REP
FELIX GILLISON, JR., on behalf of themselves
and all individuals similarly situated,

           Plaintiffs,

v.

BIG PICTURE LOANS, LLC; MATT MARTORELLO;
ASCENSION TECHNOLOGIES, INC.;
DANIEL GRAVEL; JAMES WILLIAMS, JR.;
GERTRUDE MCGESHICK; SUSAN MCGESHICK;
and GIIWEGIIZHIGOOKWAY MARTIN,

           Defendants.

_____ /

## <u>DEFENDANTS' ANSWER TO COMPLAINT</u>

Defendants Big Picture Loans, LLC ("Big Picture"), Ascension Technologies, LLC ("Ascension"), James Williams, Jr., Gertrude McGeshick, Susan McGeshick, and Giiwegiizhiigookway Martin ("Tribal Defendants"), by counsel, submits these answers to Plaintiffs' Complaint under protest. Defendant supplies these answers solely because of the Court's September 1, 2017 order and for the limited purpose of disputing this Court's jurisdiction over Tribal Defendants and Plaintiffs' Complaint. Nothing about the submissions of these answers is intended to waive or constitutes a legal waiver of tribal sovereign immunity. In answer to Plaintiffs' Complaint, Tribal Defendants state as follows:

## INTRODUCTION

1.      Tribal Defendants neither admit nor deny each and every allegation in paragraph 1, as the allegation characterizes the history of Virginia and does not require a response.

2.      Tribal Defendants deny each and every allegation in paragraph.

3.      Tribal Defendants deny paragraph 3, with the limited exception that Tribal Defendants admit paragraph 3 only to the extent that Big Picture Loans is owned and operated by the Tribe.

4.      The allegations in paragraph 4 are legal conclusions and so no answer is required. To the extent a response is necessary, Tribal Defendants deny that they are subject to Virginia law.

5.      The allegations in paragraph 5 are legal conclusions and so no answer is required. To the extent a response is necessary, Tribal Defendants deny that they are subject to Virginia law, and thus deny that Tribal Defendants are subject to any RICO violation or otherwise violated the law in the manners alleged.

## JURISDICTION

6.      Tribal Defendants deny each and every allegation in paragraph 6.

7.      Tribal Defendants deny all allegations in paragraph 7.

## PARTIES

8.      Tribal Defendants neither admit nor deny the allegation in paragraph 8 for lack of knowledge sufficient to form a belief.

9.      Tribal Defendants neither admit nor deny the allegation in paragraph 9 for lack of knowledge sufficient to form a belief.

10.      Tribal Defendants neither admit nor deny the allegation in paragraph 10 for lack of knowledge sufficient to form a belief.

11.      Tribal Defendants neither admit nor deny the allegation in paragraph 11 for lack of knowledge sufficient to form a belief.

12.      Tribal Defendants neither admit nor deny the allegation in paragraph 12 for lack

32899326v1

of knowledge sufficient to form a belief.

13.     Tribal Defendants admit that Big Picture Loans is a limited liability company that offers online consumer loans at www.bigpictureloans.com.  Tribal Defendants deny all remaining allegations in paragraph 13.

14.     Tribal Defendants admit that Mr. Martorello is a natural person.  Tribal Defendants deny all remaining allegations in paragraph 14.

15.     Tribal Defendants deny each and every allegation in paragraph 15.

16.     Tribal Defendants deny each and every allegation in paragraph 16.

17.     Tribal Defendants admit each and every allegation in paragraph 17.

18.     Tribal Defendants deny paragraph 18 to the extent that Ms. Martin is Vice-Chairperson of the Tribe, not "tribal chairwoman."

19.     Tribal Defendants admit each and every allegation in paragraph 19.

20.     Tribal Defendants admit each and every allegation in paragraph 20.

## FACTUAL BACKGROUND

**A.     Virginia's Longstanding Public Policy Prohibiting Usurious Loans.**

21.     Paragraph 21 merely characterizes the history of Virginia and does not require a response.  To the extent that an answer is required, Tribal Defendants neither admit nor deny the allegation, as Virginia law is not applicable to Tribal Defendants.

22.     Paragraph 22 merely characterizes the history of Virginia usury laws and does not require a response.  To the extent that an answer is required, Tribal Defendants neither admit nor deny the allegation, as Virginia law is not applicable to Tribal Defendants.

23.     Paragraph 23 merely characterizes the history of Virginia usury laws and does not require a response.  To the extent that an answer is required, Tribal Defendants neither admit nor

deny the allegation, as Virginia law is not applicable to Tribal Defendants.

24.    Paragraph 24 merely characterizes Virginia usury laws and does not require a response.  To the extent that an answer is required, Tribal Defendants neither admit nor deny the allegation for lack of knowledge sufficient to form a belief as Virginia law is not applicable to Tribal Defendants.

25.    Paragraph 25 merely characterizes the Virginia usury laws and does not require a response.  To the extent that an answer is required, Tribal Defendants deny that they are predatory lenders.  For all remaining allegations, Tribal Defendants neither admit nor deny, as Virginia law is not applicable to Tribal Defendants

**B.    Defendants Established an Enterprise to Evade Virginia's Licensing Requirements and Usury Laws.**

26.    Paragraph 26 merely states case law and does not require a response.  To the extent that an answer is required, Tribal Defendants deny to the extent that paragraph 26 characterizes all tribal lending businesses as "a shield for conduct of questionable legality" and alleges "businesses have sought to evade state lending laws."

27.    Tribal Defendants neither admit nor deny each and every allegation in paragraph 27 for lack of knowledge sufficient to form a belief.

28.    Tribal Defendants admit that the Lac Vieux Desert Band of Lake Superior Chippewa Indians is a federally recognized Indian tribe located in the Upper Peninsula of Michigan.  Tribal Defendants deny all remaining allegations in paragraph 28.

29.    Tribal Defendants deny each and every allegation in paragraph 29.

30.    Tribal Defendants deny each and every allegation in paragraph 30.

31.    Tribal Defendants deny each and every allegation in paragraph 31.

32.    Tribal Defendants deny each and every allegation in paragraph 32.

33.     Tribal Defendants deny each and every allegation in paragraph 33.

34.     Tribal Defendants deny each and every allegation paragraph 34.

35.     Tribal Defendants deny each and every allegation in paragraph 35.

36.     Tribal Defendants deny each and every allegation in paragraph 36.

37.     Tribal Defendants each and every allegation in paragraph 37.

38.     Tribal Defendants deny each and every allegation in paragraph 38.

39.     Tribal Defendants deny each and every allegation in paragraph 39.

40.     Tribal Defendants deny each and every allegation in paragraph 40.

41.     Tribal Defendants deny each and every allegation in paragraph 41.

42.      Tribal Defendants neither admit nor deny the allegations in paragraph 42 for lack of knowledge sufficient to form a belief.

43.     Tribal Defendants neither admit nor deny the allegations in paragraph 43 as it describes the activities of federal regulators and requires no response.

44.     Tribal Defendants neither admit nor deny the allegations in paragraph 44 to the extent that the allegation is argumentative.  Tribal Defendants deny each and every remaining allegation in paragraph 44.

45.     Tribal Defendants neither admit nor deny the allegations in paragraph 45 to the extent that the allegation is argumentative. Tribal Defendants deny each and every remaining allegation in paragraph 45.

46.     Paragraph 46 quotes portions of a criminal indictment, therefore no answer is necessary as the indictment speaks for itself.

47.     Tribal Defendants deny each and every allegation in paragraph 47.

Page 5 of 16

48.     Tribal Defendants deny each and every allegation in paragraph 48.

49.     Tribal Defendants deny each and every allegation in paragraph 49.

50.     Tribal Defendants admit that Ascension is and has always been organized under the laws of the Tribe.  Tribal Defendants deny all remaining allegations in paragraph 50.

51.     Tribal Defendants neither admit nor deny the allegations in paragraph 51 for lack of information sufficient to form a belief.

52.     Tribal Defendants neither admit nor deny the allegations in paragraph 52 for lack of information sufficient to form a belief.

53.     Tribal Defendants neither admit nor deny the allegations in paragraph 53 for lack of information sufficient to form a belief.  To the extent that an answer is required, Tribal Defendants deny to the extent that Tribal Defendants are unable to ascertain the veracity of LinkedIn profiles.  Tribal Defendants deny the remaining allegations in paragraph 53.

**C.     Defendants Made Loans to Virginia Consumers Charging Interest in Excess of 12% APR.**

54.     Tribal Defendants deny each and every allegation in paragraph 54.

55.     Tribal Defendants neither admit nor deny each and every allegation in paragraph 55 for lack of knowledge sufficient to form a belief to the extent it relates to Martorello and Gravel.  To the extent an answer is required, Tribal Defendants deny each and every allegation in paragraph 55.

56.     Tribal Defendants deny the allegation in paragraph 56.

57.     Tribal Defendants deny each and every allegation in paragraph 57, including because it is unclear what Plaintiffs mean by "standard Loan Agreements."

58.      Tribal Defendants deny each and every allegation in paragraph 58.

Page 6 of 16

59.    Tribal Defendants deny each and every allegation in paragraph 59.

60.    Tribal Defendants admit that neither Tribal Defendants nor the Tribe have a consumer finance license in Virginia.   Tribal Defendants deny the remaining allegation in paragraph 60.

61.    Tribal Defendants deny each and every allegation in paragraph 61.

62.    Tribal Defendants deny each and every allegation in paragraph 62.

63.    Tribal Defendants deny each and every allegation in paragraph 63.

64.    Tribal Defendants deny each and every allegation in paragraph 64.

65.    Tribal Defendants deny each and every allegations in paragraph 65.

66.    Tribal Defendants deny each and every allegation in paragraph 66.

67.    Tribal Defendants deny each and every allegation in paragraph 67.

   **D.    Defendants' Loan Agreements Are Void and Unenforceable Under Virginia Law.**

68.    Tribal Defendants deny each and every allegation in paragraph 68.

69.    Tribal Defendants deny each and every allegation in paragraph 69.

70.    To the extent paragraph 70 summarizes the terms of Plaintiff Williams' loan agreement, the loan agreement speaks for itself and so no answer is necessary.  To the extent Tribal Defendants are required to respond, Tribal Defendants admit that the language quoted above is in the loan agreement attached to the Complaint as Ex. 1.

71.    To the extent paragraph 71 summarizes the terms of Plaintiffs Turnage, Hengle, Coffy, and Gillison Jr.'s loan agreements, the loan agreements speak for themselves and so no answer is necessary.  To the extent an answer is required, Tribal Defendants admit that Plaintiffs Turnage, Hengle, Coffy, and Gillison Jr.'s loan agreements contain governing law and forum selection clauses.

32899326v1

72.     Tribal Defendants deny each and every allegation in paragraph 72.

73.     Tribal Defendants deny each and every allegation in paragraph 73.

74.     The allegations in paragraph 74 are legal conclusions and so no answer is required. To the extent a response is required, deny each and every allegation in paragraph 74.

75.     Tribal Defendants deny each and every allegation in paragraph 75.

76.     Tribal Defendants deny each and every allegation in paragraph 76.

77.      The allegation in paragraph 77 characterizes and quotes the loan agreement attached to the Complaint as Ex. 1, the loan agreement speaks for itself and so no answer is required.  To the extent an answer is required, Tribal Defendants admit that the language quoted above is in the loan agreement attached to the Complaint as Ex. 1.

78.     The allegation in paragraph 78 characterizes and quotes the loan agreement attached to the Complaint as Ex. 1, the loan agreement speaks for itself and so no answer is required.  To the extent an answer is required, Tribal Defendants admit that the language quoted above is in the loan agreement attached to the Complaint as Ex. 1.

79.     To the extent the allegation in paragraph 79 characterizes the Tribal Financial Services Authority Commission Regulation 1.1 § 4 or other regulations, the regulations speak for themselves and no answer is required.  To the extent a response is required, Tribal Defendants deny each and every allegation in paragraph 79.

80.     To the extent the allegation in paragraph 80 characterizes the Tribal Financial Services Authority Commission Regulation 1.1 § 4(b), the regulation speaks for itself and no answer is required.  To the extent a response is required, Tribal Defendants deny each and every allegation in ¶ 80.

81.     To the extent the allegation in paragraph 81 characterizes the Tribal Financial

Services Authority Commission Regulations, that document speaks for itself and no answer is required. To the extent a response is required, Tribal Defendants deny each and every allegation in ¶ 81.

82.    Tribal Defendants deny each and every allegation in paragraph 82.

83.    The allegation in paragraph 83 characterizes Plaintiffs' request for relief and therefore does not require a response.

<u>**COUNT ONE:** DECLARATORY JUDGMENT</u>
**(CLASS CLAIM AGAINST ALL DEFENDANTS)**

84.    Tribal Defendants restate each answer to the allegations in the preceding paragraphs as if set forth at length herein.

85.    Tribal Defendants deny each and every allegation in paragraph 85.

86.    Tribal Defendants deny each and every allegation in paragraph 86.

87.    Tribal Defendants deny each and every allegation in paragraph 87.

88.    Tribal Defendants deny each and every allegation in paragraph 88.

89.    Tribal Defendants deny each and every allegation in paragraph 89.

90.    Tribal Defendants deny each and every allegation in paragraph 90.

91.    Tribal Defendants deny each and every allegation in paragraph 91.

92.    Tribal Defendants deny each and every allegation in paragraph 92.

93.    Tribal Defendants deny each and every allegation in paragraph 93.

94.    Tribal Defendants deny each and every allegation in paragraph 94.

<u>**COUNT TWO:**</u>
**VIOLATIONS OF RICO, 18 U.S.C. § 1962(c)**
**(CLASS CLAIM AGAINST ALL DEFENDANTS)**

95.    Tribal Defendants restate each answer to the allegations in the preceding paragraphs as if set forth at length herein.

96.     Tribal Defendants admit that paragraph 96 attempts to define a class.   Tribal Defendants deny that a class can be certified in this case.

97.     Tribal Defendants deny each and every allegation in paragraph 97.

98.     Tribal Defendants deny each and every allegation in paragraph 98.

99.     Tribal Defendants deny each and every allegation in paragraph 99.

100.    Tribal Defendants deny each and every allegation in paragraph 100.

101.     Tribal Defendants deny each and every allegation in paragraph 101.

102.    Tribal Defendants deny each and every allegation in paragraph 102.

103.    Tribal Defendants deny each and every allegation in paragraph 103.

104.    Paragraph 104 quotes the text of a statute, to which no response is required.

105.    Tribal Defendants deny each and every allegation in paragraph 105.

106.    Tribal Defendants deny each and every allegation in paragraph 106.

107.    Tribal Defendants deny each and every allegation in paragraph 107.

108.     Tribal Defendants deny each and every allegation in paragraph 108.

109.    Tribal Defendants deny each and every allegation in paragraph 109.

## <u>COUNT THREE</u>:
## VIOLATIONS OF RICO, 18 U.S.C. § 1962(d) (CLASS CLAIM AGAINST ALL DEFENDANTS)

110.    Tribal Defendants restate each answer to the allegations in the preceding paragraphs as if set forth at length herein.

111.    Tribal Defendants deny each and every allegation in paragraph 111.

112.     Tribal Defendants deny each and every allegation in paragraph 112.

113.     Tribal Defendants deny each and every allegation in paragraph 113.

114.    Tribal Defendants deny each and every allegation in paragraph 114.

Page 10 of 16

115.    Tribal Defendants deny each and every allegation in paragraph 115.

116.    Tribal Defendants deny each and every allegation in paragraph 116.

117.    Tribal Defendants deny each and every allegation in paragraph 117.

118.    Tribal Defendants deny each and every allegation in paragraph 118.

## COUNT FOUR:
## VIOLATIONS OF VIRGINIA USURY LAWS
## (CLASS CLAIM AGAINST BIG PICTURE LOANS, MATT MARTORELLO, ASCENSION TECHNOLOGIES, DANIEL GRAVEL)

119.    Tribal Defendants restate each answer to the allegations in the preceding paragraphs as if set forth at length herein.

120.    Tribal Defendants admit that paragraph 120 attempts to define a class.   Tribal Defendants deny that a class can be certified in this case.

121.    Tribal Defendants deny each and every allegation in paragraph 121.

122.    Tribal Defendants deny each and every allegation in paragraph 122.

123.     Tribal Defendants deny each and every allegation in paragraph 123.

124.    Tribal Defendants deny each and every allegation in paragraph 124.

125.    Tribal Defendants deny each and every allegation in paragraph 125.

126.    Tribal Defendants deny each and every allegation in paragraph 126.

127.    Tribal Defendants deny each and every allegation in paragraph 127.

128.    Tribal Defendants deny each and every allegation in paragraph 128.

## COUNT FIVE: UNJUST ENRICHMENT
## (CLASS CLAIM AGAINST BIG PICTURE LOANS, RED ROCK, MATT MARTORELLO, ASCENSION TECHNOLOGIES, DANIEL GRAVEL)

129.    Tribal Defendants restate each answer to the allegations in the preceding paragraphs as if set forth at length herein.

Page 11 of 16

130.    Tribal Defendants admit that paragraph 130 attempts to define a class.   Tribal Defendants deny that a class can be certified in this case.

131.    Tribal Defendants deny each and every allegation in paragraph 131.

132.    Tribal Defendants deny each and every allegation in paragraph 132.

133.     Tribal Defendants deny each and every allegation in paragraph 133.

134.    Tribal Defendants deny each and every allegation in paragraph 134.

135.    Tribal Defendants deny each and every allegation in paragraph 135.

136.    Tribal Defendants deny each and every allegation in paragraph 136.

137.    Tribal Defendants deny each and every allegation in paragraph 137.

138.    Tribal Defendants deny each and every allegation in paragraph 138.

139.    Tribal Defendants deny each and every allegation in paragraph 139.

## AFFIRMATIVE DEFENSES

Under Federal Rule of Civil Procedure 8(c)(1), Tribal Defendants assert the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by tribal sovereign immunity.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs have failed to allege any abrogation or waiver of tribal sovereign immunity.

### THIRD AFFIRMATIVE DEFENSE

The Tribal Defendants are immune from Virginia law.

### FOURTH AFFIRMATIVE DEFENSE

The Tribal Defendants are immune from the Racketeer Influenced and Corrupt Organizations Act.

32899326v1

### FIFTH AFFIRMATIVE DEFENSE

The Court does not have subject matter jurisdiction over Plaintiffs' claims, including for the reasons set forth in pending briefing.

### SIXTH AFFIRMATIVE DEFENSE

The Court does not have personal jurisdiction over Tribal Defendants.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to state a claim upon which relief may be granted.

### EIGHTH AFFIRMATIVE DEFENSE

The Court is not the proper venue or forum in which to hear Plaintiffs' claims, including for the reasons set forth in pending motions.

### NINTH AFFIRMATIVE DEFENSE

Plaintiffs failed to exhaust the tribal administrative remedies.

### TENTH AFFIRMATIVE DEFENSE

Plaintiffs lack standing to bring their claims.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to allege applicability of Virginia state law.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the applicable statutes of limitations and/or waiver.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs have unclean hands because Plaintiffs are in default or have otherwise breached.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs are barred from recovery to the extent that they have failed to mitigate damages.

32899326v1

## FIFTEENTH AFFIRMATIVE DEFENSE

This action may not properly proceed as a class action under Federal Rule of Civil Procedure 23 to the extent that, among other reasons, Plaintiffs' claims are not typical of the claims of each putative class member; questions of law and fact allegedly common to the putative class do not predominate over the numerous questions affecting only putative class members; a class action is not superior to other available methods for the fair and efficient adjudication of Plaintiffs' claims and any claims of putative class members; Plaintiff' and their counsel are unable to fairly and adequately protect the interests of the putative class members; and there are insurmountable difficulties that would be encountered in any attempt to proceed as a class action

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs and the putative class members cannot recover as a class action to the extent to which such class recovery would deprive the Tribal Defendants of their due process rights to assert individualized defenses to claims of class members.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs cannot recover from the Tribal Defendants individually or as a class action for punitive or statutory damages to the extent any award of punitive or statutory damages would be impermissible under the Due Process Clause of the Fifth Amendment to the United States Constitution, and the Excessive Fines Clause of the Eighth Amendment to the United States Constitution, due to the lack of any actual damages suffered by Plaintiff and the gross disparity between the allegations of harm and the size of the claim.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Tribal Defendants reserve the right to add or amend its affirmative defenses as more facts come to light during the course of the investigation.

32899326v1

**BIG PICTURE LOANS, LLC, ASCENSION TECHNOLOGIES, INC., JAMES WILLIAMS, JR., GERTRUDE MCGESHICK, SUSAN MCGESHICK, AND GIIWEGIIZHIIGOOKWAY MARTIN**

By:/s/David N. Anthony

David N. Anthony
Virginia State Bar No. 31696
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: david.anthony@troutmansanders.com

Karrie Sue Wichtman (admitted *pro hac vice*)
Justin A. Gray (admitted *pro hac vice*)
ROSETTE, LLP
25344 Red Arrow Highway
Mattawan, MI 49071
Telephone: (269) 283-5005
Facsimile: (517) 913-6443
Email: kwichtman@rosettelaw.com
Email: jgray@rosettelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of September, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

Kristi C. Kelly
Andrew J. Guzzo
Casey S. Nash
KELLY & CRANDALL PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA  22030
Telephone: 703-424-7570
Facsimile: 703-591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com
Email: casey@kellyandcrandall.com
*Counsel for Plaintiffs*

James W. Speer
VIRGINIA POVERTY LAW CENTER
919 E. Main Street, Suite 610
Richmond, VA  23219
Telephone: 804-782-9430
Facsimile: 804-649-0974
Email: jay@vplc.orga
*Counsel for Plaintiffs*

David F. Herman
Jonathan P. Boughrum
Richard L. Scheff
MONTGOMERY MCCRACKEN WALKER
& RHOADS LLP
123 S Broad Street
Philadelphia, PA 19109
Telephone: 215-772-1500
Facsimile: 215-772-7620
Email: dherman@mmwr.com
Email: jboughrum@mmwr.com
Email: rscheff@mmwr.com
*Counsel for Defendant Matt Martorello*

/s/ David N. Anthony

David N. Anthony
Virginia State Bar No. 31696
*Counsel for Defendants*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: david.anthony@troutmansanders.com

32899326v1

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | | |
|---|---|---|
| LULA WILLIAMS, GLORIA TURNAGE, GEORGE HENGLE, DOWIN COFFY, and FELIX GILLISON, JR., *on behalf of themselves and all individuals similarly situated*, | : : : : : | Civil Case No. 3:17cv461 |
| Plaintiffs, | : : | |
| v. | : : | |
| BIG PICTURE LOANS, LLC, et al., | : : | |
| Defendants. | : | |

**MATT MARTORELLO'S ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFFS' COMPLAINT**

Defendant, Matt Martorello ("Martorello"), by and through his undersigned counsel,

answers the allegations of Plaintiffs' putative Class Action Complaint ("Complaint") as follows:

1.       Admitted in part and denied in part. The allegations of Paragraph 1 are admitted

insofar as any decision from the Virginia courts speaks for itself. Any characterization of a

decision by the Virginia courts is denied. The remaining allegations of Paragraph 1 are policy

opinions and conclusions of law to which no response is required. To the extent a response is

deemed necessary, the remaining allegations of Paragraph 1 are denied.

2.       Denied. It is specifically denied that Martorello established a "rent-a-tribe"

business model. The remaining allegations of Paragraph 2 are conclusions of law to which no

response is required. To the extent that a response is deemed necessary, the allegations of

Paragraph 2 are denied.

3.       Denied. It is denied that Martorello facilitated illegal lending. Bellicose Capital,

LLC ("Bellicose Capital"), engaged in lawful business activity with tribal lending entities which

were wholly owned and operated by the Lac Vieux Desert Band of Lake Superior Chippewa Indians (the "Tribe"). It is further specifically denied that Martorello approached the Lac Vieux Desert Band of Lake Superior Chippewa Indians for the purposes of establishing a rent-a-tribe scheme. It is specifically denied that Martorello has ever made a loan in the name of Big Picture Loans, LLC or any other entity owned and operated by the Lac Vieux Desert Band of Lake Superior Chippewa Indians. It is specifically denied that the Tribe had no control over the income or expenses of Big Picture Loans or any other tribal lending entity owned and operated by the Lac Vieux Desert Band of Lake Superior Chippewa Indians. The remaining allegations of Paragraph 3 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 3 are denied.

4.      Denied. The allegations of Paragraph 4 are conclusions of law to which no response is required. To the extent a response is deemed necessary, the remaining allegations of Paragraph 4 are denied.

5.      The allegations of Paragraph 5 are conclusions of law to which no response is required. To the extent a response is deemed necessary, the allegations of Paragraph 5 are denied.

**JURISDICTION**

6.      The allegations of Paragraph 6 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 6 are denied.

7.      Paragraph 7 constitutes a conclusion of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 7 are denied.

**PARTIES**

-2-

8.      After a reasonable investigation, Martorello is without sufficient knowledge or information to admit or deny the allegations of Paragraph 8 as the paragraph concerns a party other than Martorello.  Accordingly, the allegations of Paragraph 8 are denied.

9.      After a reasonable investigation, Martorello is without sufficient knowledge or information to admit or deny the allegations of Paragraph 9 as the paragraph concerns a party other than Martorello and as such the allegations are denied.

10.      After a reasonable investigation, Martorello is without sufficient knowledge or information to admit or deny the allegations of Paragraph 10 as the paragraph concerns a party other than Martorello and as such the allegations are denied.

11.      After a reasonable investigation, Martorello is lacks the necessary knowledge or information to admit or deny the allegations of Paragraph 11 as the paragraph concerns a party other than Martorello and as such the allegations are denied.

12.      After a reasonable investigation, Martorello is does not have sufficient knowledge or information to admit or deny the allegations of Paragraph 12 as the paragraph concerns a party other than Martorello and as such the allegations are denied.

13.      Admitted in part and denied in part.  It is admitted that Big Picture Loans is a limited liability company organized under the laws of the Lac Vieux Desert Band of Lake Superior Chippewa Indians.  It is specifically denied that the Tribe permitted Martorello to use the name of Big Picture Loans.  It is specifically denied that Martorello falsely claimed that Big Picture Loans was operated by the Tribe.  After a reasonable investigation, Martorello is without information as to the business practices of Big Picture Loans, its day-to-day operations, its funding sources, its servicing practices, its collection practices, and as such cannot verify the truth of those statements within Paragraph 13 of the Complaint, and as such those allegations are

4473784v1

denied.  The remaining allegations of Paragraph 13 of the Complaint constitute conclusions of law to which no responsive pleading is required.  To the extent a response is deemed necessary, the remaining allegations of Paragraph 13 are denied.

14.    Admitted in part and denied in part. It is admitted that Martorello is a natural person and is a resident of Puerto Rico.  It is further admitted that Martorello was a founder of Bellicose Capital, LLC.  It is specifically denied that Bellicose Capital, LLC was created to make or collect any loans.  It is specifically denied that Martorello had direct personal involvement in the creation and day-to-day operations of any illegal enterprise.  The remaining allegations of Paragraph 14 constitute conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 14 are denied.

15.    Admitted in part and denied in part.  It is admitted that Bellicose Capital, LLC was organized under the laws of Puerto Rico.  The remaining allegations of Paragraph 15 are denied.

16.    Admitted in part and denied in part.  It is admitted that Defendant Gravel was the General Counsel of Bellicose Capital, LLC.  The remaining allegations of Paragraph 16 are denied.

17.    Admitted.

18.    Denied.  Upon information and belief, Defendant Martin is not the tribal Chairwoman of the Lac Vieux Desert Band of Lake Superior Chippewa Indians.

19.    Admitted.

20.    Admitted.

-4-

21.     After a reasonable investigation, Martorello is without sufficient knowledge or information to admit or deny the allegations contained within Paragraph 21, and as such the allegations are denied.

22.     Admitted in part and denied in part. The allegations of Paragraph 22 are admitted insomuch as any decision from the Virginia court speaks for itself. Any characterization of a decision made by the Virginia court cited in Paragraph 22 is denied.

23.     Admitted in part and denied in part. The allegations of Paragraph 23 are admitted insomuch as any decision from the Virginia court speaks for itself. Any characterization of a decision made by the Virginia court cited in Paragraph 23 is denied.  It is specifically denied that the Supreme Court of Virginia has repeatedly acknowledged public policy applicable to usury claims.  To the contrary, the most recent case dealing with usurious loans decided by the Supreme Court of Virginia, *Settlement Funding, LLC v. Von Neumann-Lillie*, 274 Va. 76 (2007) expressed a holding contrary to the quotations cited in paragraph 23 of the Complaint.

24.     Admitted insomuch as the statute cited speaks for itself. Any characterization of that statute is specifically denied.  Paragraph 24 constitutes a conclusion of law to which no response is required. To the extent that a response is deemed necessary, the allegations of Paragraph 24 are denied.

25.     Admitted insomuch as the statutes cited in Paragraph 25 speak for themselves. Any characterizations of those statutes are specifically denied. The remaining allegations of Paragraph 25 constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, the allegations of Paragraph 25 are denied.

-5-

4473784v1

26.     Admitted in part and denied in part. Admitted insomuch as the United States Supreme Court dissent speaks for itself. By way of further denial, the Complaint characterizes the dissent quoted as being authored by the late Justice Scalia, but was actually authored by Justice Thomas.  Any characterization of the dissenting opinion cited in Paragraph 26, or the legal relevance of such a dissent, is denied.  The remaining allegations of Paragraph 26 are denied.

27.     Denied. It is expressly denied that Martorello engaged in any illegal lending activity.   The remaining allegations of Paragraph 27 are denied.

28.     Admitted in part and denied in part. It is admitted the Lac Vieux Desert Band of Lake Superior Chippewa Indians (the "Tribe") is a federally recognized tribe located in the Upper Peninsula of Michigan. It is expressly denied that Martorello established a rent-a-tribe business model for Bellicose Capital, LLC.

29.     Admitted in part and denied in part. It is admitted that Big Picture Loans, LLC claims to be wholly owned and operated as an instrumentality of the Tribe.  It is admitted that Red Rock Tribal Lending claimed to be wholly owned and operated as an instrumentality of the Tribe.  Both Big Picture Loans, LLC and Red Rock Tribal Lending, LLC were, in fact, wholly owned by the Lac Vieux Desert Band of Lake Superior Chippewa Indians, who operated the business as an instrumentality of that Tribe.  It is denied that Martorello and Bellicose Capital, LLC helped form Big Picture Loans, LLC or Red Rock Tribal Lending, LLC.  The remaining allegations of Paragraph 29 are denied.

30.     Denied. It is expressly denied that the Tribe is a front for illegal lending activity. Rather, Bellicose Capital, LLC entered into lawful contractual business agreements with certain lending entities wholly owned and operated by the Tribe for the provision of certain services.  It

-6-

is further denied that Martorello, Bellicose Capital, LLC, or any lending entity owned or operated by the Lac Vieux Desert Band of Lake Superior Chippewa Indians ever offered "internet payday loans" to consumers.  The remaining allegations of Paragraph 30 are denied.

31.    Denied.

32.    Denied.

33.    Denied.  It is specifically denied that the Tribe's members failed to participate in the day-to-day operations of the Tribe's wholly owned lending entities.  To the contrary, members of the Tribal Council were the co-managers of both Red Rock Tribal Lending, LLC and Big Picture Loans, LLC and those entities employed members of the Tribe on the Tribe's reservation.  Further, it is specifically denied that nearly all the activities associated with the Tribe's wholly owned lending companies occurred off the Lac Vieux Reservation.

34.    Denied. It is denied that Bellicose Capital, LLC was the *de facto* owner of Big Picture Loans, LLC and Red Rock Tribal Lending, LLC.  It is also specifically denied that Bellicose Capital, LLC controlled the operations of Big Picture Loans, LLC and Red Rock Tribal Lending, LLC. The remaining allegations of Paragraph 34 are conclusions of law and as such no response is required.

35.    Admitted in part and denied in part. It is admitted that Bellicose Capital, LLC's employees provided contracted for services to the Tribe's wholly owned lending entities pursuant to written contracts for such services between Bellicose Capital, LLC and/or its subsidiaries and the Tribe's lending entities.  It is further admitted that such services were provided from locations other than the Lac Vieux Desert Reservation, including the Virgin Islands and Puerto Rico.  It is denied that Bellicose Capital, LLC ever had employees in the Philippines.  After a reasonable investigation, Martorello is without sufficient knowledge or

4473784v1

information to admit or deny the remaining allegations of Paragraph 35, and as such the remaining allegations of Paragraph 35 are denied.

36.    Denied.

37.    Denied.  It is specifically denied that the Tribe's wholly owned lending entities did not accept consumer payments.  To the contrary, Plaintiffs' loan agreements required them to make repayments directly to the Tribe's wholly owned lending entities.   The remaining allegations in Paragraph 37 are conclusions of law to which no response is required.

38.    Admitted in part and denied in part.  It is admitted that one of the contracted services Bellicose Capital, LLC and or/its predecessors and/or subsidiaries was the evaluation of potential lending leads on behalf of Red Rock Tribal Lending, LLC.  It is denied that Bellicose Capital, LLC handled the lead generation used to identify and solicit potential customers.  The remaining allegations of Paragraph 38 are denied.

39.    Admitted in part and denied in part.  It is admitted that one of the contracted services Bellicose Capital, LLC and or/its predecessors and/or subsidiaries was the evaluation of potential lending leads on behalf of Red Rock Tribal Lending, LLC.  It is denied that Martorello or Bellicose Capital, LLC continues to take any action on behalf of the Tribe's lending entities, including procuring consumer reports from TransUnion.

40.    Denied.  Plaintiff's exhibit identified and referenced in Paragraph 40 of the Complaint makes clear that the solicitation originates from Big Picture Loans, LLC, which is disclosed to be "wholly owned and operated by the Lac Vieux Desert Band of Lake Superior Chippewa Indians, a federally recognized American Indian Tribe and sovereign government." Nowhere in the solicitation is Bellicose Capital, LLC identified, and, at least as of the February 27, 2017 date of the solicitation, Bellicose Capital, LLC had already been sold to the Lac Vieux

-8-

Desert Band of Lake Superior Chippewa Indians more than one year prior to the solicitation. The remaining allegations of Paragraph 40 of the Complaint are denied.

41.     After a reasonable investigation, Martorello is without sufficient knowledge or information to admit or deny the allegations in Paragraph 41, and as such, the allegations are denied. By way of further response, the exhibit referenced in paragraph 41 of the Complaint is dated February 27, 2017, and as of that date Bellicose Capital, LLC and its subsidiaries had already been sold to LVD Tribal Acquisition Company, LLC, a wholly owned entity operated by the Lac Vieux Desert Band of Lake Superior Chippewa Indians, more than one year prior.  The remaining allegations of Paragraph 41 of the Complaint are denied.

42.     Admitted in part and denied in part. It is admitted that as part of the services Bellicose Capital, LLC and/or its predecessors and/or subsidiaries were required to provide to Red Rock Tribal Lending, LLC consulting services, including assisting the Tribe's lending entities in the evaluation and refinement of lead generation procedures, as part of the contract between those entities.  The remaining allegations in Paragraph 42 are denied.

43.     Denied.

44.     Admitted in part and denied in part. Admitted insomuch as the indictments of Scott Tucker and Timothy Muir speak for themselves.  Any characterization of the indictments or reasoning by analogy to indictments by Plaintiffs is specifically denied.  It is denied that Scott Tucker and Timothy Muir were competitors of Martorello. It is also expressly denied that Martorello engaged in unlawful-lending "rent a tribe" and collection practices.

45.     Admitted in part and denied in part. It is admitted insomuch as the "Tucker indictment" speaks for itself and does not represent any finding of a court or conclusion as to the accuracy of the allegations contained therein. It is expressly denied that the "Tucker indictment"

-9-

sets out a similar set of facts. After reasonable investigation, Martorello is unable to confirm or deny the remaining allegations of Paragraph 45, and as such they are denied.

46.     Admitted insomuch as the indictment speaks for itself, and does not represent any finding of a court or conclusion as to the accuracy of the allegations contained therein.  Any characterization of the indictments or reasoning by analogy to indictments by Plaintiffs is specifically denied.

47.     Denied. It is denied that Martorello's business relationship with the Tribe was an attempt to mislead customers and regulators. Martorello and the Tribe engaged in lawful business relationships. It is specifically denied that Martorello misled any consumer.  The remaining allegations are conclusions of law to which no response is required. To the extent a response is required, the allegations in Paragraph 47 are denied.

48.     Admitted in part and denied in part. It is admitted that an entity in which Martorello has an interest sold Bellicose Capital, LLC, along with its subsidiaries, to the Tribe on or about January 26, 2016 in a seller-financed transaction.  It is specifically denied that Martorello or any other entity sold Bellicose Capital, LLC to the Lac Vieux Desert Band of Lake Superior Chippewa Indians to "further insulate the scheme from liability." After reasonable investigation, Martorello does not have sufficient knowledge or information to affirm or deny the remaining allegations in Paragraph 48, and as such the allegations are denied.

49.     Admitted in part and denied in part. It is admitted that the Lac Vieux Desert Band of Lake Superior Chippewa Indians purchased Bellicose Capital, LLC along with its subsidiaries in a seller-financed transaction. Martorello denies the allegations in Paragraph 49 characterizing the business relationship as the Tribe accepting a nominal fee in return for the use of its name. It is specifically denied that the Tribe paid Martorello $1.3 million dollars for Bellicose Capital,

-10-

LLC. It is specifically denied that the Martorello is entitled to receive as much as $300 million in future payments from the Tribe.

50. Admitted in part and denied in part. It is admitted that Ascension Technologies is organized under the laws of the Lac Vieux Desert Band of Lake Superior Chippewa Indians. The remaining allegations of Paragraph 50 are denied.

51. After reasonable investigation, Martorello does not have sufficient knowledge or information to affirm or deny the allegations in Paragraph 51, and as such the allegations are denied.

52. After reasonable investigation, Martorello does not have sufficient knowledge or information to affirm or deny the allegations in Paragraph 52, and as such, the allegations are denied.

53. Denied. Martorello believes, and therefore avers, Ascension Technologies is wholly owned by the Lac Vieux Desert Band of Lake Superior Chippewa Indians, and is run by co-managers who are both members of the Tribal Council. After reasonable investigation, Martorello does not have sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 52, and as such, the allegations are denied.

54. Denied. It is specifically denied that Martorello marketed, initiated, or collected any loans in Virginia. It is further specifically denied that Martorello chose Virginia as a place where loans and collection efforts would ensue. It is further specifically denied that Martorello participated in any actions of Red Rock Tribal Lending, LLC, Big Picture Loans, LLC, or Bellicose Capital, LLC in Virginia. The remaining allegations in Paragraph 54 are conclusions of law to which no response is required. To the extent a response is required, such allegations are denied.

4473784v1

55.     Denied. The allegations of Paragraph 55 are conclusions of law to which no response is required.  To the extent a response is required, such allegations are denied .

56.     Admitted in part and denied in part. It is admitted that to qualify for a loan product at issue in this case, a consumer was to electronically sign a loan agreement. Any characterization of this form by Plaintiff is expressly denied.  It is denied that the Tribe's wholly owned lending entities were not involved in the creation of the loan contract.

57.     Admitted insomuch as each individual loan agreement speak for itself. Any characterization of the loan agreements by Plaintiff is expressly denied.

58.     After reasonable investigation, Martorello lacks sufficient knowledge or information to admit or deny the allegations of Paragraph 58, and as such the allegations are denied.

59.     After reasonable investigation, Martorello is without sufficient knowledge or information to admit or deny the allegations of Paragraph 59, and as such the allegations are denied.

60.     Admitted in part and denied in part. Admitted insomuch as the statute speaks for itself. It is admitted that Martorello does not have a Virginia consumer finance license. It is denied that Martorello ever made loans to Virginia consumers or was required to have a Virginia consumer finance license.  The remaining allegations in Paragraph 60 are either conclusions of law or relate to other Defendants, and as such are denied.

61.     It is specifically denied that Martorello ever made any loan, collected or received any principal, interest, or charges on such loans, including any amount paid by Plaintiffs.  The remaining allegations in Paragraph 61 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations in Paragraph 61 are denied.

-12-

4473784v1

62.    It is specifically denied that Martorello received any money from Plaintiff Williams or many any loan to Plaintiff Williams.  After reasonable investigation, Martorello is without sufficient knowledge or information to admit or deny the remaining allegations of Paragraph 62, and as such the allegations are denied.

63.    It is specifically denied that Martorello received any money from Plaintiff Turnage or made any loan to Plaintiff Turnage.  After reasonable investigation, Martorello is without sufficient knowledge or information to admit or deny the remaining allegations of Paragraph 63, and as such the allegations are denied.

64.    It is specifically denied that Martorello received any money from Plaintiff Hengle or made any loan to Plaintiff Hengle.  After reasonable investigation, Martorello is without sufficient knowledge or information to admit or deny the remaining allegations of Paragraph 64, and as such the allegations are denied.

65.    It is specifically denied that Martorello received any money from Plaintiff Coffy or made any loan to Plaintiff Coffy.  After reasonable investigation, Martorello is without sufficient knowledge or information to admit or deny the remaining allegations of Paragraph 65, and as such the allegations are denied.

66.    The allegations in Paragraph 66 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations in Paragraph 61 are denied.

67.    It is specifically denied that Martorello participated in any undefined Enterprise. The remaining allegations in Paragraph 67 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations in Paragraph 67 are denied.

68.    The allegations in Paragraph 68 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations in Paragraph 68 are denied.

-13-

69.     The allegations in Paragraph 69 are conclusions of law to which no response is required. To the extent that a response is required, such allegations in Paragraph 69 are denied.

70.      Admitted in part and denied in part. Admitted insomuch as the document speaks for itself. Any characterization of the document quoted in Paragraph 70 by Plaintiff is denied.

71.     After reasonable investigation, Martorello lacks sufficient knowledge or information to admit or deny the allegations of Paragraph 71, and as such the allegations are denied.

72.     After reasonable investigation, Martorello does not have sufficient knowledge or information to admit or deny the allegations of Paragraph 72, and as such the allegations are denied. The remaining allegations are conclusions of law which do not require a response. To the extent the allegations of Paragraph 72 require a response, the allegations are denied.

73.     The allegations in Paragraph 73 are conclusions of law to which no response is required. To the extent that the allegations do require a response, the allegations are denied.

74.     The allegations in Paragraph 74 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations in Paragraph 74 are denied.

75.     Admitted in part and denied in part. It is admitted that Bellicose Capital, LLC provided services to the Tribe's lending entities. It is expressly denied that Bellicose Capital, LLC owned, operated, or funded any loan originated by the Tribe's lending entities. Any characterizations of the services provided to the Tribe by Bellicose by Plaintiff are denied. The remaining allegations in Paragraph 75 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations in Paragraph 75 are denied.

76.     The allegations in Paragraph 76 are conclusions of law to which no response is required. To the extent that the allegations do require a response, the allegations are denied.

-14-

77.     Admitted in part and denied in part. Admitted insomuch as the Tribal Dispute Resolution Procedure speaks for itself. Any characterization of the procedure by Plaintiff is expressly denied.

78.     Admitted in part and denied in part. Admitted insomuch as the Tribal Dispute Resolution Procedure speaks for itself. Any characterization of the procedure by Plaintiff is expressly denied.

79.     Admitted in part and denied in part. Admitted insomuch as the Tribal Financial Services Regulatory Authority jurisdiction speaks for itself. It is expressly denied that the Formal Dispute Resolution is a "sham." Any characterization of the procedure by Plaintiff is expressly denied.

80.     Admitted insomuch as the regulation speaks for itself. Any characterization of the regulation by Plaintiff is expressly denied.

81.     Admitted insomuch as the regulation's language speaks for itself. Any characterization of the regulation by Plaintiff is expressly denied.

82.     The allegations of Paragraph 82 are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

83.     The allegations in Paragraph 83 are conclusions of law and as such a response is not required. To the extent a response is required for the allegations in Paragraph 83, the allegations are denied.

### COUNT ONE:
### DECLARATORY JUDGMENT
### (CLASS CLAIM AGAINST ALL DEFENDANTS)

84.     Martorello realleges and incorporates by reference all prior paragraphs of this Answer to Plaintiffs' Complaint.

-15-

4473784v1

85.     Admitted in part and denied in part. Admitted inasmuch as the Federal Rules of Civil Procedure speak for themselves. The allegation that Plaintiffs are members of the Declaratory Judgment Class and Subclass are conclusions of law to which no response is required. Any characterization of the rule by Plaintiff is expressly denied.

86.     The allegations in Paragraph 86 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations in Paragraph 86 are denied.

87.     The allegations of Paragraph 87 are conclusions of law that do not require a response.  To the extent a response is required, the allegations are denied.

88.     The allegations in Paragraph 88 are conclusions of law to which no response is required. To the extent a response is required, the allegations of Paragraph 88 are denied.

89.     The allegations of Paragraph 89 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 89 are denied.

90.     The allegations of Paragraph 90 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 90 are denied. Any characterizations of the rule made by Plaintiff in Paragraph 90 are expressly denied.

91.     The allegations of Paragraph 91 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 91 are denied.

92.     The allegations of Paragraph 92 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 92 are denied.

93.     Admitted in part and denied in part. Admitted insomuch as the statute speaks for itself. The remaining allegations in Paragraph 93 are conclusions of law to which no response is required. To the extent a response is required, the allegations of Paragraph 93 are denied.

-16-

94.    Denied. The allegations of Paragraph 94 are conclusions of law to which no response is required.  To the extent a response is required, the allegations of Paragraph 94 are denied. Any characterizations of the statute made by Plaintiffs in Paragraph 94 are also expressly denied.

## COUNT TWO:
## VIOLATIONS OF RICO, 18 U.S.C. § 1962(c)
## (CLASS CLAIM AGAINST ALL DEFENDANTS)

95.    Martorello realleges and incorporates by reference all prior paragraphs of this Answer to Plaintiffs' Complaint.

96.    The allegations of Paragraph 96 are conclusions of law to which no response is required. To the extent that a response is required, the allegations of Paragraph 96 are denied.

97.    The allegations of Paragraph 97 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 97 are denied.

98.    The allegations of Paragraph 98 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 98 are denied.

99.    The allegations of Paragraph 99 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 99 are denied.

100.    The allegations of Paragraph 100 of the Complaint are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 100 are denied.

101.    The allegations of Paragraph 101 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 101 are denied.

4473784v1

102.    The allegations in Paragraph 102 are conclusions of law to which no response is required. To the extent a response is required, the allegations of Paragraph 102 are denied.

103.    The allegations of Paragraph 103 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 103 are denied.

104.    Admitted insomuch as the RICO definition speaks for itself.

105.    Denied.  It is specifically denied that Martorello made any loan to, or collected any loan from a Virginia consumer.  The remaining allegations of Paragraph 105 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 105 are denied.

106.    The allegations of Paragraph 106 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 106 are denied.

107.    The allegations of Paragraph 107 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 107 are denied.

108.    The allegations of Paragraph 108 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 108 are denied.

109.    The allegations of Paragraph 109 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 109 are denied.

## **COUNT THREE:**
### **VIOLATIONS OF RICO, 18 U.S.C. § 1962(d)**
### **(CLASS CLAIM AGAINST ALL DEFENDANTS)**

110.    Martorello realleges and incorporates by reference all prior paragraphs of this Answer to Plaintiffs' Complaint.

111.    The allegations of Paragraph 111 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 111 are denied.

-18-

112.    The allegations of Paragraph 112 of the Complaint are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of are denied.

113.    The allegations in Paragraph 113 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations in Paragraph 113 are denied.

114.    The allegations of Paragraph 114 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 114 are denied.

115.    The allegations of Paragraph 115 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 115 are denied.

116.    Denied. It is expressly denied that Martorello received racketeering profits. The remaining allegations of Paragraph 116 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 116 are denied. Any characterization of the federal rule and business relationships made by Plaintiff in Paragraph 116 is denied.

117.    The allegations of Paragraph 117 of the Complaint are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 117 are denied.

118.    The allegations of Paragraph 118 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 118 are denied.

-19-

## COUNT FOUR:
### VIOLATIONS OF VIRGINIA USURY LAWS
### (CLASS CLAIM AGAINST BIG PICTURE LOANS, MATT MARTORELLO, ASCENSION TECHNOLOGIES, DANIEL GRAVEL)

119.    Martorello realleges and incorporates by reference all prior paragraphs of this Answer to Plaintiffs' Complaint.

120.    Admitted insomuch as Rule 23 of the Federal Rules of Civil Procedure and the alleged Virginia class and subclass definitions speaks for themselves.

121.    The allegations of Paragraph 121 of the Complaint are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 121 are denied.

122.    The allegations of Paragraph 122 are conclusions of law to which no responses are required. To the extent that a response is necessary, the allegations of Paragraph 122 are denied.

123.    The allegations of Paragraph 123 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 123 are denied.

124.    The allegations of Paragraph 124 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 124 are denied.

125.    The allegations of Paragraph 125 of the Complaint are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 125 are denied.

126.    The allegations of Paragraph 126 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 126 are denied.

127.    Denied.  It is specifically denied that Defendant Martorello has ever made a loan to any Virginia consumer. The remaining allegations of Paragraph 127 are conclusions of law to

-20-

which no response is required. To the extent a response is necessary, the allegations of Paragraph 127 of the Complaint are denied.

128.    The asserted in Paragraph 128 are conclusions of law to which no response is required. To the extent a response is necessary, the allegations of Paragraph 128 of the Complaint are denied.

## COUNT FIVE:
## UNJUST ENRICHMENT
### (CLASS CLAIM AGAINST BIG PICTURE LOANS, RED ROCK, MATT MARTORELLO, ASCENSION TECHNOLOGIES, DANIEL GRAVEL)

129.    Martorello realleges and incorporates by reference all prior paragraphs of this Answer to Plaintiffs' Complaint.

130.    Admitted insomuch as Rule 23 of the Federal Rules of Civil Procedure and the alleged Virginia Unjust Enrichment Class definition speak for themselves.

131.    The allegations of Paragraph 131 of the Complaint are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 131 are denied.

132.    The allegations of Paragraph 132 are conclusions of law to which no responses are required. To the extent that a response is necessary, the allegations of Paragraph 132 are denied.

133.    The allegations of Paragraph 133 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 133 are denied.

134.    The allegations of Paragraph 134 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 134 are denied.

4473784v1

135.    The allegations of Paragraph 135 of the Complaint are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 135 are denied.

136.    The allegations of Paragraph 136 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 136 are denied.

137.    Denied.  It is specifically denied that Defendant Martorello has ever made a loan to any Virginia consumer.  The remaining allegations of Paragraph 137 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 137 are denied.

138.    Denied.    It is specifically denied that Plaintiffs conferred any benefit on Martorello.  It is further denied that Martorello knew of any benefit conferred upon him by any Virginia consumers.    The remaining allegations of Paragraph 138 of the Complaint are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 138 are denied.

139.    The allegations of Paragraph 139 of the Complaint are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations of Paragraph 139 are denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Counts One through Five of Plaintiffs' Complaint fail to state a claim on which relief can be granted as to Matt Martorello.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' causes of action fail to join an indispensable party.

-22-

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' causes of action based upon lending by Native American tribal entities are barred by the operation of Tribal Immunity.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' prayer for relief inappropriately seeks to "Invalidat[e] any beneficial interest in existing consumer debt purported to be owed by Virginia consumers," without joining all parties with a beneficial interest in the debts, should they exist.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs are unable to meet the legal requirements for the entry of declaratory and/or injunctive relief.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs are precluded from seeking equitable remedies, including restitution and refunding of monies, on behalf of Virginia consumers where those consumers have an adequate remedy at law and have previously or are currently pursuing such claims in other forums on an individual or class-wide basis.

### SEVENTH AFFIRMATIVE DEFENSE

Defendant, Matt Martorello, at all times relevant acted in good faith and in a lawful manner towards consumers and in conformity with all applicable laws and regulations.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to exhaust their remedies by failing to resolve their dispute through the tribal dispute resolution procedure required by their contract with their lender.

4473784v1

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs, as private individuals, may not obtain injunctive relief under the claims alleged in the Complaint.

## TENTH AFFIRMATIVE DEFENSE

This action may not properly proceed as a class action under Federal Rule of Civil Procedure 23 to the extent that, among other reasons, Plaintiffs' claims are not typical of the claims of each putative class member; questions of law and fact allegedly common to the putative class do not predominate over the numerous questions affecting only putative class members; a class action is not superior to other available methods for the fair and efficient adjudication of Plaintiffs' claims and any claims of putative class members; Plaintiffs and their counsel are unable to fairly and adequately protect the interests of the putative class members; and there are insurmountable difficulties that would be encountered in any attempt to proceed as a class action

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs and the putative class members cannot recover as a class action to the extent to which such class recovery would deprive of Martorello of his process rights to assert individualized defenses to claims of class members.

## TWELFTH  AFFIRMATIVE DEFENSE

Plaintiffs cannot recover from Martorello individually or as a class action for punitive or statutory damages to the extent any award of punitive or statutory damages would be impermissible under the Due Process Clause of the Fifth Amendment to the United States Constitution, and the Excessive Fines Clause of the Eighth Amendment to the United States

-24-

Constitution, due to the lack of any actual damages suffered by Plaintiff and the gross disparity between the allegations of harm and the size of the claim.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the alleged injuries or damage alleged in the Complaint, if any, were caused wholly or in part by the conduct, acts, omissions, and/or fault of third parties other than Martorello.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because of the applicable statute of limitations and/or statute of repose.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because of the doctrine of unclean hands.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of laches.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' are estopped from asserting claims against Martorello.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Martorello hereby incorporates by reference and realleges, as if set forth in full, all other affirmative defenses raised by other defendants.

## NINETEENTH AFFIRMATIVE DEFENSE

Consistent with Federal Rule of Civil Procedure 15, Martorello reserves the right to amend this answer in order to assert any additional affirmative defenses that may be uncovered or made known during the pendency of this litigation.

-25-

WHEREFORE, Defendant Matt Martorello respectfully requests that this Court enter judgment in his favor on all of Plaintiffs' causes of action, award Martorello the fees and costs, including reasonable attorney's fees, incurred in defending against Plaintiffs' causes of action, and grant all other relief as this Court deems just.

**MATT MARTORELLO**

By:/s/David N. Anthony
David N. Anthony
Virginia State Bar No. 31696
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: david.anthony@troutmansanders.com

Richard L. Scheff (admitted *pro hac vice*)
Jonathan P. Boughrum (admitted *pro hac vice*)
David F. Herman (admitted *pro hac vice*)
MONTGOMERY MCCRACKEN WALKER &
    RHOADS LLP
123 South Broad Street, 24th Floor
Philadelphia, PA  19109
Telephone:  215.772.7502
Email:  rscheff@mmwr.com
Email: jboughrum@mmwr.com
Email: dherman@mmwr.com

*Counsel for Matt Martorello*

4473784v1

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of September, 2017, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF System which will then send a

notification of such filing (NEF) to the following:

Kristi C. Kelly
Andrew J. Guzzo
Casey S. Nash
KELLY & CRANDALL PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA  22030
Telephone: 703-424-7570
Facsimile: 703-591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com
Email: casey@kellyandcrandall.com
*Counsel for Plaintiffs*

James W. Speer
VIRGINIA POVERTY LAW CENTER
919 E. Main Street, Suite 610
Richmond, VA  23219
Telephone: 804-782-9430
Facsimile: 804-649-0974
Email: jay@vplc.orga
*Counsel for Plaintiffs*

Karrie Sue Wichtman
Justin A. Gray
ROSETTE, LLP
25344 Red Arrow Highway
Mattawan, MI 49071
Telephone: (269) 283-5005
Facsimile: (517) 913-6443
Email: kwichtman@rosettelaw.com
Email: jgray@rosettelaw.com
*Counsel for Defendants*

/s/ David N. Anthony
David N. Anthony
Virginia State Bar No. 31696
*Counsel for Matt Martorello*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: david.anthony@troutmansanders.com

4473784v1

1        IN THE UNITED STATES DISTRICT COURT

2        FOR THE EASTERN DISTRICT OF VIRGINIA

3              RICHMOND DIVISION

4

5    --------------------------------------
                                          :
6    LULA WILLIAMS, et al., on behalf     :
     of themselves and all individuals    :    Civil Action No.
7    similarly situated                    :    3:17cv461
                                          :
8    vs.                                   :
                                          :    October 16, 2017
9    BIG PICTURE LOANS, LLC, et al.       :
                                          :
10   --------------------------------------

11

12        COMPLETE TRANSCRIPT OF THE CONFERENCE CALL

13        BEFORE THE HONORABLE ROBERT E. PAYNE

14             UNITED STATES DISTRICT JUDGE

15
     APPEARANCES:
16
     Kristi C. Kelly, Esquire
17   Andrew J. Guzzo, Esquire
     Kelly & Crandall, PLC
18   3925 Chain Bridge Road
     Suite 202
19   Fairfax, Virginia  22030
     Counsel for the plaintiffs
20
     David N. Anthony, Esquire
21   Troutman Sanders, LLP
     Troutman Sanders Building
22   1001 Haxall Point
     Richmond, Virginia  23219
23

24              Peppy Peterson, RPR
                Official Court Reporter
25            United States District Court

USCA4 Appeal: 18-1827    Doc: 22-1    Filed: 10/15/2018    Pg: 129 of 253
Case 3:17-cv-00461-REP-RCY    Document 48    Filed 10/16/17    Page 2 of 34 PageID# 1096

2

```
 1    APPEARANCES:  (cont'g)

 2    Justin A. Gray, Esquire
      Karrie S. Wichtman, Esquire
 3    Rosette, LLP
      25344 Red Arrow Highway
 4    Mattawan, Michigan  49071
      Counsel for the defendants
 5
      Richard L. Scheff, Esquire
 6    Montgomery McCracken Walker & Rhoads, LLP
      123 South Broad Street
 7    Philadelphia, Pennsylvania  19109
      Counsel for defendant Matt Martorello
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

USCA4 Appeal: 18-1827    Doc: 22-1       Filed: 10/15/2018    Pg: 130 of 253
Case 3:17-cv-00461-REP-RCY   Document 48   Filed 10/16/17   Page 3 of 34 PageID# 1097

3

P R O C E E D I N G S

        THE COURT:  Hello.  This is Williams against Big
Picture Loans, civil action 3:17cv461.  Starting with counsel
for the plaintiffs, who is here for whom, and when you speak,
please give your name.

        MS. KELLY:  Good morning, Judge.  This is Kristi
Kelly with Kelly & Crandall for the plaintiff.  Also with me
for the plaintiffs is Andrew Guzzo.

        MR. ANTHONY:  Your Honor, this is David Anthony at
Troutman Sanders here on behalf of the defendants.  I'm also
here with Karrie Wichtman and Justin Gray who are representing
what I would refer to as the Big Picture defendants, and then
Richard Scheff who is representing individual defendant Matt
Martorello is here as well.

        THE COURT:  All right.  I was in a trial last week
and began -- was to begin another one today after picking the
jury on Friday upon conclusion of the first trial, so I didn't
have time, and I referred these discovery matters to Judge
Young.

        I'm not taking away the reference, but I read them,
and they are most troubling to me, and so I want to sort
through some of them with you, because I anticipate that the
dilatory response to discovery is going to impact the schedule
of filing briefs, et cetera, on the jurisdictional issue.  I'd

USCA4 Appeal: 18-1827    Doc: 22-1    Filed: 10/15/2018    Pg: 131 of 253
Case 3:17-cv-00461-REP-RCY   Document 48   Filed 10/16/17   Page 4 of 34 PageID# 1098

4

1    like to set some principles for you having read what you

2    submitted to Judge Young.

3         One, there isn't any reason a party can't be deposed

4    under Rule 30(b)(1) and Rule 30(b)(6), or a nonparty for that

5    matter, so long as the depositions are kept distinct and

6    separate; all right?

7         Second, the *Breakthrough* analysis is not confined, as

8    the defendants contend, to simply the factors that are outlined

9    in that particular case, and, in particular, as I think

10   *Breakthrough* makes quite clear, what happened before is

11   pertinent to what's happening after the Red Rock transfer.  In

12   particular, the issue involves the intent of the transfer and

13   how the transfer -- how things were handled before and after

14   and can, in fact, implicate matters related to the privilege

15   claims.

16        There is not, as I understand the papers so far, an

17   effort to pierce the privilege by virtue of the fraud-crime

18   exception.  However, there is a statement or a citation to

19   *Rambus* and to other authorities about the potential loss of

20   privilege.  And looking at the issues that are being raised,

21   you need to get this discovery sorted out.

22        Ms. Kelly, what is -- the other thing is, generally

23   discovery respecting Red Rock, so long as it is related to

24   issues that have to do with the transfer of ownership, are fair

25   game for discovery under the allegation of the -- in the

USCA4 Appeal: 18-1827    Doc: 22-1         Filed: 10/15/2018    Pg: 132 of 253
Case 3:17-cv-00461-REP-RCY   Document 48   Filed 10/16/17   Page 5 of 34 PageID# 1099

5

1   complaint which is sufficient, certainly, to survive a 12(b)(6)

2   motion as to -- and any motion, facial motion for discovery at

3   this juncture -- I mean for jurisdiction at this juncture.

4           The next issue is privileges.  How many privileges --

5   documents are being claimed, Ms. Kelly?

6           MS. KELLY:  Judge, there's been three different

7   privilege logs that have been served to us.  Some of them, it's

8   very difficult, based on the descriptions, to even identify

9   what is being withheld.

10          THE COURT:  Don't be using terms like "some of them."

11  You have to be specific.  How many privilege logs and who were

12  they filed by?

13          MS. KELLY:  It's all -- this discovery dispute is

14  solely with the Big Picture Loan defendants.

15          THE COURT:  They have filed --

16          MS. KELLY:  They have three privilege logs that have

17  been served.  The problem is, they're also withholding

18  documents on the basis of legislative privilege which, first,

19  we don't think is appropriate, and, second, they're not logging

20  it, so we don't even know what's being withheld.

21          There is an objection log where they just identify a

22  document, and so there's approximately 5,000 documents on an

23  objection log, and we believe that the documents that they're

24  withholding for legislative privilege are on the objection log.

25          THE COURT:  Excuse me.  Is the objection log a

1   privilege objection or objection for something else?

2        MS. KELLY:  We've been told that the objection log is

3   related to Red Rock tribal documents and legislative privilege

4   documents.  Then there's three separate privilege logs.

5        THE COURT:  What do you mean privilege logs;

6   attorney-client privilege, work-product privilege, what?

7        MS. KELLY:  It's both attorney-client and

8   work-product privilege.

9        THE COURT:  Why are there three of them?

10        MS. KELLY:  Because we allowed them to do a rolling

11   production so we wouldn't delay the depositions.

12        THE COURT:  What's the total number of documents

13   claimed on the attorney-client privilege and the work-product

14   privilege claims log?

15        MS. KELLY:  There's approximately -- on the second

16   one there's approximately 20 documents.

17        THE COURT:  Excuse me.  Mr. Anthony, how many

18   documents have you claimed privilege to?

19        MR. ANTHONY:  Your Honor, I'm going to have to refer

20   to Ms. Wichtman or Mr. Gray.  They know that better than I do,

21   so let me introduce you to them again.

22        MR. GRAY:  Your Honor, I'm pulling the information up

23   now for the three logs.

24        THE COURT:  Who is that?

25        MR. GRAY:  Justin Gray, Your Honor.  I'm sorry.

```
1              MS. KELLY:  Judge, this is Kristi Kelly.  On the

2    second privilege log, there are 20 documents per page, and it's

3    a 17-page log.  I'm sorry, we're in a deposition right now, so

4    I don't have it in front of me.

5              THE COURT:  So that's 340 documents.

6              MS. KELLY:  Then the third log has about 12 documents

7    on it.  It's only two pages.

8              THE COURT:  The first one?

9              MS. KELLY:  That's the third log, Judge.  Sorry.

10             THE COURT:  How many in the first one?

11             MR. ANTHONY:  Your Honor, this is David Anthony.  I'm

12   just going to walk away for 30 seconds so I can grab my laptop,

13   and I'll be right back.

14             THE COURT:  Sure.

15             MS. WICHTMAN:  Your Honor, this is Karrie Wichtman.

16   There are 80 documents.

17             THE COURT:  All right, 80.  You are to file -- which

18   is it that you can't understand the privilege on, Ms. Kelly?

19             MS. KELLY:  Judge, the privilege log that I thought

20   was the least descriptive, it didn't have dates or it didn't

21   accord with the rules we normally have under *Rambus*, was the

22   second privilege log.

23             THE COURT:  All right.  Then your appropriate remedy

24   is to file a motion to have the privilege claimed as waived and

25   brief it, because it's an inadequate log if that's your
```

USCA4 Appeal: 18-1827    Doc: 22-1    Filed: 10/15/2018    Pg: 135 of 253
Case 3:17-cv-00461-REP-RCY   Document 48   Filed 10/16/17   Page 8 of 34 PageID# 1102

8

1    position.  In the event that, perhaps, that may be wrong, there

2    needs to be filed by the defendants a brief explaining each of

3    the privileges, briefly explain why you claim each, and then

4    you will have, please, in a notebook, each privileged document,

5    and in front -- and tabbed with an index, and you will please

6    describe the privilege claimed and explain in a brief one-page

7    summary why there is such a claim.

8           Copies of those papers will have to go to the

9    plaintiff so they can respond to them.  We'll see where we go

10   from there.  We'll set a schedule for that.  When are you going

11   to file the privilege -- the attorney-client privilege and

12   work-product privilege, Ms. Kelly?

13          MS. KELLY:  Judge, we can do that in seven days.

14          THE COURT:  Give me a date.  Do you have a calendar

15   in front of you?

16          MS. KELLY:  It would be October 22nd -- or 23rd.

17          THE COURT:  That's a motion to declare the second

18   privilege log waived; is that what you are talking about?

19          MS. KELLY:  That is, Judge, but we'd like the

20   opportunity to address the other two logs as well.  We're at a

21   deposition right now, so I can't speak that we wouldn't want to

22   try to attack anything on either of the other two logs.

23          THE COURT:  All right, you file all of them

24   October 23rd.  Mr. Anthony, your response?

25          MR. ANTHONY:  We'd like at least a week, Judge.

```
 1              THE COURT:  That would be the 30th; is that right?

 2              MR. ANTHONY:  Yes, sir.

 3              THE COURT:  All right.  Your reply, Ms. Kelly?

 4              MS. KELLY:  If we could have until November 8th.

 5              THE COURT:  November 8th.  These privilege claims

 6    have slowed things down here, and if I find that these

 7    privileges are not well-taken or that the logs are not

 8    sufficient, then I'll entertain motions to assess costs of

 9    additional discovery or whatever at a later time, but I'll

10    abide the event.

11              Now, as to the filing of what I told you to file, Mr.

12    Anthony, or whoever is going to address these three privilege

13    logs, when are you going to file the papers that I told you to

14    file along with the claimed privilege documents and

15    explanations properly notebooked and tabbed?  When are you

16    going to do that, and is that Big Picture?

17              MR. ANTHONY:  Yes, sir.  I'm going to put you on

18    mute, Judge, just so I can -- actually, how long do you guys

19    think that we'll need for that?  I'm thinking at least a week,

20    ten days.

21              MR. GRAY:  Probably ten considering the volume.

22              MR. ANTHONY:  Ten days, Judge?  Can we have until

23    October 27th?

24              THE COURT:  10/27.  Your response, Ms. Kelly?

25              MS. KELLY:  Can we have until November 8th, please.
```

USCA4 Appeal: 18-1827    Doc: 22-1         Filed: 10/15/2018    Pg: 137 of 253

1          THE COURT:  November 8th.  Your reply, Mr. Anthony?

2          MR. ANTHONY:  November 18th.

3          THE COURT:  You see what you all have done is slowed

4   down this jurisdictional inquiry sufficiently here that I don't

5   know how I can deal with it on the schedule.  Given the delays

6   that have been interposed here, I don't see how I can possibly

7   hold the plaintiffs to the date that I gave them.  So I'll have

8   to reconsider those.

9          As to legislative privilege, what legislative

10   privilege is somebody asserting?  Will somebody tell me that?

11          MS. KELLY:  Judge, this is the plaintiffs.  We're not

12   really sure.

13          THE COURT:  What is the legislative privilege being

14   claimed, and who is it being claimed by?

15          MR. GRAY:  Your Honor, this is Justin Gray.  To the

16   extent that the discovery requests were broad-reaching and one

17   of the named parties is the tribal secretary, we asserted

18   legislative privilege to the named officers in defense of

19   documents or information they may have in their capacity as a

20   tribal official.

21          THE COURT:  You can't do that.  The mere fact that

22   they have documents in their possession as a tribal official

23   will get you nowhere.  A, you have to establish that there is a

24   legislative privilege.  I don't know that it's ever been held

25   that there is, but, B, under the traditional law of legislative

USCA4 Appeal: 18-1827    Doc: 22-1    Filed: 10/15/2018    Pg: 138 of 253
Case 3:17-cv-00461-REP-RCY   Document 48   Filed 10/16/17   Page 11 of 34 PageID# 1105

11

1    privilege, you have to establish an entitlement to the

2    legislative privilege by, inter alia, describing that it

3    goes -- that what you are holding back went through --

4    happened, was generated in the process of some legislation.  If

5    you don't do that, you lose.  And how many documents have you

6    claimed legislative privilege as to?

7            MR. GRAY:  Your Honor, I'm not sure.  This is Justin

8    Gray again.  The documents held by individuals have been

9    produced.  Documents held by the tribe have not, and, right

10   now, I believe we're looking at three separate documents that

11   are -- in the first log three documents held or redacted based

12   on legislative privilege.

13           THE COURT:  You file a brief on legislative privilege

14   as to the documents you are withholding.  Do the same process

15   that is used in the attorney-client privilege, work-product

16   privilege.  You want to follow the same schedule?

17           MR. ANTHONY:  Yes, sir.

18           THE COURT:  All right.  Now, what are these Red Rock

19   documents that you are withholding?

20           MR. GRAY:  Your Honor, this is Justin Gray again, and

21   this is the issue that we've been working back and forth with

22   Ms. Kelly about, is the limits to what the jurisdictional

23   discovery included, and it's our understanding under

24   *Breakthrough* that the entity asserting tribal sovereign

25   immunity is the entity to be analyzed under the *Breakthrough*

USCA4 Appeal: 18-1827    Doc: 22-1    Filed: 10/15/2018    Pg: 139 of 253
Case 3:17-cv-00461-REP-RCY   Document 48   Filed 10/16/17   Page 12 of 34 PageID# 1106

12

1    factors, and Red Rock is not --

2           THE COURT:  I've read *Breakthrough*.  You've read it,

3    and it doesn't limit -- the *Breakthrough* analysis doesn't limit

4    discovery to just the factors that were at issue there or just

5    to the entities as to which the analysis is to be applied,

6    because documents from a third party, for example, and back and

7    forth to a third party can be highly relevant in deciding the

8    fundamental question.

9           And so you can't -- you can't -- as I read your

10   letter, you don't think you have to produce any Red Rock

11   documents, and I don't think that's right.  And *Breakthrough*

12   certainly doesn't establish that.

13          MR. GRAY:  Your Honor, we, at one point, offered to

14   go back as far as January 1, 2014, to encompass all the

15   documents related to the transaction that you just described

16   earlier in this call.  We face a couple other issues, and the

17   fact that Red Rock --

18          THE COURT:  Slow down.  You are going too fast.

19          MR. GRAY:  Sorry, sir.

20          THE COURT:  So you are agreeing to provide all

21   documents that have any relation to the transaction if they're

22   in Red Rock's possession; is that what you are saying?

23          MR. GRAY:  Your Honor, yes, the documents would be in

24   Big Picture's possession at this point because Red Rock is a

25   dissolved company.

```
 1              THE COURT:  All right.  So they transferred

 2    documents, and you can identify those; is that right?

 3              MR. GRAY:  Yes.  We offered a January 1, 2014, cutoff

 4    date for those documents.

 5              THE COURT:  Why?  Why is that date appropriate?

 6              MR. GRAY:  That sort of encompasses the beginning of

 7    the transaction that's at issue.

 8              THE COURT:  How do you define the beginning of the

 9    transaction?

10              MR. GRAY:  Essentially our clients begin planning and

11    looking to create and establish Big Picture and Ascension on or

12    around that time or shortly thereafter.

13              THE COURT:  Well, Ms. Kelly, what's wrong with that

14    time limitation?

15              MS. KELLY:  Judge, what we think is important for

16    Breakthrough is why they decided to potentially take all of the

17    Red Rock assets and purchase them, and we think we need farther

18    back because the financial relationship is really important and

19    relevant.

20              THE COURT:  Why do you need further back?  What you

21    need, it seems to me, is from the time consideration of the

22    deal began between the parties or by Red Rock.  What date would

23    you think that would be?  And I'm not talking about formally

24    structuring the paperwork.  I'm talking about when did Red Rock

25    decide it would be a good idea to divest itself and make the
```

USCA4 Appeal: 18-1827    Doc: 22-1    Filed: 10/15/2018    Pg: 141 of 253
Case 3:17-cv-00461-REP-RCY    Document 48    Filed 10/16/17    Page 14 of 34 PageID# 1108

14

```
 1    transfer to Big Picture, and why was that done.  All of that,

 2    it seems to me, is open to discovery if it was -- no matter

 3    when it was.  Mr. Gray, do you disagree with that?

 4              MR. GRAY:  Your Honor, not entirely, but based on the

 5    Breakthrough factors and looking at Big Picture today, every

 6    case that has gone through Breakthrough has considered -- every

 7    case that has gone through Breakthrough has considered --

 8              THE COURT:  You are running too fast, and I want you

 9    to stop right now.  You do consider the entity asserting

10    immunity, but you cannot isolate the entity claiming the

11    immunity under Breakthrough and avoid producing all the

12    documents that led up to the transfer.

13              You can't do that, and Breakthrough doesn't hold it,

14    and nothing that I know of does.  And if you have a case that

15    holds it, I hold otherwise because that's just not what the law

16    is, as I understand it.  So when did Red Rock begin thinking

17    about and analyzing and deciding whether or not to make this

18    transfer and -- when did that happen?

19              MS. KELLY:  Judge, this is Kristi Kelly for the

20    plaintiff.  It's our position that it wasn't Red Rock or the

21    tribe who decided it, because the effect of the transition from

22    Red Rock --

23              THE COURT:  You are talking too much.  You are

24    talking too much.  Stop there and tell me who it is that did

25    decide it.
```

USCA4 Appeal: 18-1827   Doc: 22-1      Filed: 10/15/2018   Pg: 142 of 253
Case 3:17-cv-00461-REP-RCY   Document 48   Filed 10/16/17   Page 15 of 34 PageID# 1109

15

 1            MS. KELLY:  I believe we believe it was Mr.

 2   Martorello, the other defendant in this case, because there was

 3   regulatory crackdown on payday lending businesses --

 4            THE COURT:  Yes, Ms. Kelly, I read your paper and I'm

 5   familiar with that.  But there had to be a transfer, didn't

 6   there?  There had to be contemplation of it by Red Rock in

 7   addition to Mr. Martorello; right?

 8            MS. KELLY:  Yes, there was, Judge.

 9            THE COURT:  Of course, there had to be.  Red Rock was

10   a corporate entity, wasn't it?

11            MS. KELLY:  Correct.

12            THE COURT:  And at some point in time, it and its

13   people, in conjunction with Martorello, or separately from him,

14   began contemplating the transfer that you say is the sham.  And

15   when did, in your mind, that contemplation by either Red Rock

16   or Martorello begin?

17            MS. KELLY:  It would have been in early 2014 based on

18   the documents we've seen.

19            THE COURT:  Then why don't you limit your Red Rock

20   request to January 1, 2014, and then if you find, in looking at

21   those documents, something that requires a further reach-back,

22   then you can file a supplement.

23            MS. KELLY:  That's fine, Judge.  The only issue that

24   we could foresee with that is that the lawyers, the general

25   counsel for Big Picture, handled the majority of the

```
 1   correspondences, and so the Big Picture employees and tribal

 2   officials may not be on any of those correspondences.  That

 3   would be our only concern.

 4           THE COURT:  If they're handled by the general

 5   counsel, you must -- they're going to identify them, and if

 6   they haven't claimed them as privilege, then they're not

 7   privileged.  If they have claimed them as privileged, they'll

 8   be on the privilege log; isn't that correct, Mr. Anthony or Mr.

 9   Gray?

10           MR. GRAY:  Yes, Your Honor.

11           THE COURT:  All right.  Then we can deal with that.

12   To the extent that any privilege document deals with the

13   contemplation of the transfer that's at issue, you need to

14   separately identify that for Ms. Kelly and for the Court so we

15   understand that scope; all right?

16           MR. ANTHONY:  Yes, sir.

17           THE COURT:  Now, where does that leave us?  We've

18   taken care of the legislative privilege, the Red Rock

19   documents, the motion to waive by the plaintiffs, and all

20   privilege claims briefed, et cetera, et cetera, by the

21   defendants, Big Picture, or whoever is claiming the privilege.

22   Does Judge Lauck have the *Gibbs* case?

23           MS. KELLY:  That's correct, Judge.

24           THE COURT:  Where does that case stand?

25           MS. KELLY:  We have briefed the motions to dismiss,
```

```
1    and we're filing our reply brief for the jurisdictional

2    discovery requests we made --

3            MR. ANTHONY:  Judge, Judge Lauck did not order

4    jurisdictional discovery.  That issue in the scope of it is

5    being briefed.

6            MS. KELLY:  Correct.  But we're moving forward with

7    the non-tribal lending entities briefing, the 12(b)(6) and

8    various arbitration motions.  There are two separate cases,

9    because the defendants in the first case, the non-tribal

10   lending entities, also transferred back control to the tribal

11   lending entities after the payday lending breakdown.

12           So in order to cease the lending in Virginia, we had

13   to name the tribal lending entities, and that is the case where

14   we are -- we have briefed the jurisdictional discovery issue.

15           THE COURT:  All right.  Okay.  Now, does that take

16   care of the discovery questions that you all have, or do you

17   have any left to go to Judge Young?

18           MS. KELLY:  Judge, for the plaintiffs, we also have

19   the issue of redacted documents that were -- there were

20   probably close to at least one-third of the production was

21   redacted.

22           MR. GRAY:  We can confirm that with your decisions on

23   what counts as documents responsive to the transfer, we'll be

24   able to sort those and produce them now that we understand the

25   Court's position.
```

```
 1              THE COURT:  So the redactions will be eliminated; is
 2      that right?
 3              MS. WICHTMAN:  As it relates to Red Rock and Duck
 4      Creek.
 5              THE COURT:  Who is that?
 6              MS. WICHTMAN:  Karrie Wichtman, Your Honor.
 7              THE COURT:  Why else did you redact them, Ms.
 8      Wichtman?
 9              MS. WICHTMAN:  There were broad requests for
10      third-party service providers, and at this stage in
11      jurisdictional discovery, the vendors and capital sources of
12      Big Picture loans we didn't feel -- we stood on our objections
13      related to those.
14              THE COURT:  Ms. Kelly, why do you need the vendors
15      and capital providers?
16              MS. KELLY:  Well, the capital providers is about the
17      financing and who gets what and who is really in control of the
18      lending operation.  And we believe that's part of the last
19      Breakthrough factors.  So to the extent that the tribe is not
20      funding the loans and the loans are immediately being sold to
21      third parties and they're getting returns on the investment
22      that the tribe is not getting, we think that is entirely
23      relevant to the last Breakthrough factor.
24              THE COURT:  That's the capital sources issue.  How
25      about the vendors?
```

USCA4 Appeal: 18-1827    Doc: 22-1    Filed: 10/15/2018    Pg: 146 of 253
Case 3:17-cv-00461-REP-RCY   Document 48   Filed 10/16/17   Page 19 of 34 PageID# 1113

19

```
1              MS. KELLY:  For the vendors, that is not as

2     necessary.  I will concede that because of Mr. Martorello's

3     production we've been able to identify a lot of them because he

4     produces the documents un-redacted.

5              THE COURT:  All right.  You withdraw your request for

6     the vendors at this time.

7              MS. KELLY:  We -- I don't think we ever really

8     specifically asked for that, but we will agree they don't need

9     to un-redact the vendor agreement.

10             THE COURT:  The capital services, why isn't -- Ms.

11    Wichtman or Mr. Gray or Mr. Anthony, why are the capital

12    sources leading up to and what the capital sources people were

13    told about what they were going to invest to, what the

14    structure was to be, the considerations of the structure, why

15    isn't all of that available to the plaintiffs where they allege

16    what they allege here?

17             MR. GRAY:  Your Honor, at no point did we disclose

18    there were the capital sources, and, at this point, through

19    production provided by Matt Martorello, all the notes and

20    documents have been provided.  So I think we're in a position

21    right now where we're talking form over substance of what Ms.

22    Kelly actually needs.

23             THE COURT:  Then you provide everything about the

24    capital sources that you have, even if it's the same documents

25    that Martorello provided, because you may have just to show
```

USCA4 Appeal: 18-1827    Doc: 22-1        Filed: 10/15/2018    Pg: 147 of 253
Case 3:17-cv-00461-REP-RCY   Document 48   Filed 10/16/17   Page 20 of 34 PageID# 1114

20

1   that you got them or had them, and if there are notes on them,

2   then they're different documents anyway, because I don't see

3   any reason why the financial structure of this transaction is

4   not open to discovery in terms of assessing the jurisdictional

5   issue, and I think Ms. Kelly is right that it does implicate

6   *Breakthrough*.

7          MS. WICHTMAN:  Your Honor, this is Karrie Wichtman.

8   I would just clarify that we have not -- we have withheld

9   capital source related to the financing of the transaction, but

10  we've also withheld capital sources related to the operation of

11  the business, and in our understanding of your September 1st

12  order, it was about jurisdiction, not necessarily operation of

13  the business but actually the structure of the business.  So

14  that's why we withheld the capital sources related to the

15  operation of the business.  We certainly --

16         THE COURT:  Why do you need the operation of the

17  business, Ms. Kelly?

18         MS. KELLY:  Judge, so the operation of the business

19  is whether the tribe is in control.  So in one of the

20  agreements that we've seen for lending to the tribes to fund

21  this business, the lender exerts control over basic day-to-day

22  functions, and the capital agreements would also show what

23  return that lender is entitled to get.  And, in some

24  situations, they may be receiving more than the tribe.

25         It may also explain the structure, whether they

USCA4 Appeal: 18-1827    Doc: 22-1    Filed: 10/15/2018    Pg: 148 of 253
Case 3:17-cv-00461-REP-RCY  Document 48  Filed 10/16/17  Page 21 of 34 PageID# 1115

21

1    purchased loans that are immediately funded.  Any number of

2    things could go toward the *Breakthrough* factors, but we don't

3    have the benefit of seeing those, but we think they're

4    definitely relevant to this inquiry.

5            THE COURT:  Ms. Wichtman, anything else to say?

6            MS. WICHTMAN:  I would say we provided information

7    related to the capital sources that are used by the business in

8    our briefs and in the interrogatory responses to name them

9    generally, and specific information related to those capital

10   sources and their names are not relevant to jurisdiction and

11   the *Breakthrough* factors.

12           THE COURT:  All right, that objection is overruled.

13   All documents relating to the structure and operation of the

14   business are certainly pertinent to understanding who it is

15   that's driving the boat, who it is that is in control, whether

16   or not the tribe really has any say-so in any of the matters or

17   is just being used as a passthrough.

18           There is no better way to assess that than to assess

19   the documents by which the financial people structured the

20   arrangement and by which operations are conducted.  It seems to

21   me that -- that's not just *Breakthrough*.  That has to do with

22   any transaction of any kind that is alleged to be a sham or a

23   charade, because the truth then comes out with respect to how

24   it is that the operation is conducted.  And if the business

25   operations are all squared away, for example, and the tribe

1    gets X and the other person gets Y and that's pursuant to the

2    structure, it shows what role the tribe plays in it, then

3    that's all pertinent to the discovery -- to the jurisdictional

4    issue just as is the fact that it's, as Ms. Kelly says, she

5    thinks it is.  So that objection is overruled.  There was a

6    complaint about Ms. Kelly using subpoenas in addition to

7    document requests.  What's the objection to that?

8         MR. GRAY:  Your Honor, we didn't believe the

9    jurisdictional order was all-encompassing of running avenues

10   and essentially a fishing expedition to anybody and everybody

11   she found the name of in a document, and we believe that the

12   purpose of those is essentially --

13        THE COURT:  Mr. Gray, you're going to have to take

14   lessons in slowing down, because neither the court reporter nor

15   I can follow what you are saying.

16        MR. GRAY:  I apologize, Your Honor.

17        THE COURT:  And you need to identify yourself when

18   you are talking.  So your position, Mr. Gray, is that the order

19   I issued restricted her to the particular things that were

20   mentioned therein; is that what you are saying by way of --

21        MR. GRAY:  We believe it did, Your Honor.  It limited

22   it to the jurisdiction of Big Picture as it claims are its

23   mentality status, and all the information she is seeking in

24   these third parties has likely been supplied already, or will

25   be based on today's decision, and we believe the purpose is

USCA4 Appeal: 18-1827    Doc: 22-1    Filed: 10/15/2018    Pg: 150 of 253
Case 3:17-cv-00461-REP-RCY   Document 48   Filed 10/16/17   Page 23 of 34 PageID# 1117

23

1  essentially to frustrate the business while it operates today

2  as opposed to litigate the dispute.

3         THE COURT:  Ms. Kelly?

4         MS. KELLY:  Thank you, Judge.  We issued either four

5  or five subpoenas, and the majority of them, I believe except

6  for two, were bank subpoenas because they were not giving us

7  the information, and we wanted to meet our deadline.

8         THE COURT:  Who is "they" in that sentence?

9         MS. KELLY:  The Big Picture Loan defendants.  And so

10  through that, we learned that there are controls on their bank

11  accounts where the Big Picture defendants can't even sign for

12  wires or do -- control their own bank accounts, and so that led

13  us to do more discovery.  But the purpose of the subpoenas was

14  to meet our deadlines for briefing so that we would have all

15  the information.

16         THE COURT:  All right.  Well, the order doesn't limit

17  the kind of discovery that is available to any party.  It did

18  deal with the kind of discovery that you all were talking about

19  at the conference where we set up this arrangement and

20  schedule, but it's perfectly all right to use any procedural

21  vehicle authorized by the Federal Rules of Civil Procedure in

22  pursuit of the discovery about a jurisdictional issue, and I

23  don't see anything that Ms. Kelly has done or said is intended

24  to interfere with the operation of the business, and so that

25  objection is overruled, and, in any event, it is the

USCA4 Appeal: 18-1827   Doc: 22-1   Filed: 10/15/2018   Pg: 151 of 253
Case 3:17-cv-00461-REP-RCY   Document 48   Filed 10/16/17   Page 24 of 34 PageID# 1118

24

1   responsibility of any party receiving a subpoena to raise an

2   objection to it and -- or seek protection from it.  Has anybody

3   done that that you've subpoenaed, Ms. Kelly?

4           MS. KELLY:  I don't think any of these -- no, not

5   that I'm aware of.

6           THE COURT:  If they haven't, then they have to comply

7   with them, and you get to look at them.  I don't see that you

8   have a whole lot of say in it, Mr. Gray, except to the extent

9   you had a contention that it may have been interfering with

10  business operations, and, quite frankly, in over 50-something

11  years of practicing law, I have never seen that actually

12  happen, and there's nothing that you've shown in anything that

13  I've seen that would suggest that it is interfering with your

14  business operations.  It seems to me to be rather much an

15  obstructionist objection, so it's overruled.  Is there

16  anything -- you need to leave with Judge Young now, or have you

17  exhausted everything?

18          MS. KELLY:  The only other issue, Judge -- this is

19  Kristi Kelly.  The only other issue was the discovery that Big

20  Picture defendants propounded on the different plaintiffs.  We

21  have addressed that with the defendants, and we believe it's

22  completely outside the scope of the order.

23          It asks for things like when our plaintiffs went on

24  vacation, all their income for the past six years, and I don't

25  know how anything dealing with the specific plaintiffs could be

USCA4 Appeal: 18-1827    Doc: 22-1        Filed: 10/15/2018    Pg: 152 of 253
Case 3:17-cv-00461-REP-RCY   Document 48   Filed 10/16/17   Page 25 of 34 PageID# 1119

25

1    relative to the *Breakthrough* factors.

2         Our plaintiffs are low-income consumers, and the

3    discovery, in my opinion, was just to harass and belittle the

4    plaintiffs.

5         THE COURT:  All right, thank you.  Mr. Gray, why do

6    you need information like that on the discovery issues?

7         MR. GRAY:  Yes, Your Honor, this is Justin Gray.  The

8    complaint makes allegations not only against Big Picture and

9    Ascension but also against LVD officers, and it also attacks

10   the fundamental integrity of the loan agreements.

11        Our jurisdictional discovery is propounded on behalf

12   of the LVD officers, the four named Tribal Council members, and

13   it seeks a basis, first of all, to claim that they're not

14   immune from these allegations.

15        THE COURT:  Who is not immune?

16        MR. GRAY:  The complaint alleges that these LVD

17   officers are not immune because they have violated federal law.

18        THE COURT:  What is it that calls into analysis in

19   that process, the jurisdictional issue when the people went on

20   vacation and how much money they make, the plaintiffs?  How

21   does that work?

22        MR. GRAY:  Your Honor, the complaint goes back as far

23   as 2009 on certain instances, and we believe we're entitled to

24   find out exactly what information plaintiffs had going that far

25   back to support claims that my clients are not immune as

1    entities or officials of the tribe.

2           THE COURT:  I didn't ask you that.  I asked you how

3    it is that the vacation and income of the individual plaintiffs

4    applied here.

5           MR. GRAY:  Your Honor, we'd like to be able to

6    determine when and where these plaintiffs were when they used

7    our client's service, when and where they were when they took

8    the loan, when and where they were when they spent the loan.

9           THE COURT:  All right, Mr. Gray, excuse me.  A, that

10   isn't responsive to the question I asked you.  B, whether you

11   would like to or not is a prurient interest and is not

12   necessarily an interest related to valid discovery, and I

13   didn't ask my question right or I wouldn't have gotten those

14   answers.

15          So my question is, what relevance to the

16   jurisdictional issue for anybody does a plaintiff's vacation

17   schedule or income have?  Can you help me with that?

18          MR. GRAY:  Yes, Your Honor, and I'll be more

19   succinct.  The discovery we propounded had two of those issues

20   that Ms. Kelly had taken path to.  We have yet to receive their

21   objections and will work with them on some of the limits to

22   these, but primarily they allege these loans are procured by

23   fraud and that the choice-of-law provision is faulty, and we

24   believe that under the theory of tribal exhaustion, they're

25   relevant to tribal sovereignty and tribal immunity.

1          THE COURT:  How?

2          MR. GRAY:  Because the forum-selection provisions and

3     the choice-of-law provisions are duly authorized, valid, and

4     were not procured by fraud, and to the extent that the

5     allegations say that my clients have a faulty loan agreement, a

6     sham procedure, we believe we're able to investigate that.

7          The procedure for a dispute is a tribal court

8     mechanism.  The doctrine of tribal exhaustion should prevail

9     under the circumstances.  If Ms. Kelly or the plaintiffs have

10    evidence that this is somehow a sham, we'd like to be able to

11    review that.  This is not a situation --

12         THE COURT:  So how does the plaintiff's vacation

13    schedule show that?

14         MR. GRAY:  Like I said, Your Honor, perhaps some are

15    reaching.  The bulk are not.

16         THE COURT:  I'll tell you what.  Because you reached

17    and went too far on at least three of them, all your discovery

18    requests are stricken, and you may posit discovery requests

19    that confine to the issues you are talking about in such a way

20    as you can demonstrate when we next talk about it.

21         As of now, all of your discovery requests to the

22    plaintiff are stricken, and you start all over again.  That's

23    what happens when you go too far.

24         MR. GRAY:  Your Honor, are we entitled to -- this is

25    Justin Gray again.  Are we entitled to take depositions of the

USCA4 Appeal: 18-1827    Doc: 22-1        Filed: 10/15/2018    Pg: 155 of 253

1   plaintiffs?

2            THE COURT:  Yes, you are.

3            MR. GRAY:  Your Honor, this is Justin Gray again.  If

4   Ms. Kelly is through, we have a couple issues we'd like to

5   present to the Court as well.

6            THE COURT:  I don't know what you have left to

7   present given that your discoveries have been stricken.  What

8   is your issue?

9            MR. GRAY:  Your Honor, we'd like to look at a

10  reasonable limit to the discovery, and I'd like to back up one

11  second on what we have originally produced here.  We broke --

12           THE COURT:  Mr. Gray, excuse me.  I've read all that.

13           MR. GRAY:  Then the short and sweet, Your Honor, is

14  that we're at $140,000 deep, and we have documents that we now

15  need to go back through again.  The tier two and tier three

16  categories are --

17           THE COURT:  Slow down.

18           MR. GRAY:  The tier two and tier three production are

19  largely going to be duplicative at a cost of 700-plus thousand

20  dollars.  We believe everything that the Court has instructed

21  we turn over today will be encompassed in tier one production,

22  especially after we return to it based on your instructions,

23  and before our clients get into $700,000 of additional expense

24  at probably five weeks of realistic time, we think that the

25  discovery should be ended with tier one after we re-review this

1    collection based on today's instructions.

2            THE COURT:  My suggestion is that you file a detailed

3    brief respecting what you're talking about with respect to tier

4    one, tier two, and tier three, and my general approach -- this

5    is a case -- what is at stake here, Ms. Kelly?  How much can

6    the ad damnum be or the jury award be?

7            MS. KELLY:  Judge, the defendants have not told us

8    the amount of money that's at stake in Virginia, but in the

9    *Gibbs* case, we know that they took $93 million from Virginia

10   residents, and so we understand that Big Picture is a bit

11   smaller of an entity, so I would estimate that -- I mean, this

12   is just a really off-the-cuff guess, but approximately

13   $30 million would be at stake --

14           THE COURT:  Excuse me.  Mr. Gray, how much do you

15   think is at stake assuming she wins?

16           MR. GRAY:  Your Honor, our best estimate at this time

17   is less than $5 million from Virginia residents.

18           MS. KELLY:  And, Judge, this is Kristi Kelly, but any

19   of that money would be trebled, and as to their request about

20   tier one, we already agreed to that, to limit it to tier one

21   discovery in our meet-and-confer.  But we reserved the right to

22   have them search two other custodians after we reviewed their

23   most recent production.

24           The problem, though, is that half of their production

25   of 10,000 pages so far was redacted, and they withheld

1    approximately 5,000 documents.  So we are fine working with

2    them on the scope of the discovery, and we're not trying to be

3    punitive.  I already agreed to that.

4            THE COURT:  All right.  I think that is made clear.

5    I think your request for a limit on what you are calling tier

6    one, two tier, and tier three is premature until you do what

7    you're required to do, Mr. Gray, by what I've directed you to

8    do today, and then Ms. Kelly looks at it and then you all can

9    talk about it again, and you are free to raise that issue at a

10   later time.

11           As of this time, looking at the allegations of the

12   complaint, the information that has been provided in the

13   briefing and the papers on discovery and an assessment of what

14   counsel have said, the discovery sought so far has been -- is

15   proportional and is certainly appropriate.  So I don't see any

16   way that at this juncture it's appropriate for the Court to

17   impose further stricture.  What's the next point you've got,

18   Mr. Gray?

19           MR. GRAY:  Yes, Your Honor, I'm just checking notes.

20   We'd also like to ask for a limit on plaintiffs' deposition to

21   the named parties.  Again, this also all goes to the scope of

22   what is necessary to evaluate Big Picture as it operates today,

23   and we provided five times more documents than every case ever

24   to analyze Big Picture at a federal level, and we have produced

25   more documents in our initial motions than any motion has ever

 1   done before.

 2        We have provided depositions starting today and

 3   tomorrow and then of the other named defendants, and we think

 4   anything else is excessive for what the Court will need to

 5   evaluate the status of Big Picture and whether or not the named

 6   tribal officials are immune.

 7        THE COURT:  Ms. Kelly?  What kind of restrictions do

 8   you want?  I still don't understand it.

 9        MR. GRAY:  We're asking that the depositions

10   essentially be limited, Your Honor, to the parties, to the

11   named parties.

12        THE COURT:  Oh, okay.  What is your position, Ms.

13   Kelly?

14        MS. KELLY:  Judge, we've already agreed to that.  We

15   have two depositions noticed for two of the executives of

16   Ascension, but we said after we reviewed the production, we can

17   likely withdraw those.

18        THE COURT:  You are limited in your deposition to the

19   parties, and you are waiting to see what happens, and so the

20   request is premature, but as a practical matter, there's no

21   reason to limit anybody's depositions to just the parties where

22   some nonparty may have pertinent information.

23        Let us suppose, for example, that one of the lenders'

24   documents shows facts that reasonably show that the tribe

25   doesn't have any real interest in this.  If they want to take a

1    deposition of that person to confirm what the operating

2    situation is and what the loan situation is, that's perfectly

3    all right.

4           I don't know where you came to this nonparty/party

5    distinction in the first place, Mr. Gray, but I don't think

6    it's appropriate.  But in any event, it's premature, and she

7    can -- you can raise it after she decides to do whatever she's

8    going to do with the two nonparty depositions that she's

9    noticed.

10          Is there anything else -- I'll tell Judge Young that

11   this matter is moot now based on what we talked about today.

12          MS. KELLY:  Judge, for the plaintiff, that's correct.

13   We really appreciate your taking the time to handle this.

14          THE COURT:  If I hadn't had a free day and Judge

15   Young wasn't tied up in a settlement conference, I wouldn't

16   have done it, but it needs to get done because of the schedule

17   we're on.  How about you, Mr. Gray; is that okay?

18          MR. GRAY:  Your Honor, I believe we've addressed all

19   the issues other than revising the calendar going forward with

20   this.  We have briefing deadlines on these other topics right

21   now, but looking at where we are now, I believe plaintiffs'

22   brief is due November 3.

23          THE COURT:  Ms. Kelly, you can't get your brief done

24   and get everything done by this time given the schedule that

25   we've got, so my suggestion is that the two of you sit down

1  after you assess the documents as they come in, you get some

2  things under control, and we'll set a new date for your

3  response, Ms. Kelly, and a new date for your reply, Mr. Gray.

4  And, in the meantime, that provision of the order will be held

5  in suspension and not apply.

6           MS. KELLY:  Thank you, Judge.

7           THE COURT:  Now go back to your depositions and see

8  what you can do.  What have you done about trying to settle

9  this case, folks?  Have you had a discussion with any of the

10  magistrate judges?

11          MS. KELLY:  Judge, this is Kristi Kelly.  Mr. Anthony

12  and I have discussed broad ideas, and we've talked about other

13  settlements in other cases, but I just don't know that we're

14  there.

15          MR. ANTHONY:  There has not been, Judge -- this is

16  David Anthony -- conversations yet with a magistrate judge.

17          THE COURT:  Is the magistrate judge assigned?  I just

18  haven't looked at the docket.

19          MR. ANTHONY:  I seem to remember yes, but I'm not

20  sure, and I guess since Judge Young was involved in the

21  discovery, that would be Judge Novak, but I can't remember,

22  Judge.  I think yes, but I'm not sure.

23          THE COURT:  Actually now I remember.  Ms. Hooper told

24  me I did assign it to Judge Young, and I didn't see any problem

25  with him being involved in the discovery as well as settlement,

USCA4 Appeal: 18-1827    Doc: 22-1    Filed: 10/15/2018    Pg: 161 of 253
Case 3:17-cv-00461-REP-RCY    Document 48    Filed 10/16/17    Page 34 of 34 PageID# 1128

34

```
 1    so I'll double-check that, but you all need to sit down and
 2    sort through this case.
 3              MS. KELLY:  Thank you, Judge.
 4              THE COURT:  All right.  And you need to get -- do you
 5    all need the transcript so you can make sure you understand you
 6    comply with everything; is that correct?
 7              MS. KELLY:  Yes, plaintiffs would like to order the
 8    transcript.
 9              MR. ANTHONY:  This is David Anthony on behalf of
10    defendants, yes, sir.
11              THE COURT:  Both of you have it.  Thank you.
12              MR. ANTHONY:  Thank you.
13              THE COURT:  Bye-bye.
14
15                        (End of proceedings.)
16
17
18              I certify that the foregoing is a correct transcript
19    from the record of proceedings in the above-entitled matter.
20
21
22    _____/s/_____              _____
      P. E. Peterson, RPR             Date
23
24
25
```

**-138-**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

LULA WILLIAMS, <u>et al.</u>,
on behalf of themselves and all
individuals similarly situated,

    Plaintiffs,

v.                                    Civil Action No. 3:17-cv-461

BIG PICTURE LOANS, LLC, <u>et al.</u>,

    Defendants.

**ORDER**

Having considered the CLASS ACTION COMPLAINT (ECF No. 1), the MOTION OF DEFENDANT MATT MARTORELLO TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12 (ECF No. 36), and the supporting, opposing, and reply memoranda, the Court finds that:

(1) The CLASS ACTION COMPLAINT plausibly and adequately pleads a claim for declaratory relief (COUNT ONE) in that the choice-of-law and forum-selection provisions of the agreements at issue are void and unenforceable under Virginia law; and

(2) The CLASS ACTION COMPLAINT plausibly and adequately pleads violations of 18 U.S.C. § 1962(c) in COUNT TWO and 18 U.S.C. § 1962(d) in COUNT THREE;

(3) The CLASS ACTION COMPLAINT plausibly and adequately pleads violations of Virginia's usury laws; and

(4) The CLASS ACTION COMPLAINT plausibly and adequately pleads a claim for unjust enrichment in COUNT FIVE; and

Therefore, it is hereby ORDERED that the MOTION OF DEFENDANT MATT MARTORELLO TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12 (ECF No. 36) is denied.

It is further ORDERED that the facts and legal contentions are adequately presented in the materials before the Court and oral argument would not aid the decisional process.

It is so ORDERED.

_____ /s/      _REP_____

Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: March ___, 2018

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

LULA WILLIAMS, <u>et al.</u>,
on behalf of themselves and all
individuals similarly situated,

    Plaintiffs,

v.                                          Civil Action No. 3:17-cv-461

BIG PICTURE LOANS, LLC, <u>et al.</u>,

    Defendants.

**ORDER**

For the reasons that will be set forth in a forthcoming Memorandum Opinion, it is hereby ORDERED that DEFENDANTS BIG PICTURE LOANS AND ASCENSION TECHNOLOGIES' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (ECF No. 22) is denied.

It is further ORDERED that the facts and legal contentions are adequately presented in the materials before the Court and oral argument would not aid the decisional process.

As all pending motions to dismiss have been resolved, it is further ORDERED that the parties shall communicate with chambers to set a pretrial and trial schedule in this action.

It is so ORDERED.

                             /s/        _REP_

                            Robert E. Payne
                            Senior United States District Judge

Richmond, Virginia
Date: June _26_, 2018

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LULA WILLIAMS, et al.,
on behalf of themselves and all
individuals similarly situated,

    Plaintiffs,

v.                                    Civil Action No. 3:17-cv-461

BIG PICTURE LOANS, LLC, et al.,

    Defendants.


**ORDER**

Having considered the CLASS ACTION COMPLAINT (ECF No. 1), DEFENDANTS BIG PICTURE LOANS, LLC, ASCENSION TECHNOLOGIES, LLC, JAMES WILLIAMS, JR., GERTRUDE MCGESHICK, SUSAN MCGESHICK, AND GIIWEGIIZHIGOOKWAY MARTIN'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED (ECF No. 24), and the supporting, opposing, and reply memoranda, the Court finds that:

(1)  The CLASS ACTION COMPLAINT plausibly and adequately alleges that the choice-of-law provision in the agreements at issue, on its face, prospectively effects a waiver of federally created rights and thus is not enforceable; and

(2)  The CLASS ACTION COMPLAINT plausibly and adequately alleges that the chosen law itself prospectively affects consumer federal claims and remedies by specifically limiting

those rights under the Tribal Consumer Financial Services Regulatory Code; and

(3) The CLASS ACTION COMPLAINT plausibly and adequately alleges that the choice-of-law provision at issue is unreasonable and unfair; and

(4) The CLASS ACTION COMPLAINT plausibly and adequately alleges that the choice-of-law provision requires review by a court (the LVD Tribal Court) that does not have subject matter jurisdiction over claims arising under federal law; and

(5) The CLASS ACTION COMPLAINT plausibly and adequately alleges that the choice-of-law provision is overreaching and is procedurally and substantively unconscionable; and

(6) The CLASS ACTION COMPLAINT plausibly and adequately alleges that the choice-of-law provision at issue violates the public policy of the Commonwealth of Virginia against usurious loans; and

(7) The CLASS ACTION COMPLAINT plausibly and adequately alleges that federal and Virginia law apply to the alleged class claims; and

(8) The CLASS ACTION COMPLAINT plausibly and adequately alleges the existence of actual and substantial controversies between Plaintiffs and Big Picture and Ascension.

Therefore, it is hereby ORDERED that DEFENDANTS BIG PICTURE LOANS, LLC, ASCENSION TECHNOLOGIES, LLC, JAMES WILLIAMS, JR.,

2

GERTRUDE MCGESHICK, SUSAN MCGESHICK, AND GIIWEGIIZHIGOOKWAY MARTIN'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED (ECF No. 24) is denied as to Big Picture and Ascension.

It is further ORDERED that the facts and legal contentions are adequately presented in the materials before the Court and oral argument would not aid the decisional process.

It is so ORDERED.

                                          /s/   REP
                                Robert E. Payne
                                Senior United States District Judge

Richmond, Virginia
Date: June 26, 2018

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

LULA WILLIAMS, GLORIA TURNAGE,
GEORGE HENGLE, DOWIN COFFY, and          Civil Case No. 3:17-cv-00461-REP
FELIX GILLISON, JR., *on behalf of themselves*
*and all individuals similarly situated*, :

                        Plaintiffs,

v.

BIG PICTURE LOANS, LLC; MATT MARTORELLO;
ASCENSION TECHNOLOGIES, INC.;
DANIEL GRAVEL; JAMES WILLIAMS, JR.;
GERTRUDE MCGESHICK; SUSAN MCGESHICK;
and GIIWEGIIZHIGOOKWAY MARTIN,

                        Defendants.
_____/

## NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN that Defendants Big Picture Loans, LLC, and Ascension

Technologies, LLC, by counsel, appeals to the United States Court of Appeals for the Fourth

Circuit from the Order of the United States District Court for the Eastern District of Virginia,

entered on June 26, 2016 (Docket No. 124), and the accompanying Memorandum Opinion, issued

under seal on July 3, 2018.

Submitted this 19th day of July, 2018.

**BIG PICTURE LOANS, LLC, ASCENSION TECHNOLOGIES, INC.**

By:/s/ Timothy J. St. George
David N. Anthony
Virginia State Bar No. 31696
Timothy J. St. George
Virginia State Bar No. 77349
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: david.anthony@troutmansanders.com
Email: tim.stgeorge@troutmansanders.com

Karrie Sue Wichtman (admitted *pro hac vice*)
Justin A. Gray (admitted *pro hac vice*)
ROSETTE, LLP
25344 Red Arrow Highway
Mattawan, MI 49071
Telephone: (269) 283-5005
Facsimile: (517) 913-6443
Email: kwichtman@rosettelaw.com
Email: jgray@rosettelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of July, 2018, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF System which will then send a notification of such filing

(NEF) to the following:

Kristi C. Kelly
Andrew J. Guzzo
Casey S. Nash
KELLY & CRANDALL PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: 703-424-7570
Facsimile: 703-591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com
Email: casey@kellyandcrandall.com
*Counsel for Plaintiffs*

James W. Speer
VIRGINIA POVERTY LAW CENTER
919 E. Main Street, Suite 610
Richmond, VA 23219
Telephone: 804-782-9430
Facsimile: 804-649-0974
Email: jay@vplc.orga
*Counsel for Plaintiffs*

David F. Herman
Jonathan P. Boughrum
Richard L. Scheff
MONTGOMERY MCCRACKEN WALKER
& RHOADS LLP
123 S Broad Street
Philadelphia, PA 19109
Telephone: 215-772-1500
Facsimile: 215-772-7620
Email: dherman@mmwr.com
Email: jboughrum@mmwr.com
Email: rscheff@mmwr.com
*Counsel for Defendant Matt Martorello*

/s/ Timothy J. St. George
Timothy J. St. George
Virginia State Bar No. 77349
*Counsel for Defendants*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1245
Facsimile: (804) 698-1300
Email: tim.stgeorge@troutmansanders.com

- 3 -

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LULA WILLIAMS, et al.,
on behalf of themselves and all
individuals similarly situated,

    Plaintiffs,

v.                                    Civil Action No. 3:17-cv-461

BIG PICTURE LOANS, LLC, et al.,

    Defendants.

**ORDER**

Having considered the CLASS ACTION COMPLAINT (ECF No. 1), DEFENDANT BIG PICTURE LOANS, LLC'S MOTION TO DISMISS FOR FAILURE TO EXHAUST TRIBAL REMEDIES AND UNDER THE DOCTRINE OF *FORUM NON CONVENIENS* (ECF No. 26), and the supporting, opposing, and reply memoranda, the Court finds that:

(1) The tribal exhaustion doctrine is not applicable here because the CLASS ACTION COMPLAINT asserts federal and state claims, and there is no pending tribal litigation that would animate the principles of comity that underlie the tribal exhaustion doctrine; and

(2) There is no colorable claim of tribal jurisdiction, and there is no basis on which to conclude that a non-member of the Tribe acted on tribal land; and

-148-

(3) The LVD Tribal Court has not been shown to have jurisdiction over any matter in dispute herein and, therefore, the only result of referring this matter to that court would be delay; and

(4) There is evidence that that the LVD Tribal Court process and structure lacks indicia of neutrality and validity; and

(5) As a result, there is no basis for applying the doctrine of *forum non conveniens*; and

Therefore, it is hereby ORDERED that DEFENDANT BIG PICTURE LOANS, LLC'S MOTION TO DISMISS FOR FAILURE TO EXHAUST TRIBAL REMEDIES AND UNDER THE DOCTRINE OF *FORUM NON CONVENIENS* (ECF No. 26) is denied.

It is further ORDERED that the facts and legal contentions are adequately presented in the materials before the Court and oral argument would not aid the decisional process.

It is so ORDERED.

                                      /s/    REP
                          _____
                          Robert E. Payne
                          Senior United States District Judge

Richmond, Virginia
Date: July 24, 2018

2



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

LULA WILLIAMS, <u>et al.</u>,
on behalf of themselves and all
individuals similarly situated,

      Plaintiffs,

v.                                             Civil Action No. 3:17-cv-461

BIG PICTURE LOANS, LLC, <u>et al.</u>,        **PUBLIC VERSION**[1]

      Defendants.

**MEMORANDUM OPINION**

    This matter is before the Court on DEFENDANTS BIG PICTURE
LOANS AND ASCENSION TECHNOLOGIES' MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ECF No. 22). Big Picture Loans, LLC
("Big Picture") and Ascension Technologies, Inc. ("Ascension")
argue that the Court lacks subject matter jurisdiction over all
claims asserted against them because they qualify as arms of the
Lac Vieux Desert Band of Lake Superior Chippewa Indians ("the

_____

[1] This opinion was initially filed under seal on July 3, 2018.
<u>See</u> Memorandum Op. (ECF No. 130). The Clerk provided copies of
the sealed opinion to Plaintiffs, Big Picture, and Ascension,
who were given fourteen days to request that certain information
in the public version of the opinion remain sealed. <u>See</u> ECF No.
131 at 1-2. Following that order, Big Picture and Ascension
indicated that the majority of the documents cited or discussed
in the opinion could be unsealed, or could remain sealed with
only limited redactions that would not affect the opinion. <u>See</u>
Response to July 3 Order (ECF No. 133) at 4-9. The Court agreed
with their proposed approach, and minor changes have been made
to the opinion to account for the unsealing and re-filing of
certain documents. <u>See</u> ECF No. 143.

Tribe") and are thereby entitled to tribal sovereign immunity. For the reasons set forth below, the motion was denied. See ECF No. 124.

**BACKGROUND**

**A.  Factual Background**

**1. Tribal Regulatory Structure**

The Tribe is a federally recognized Indian tribe, and its members reside close to their ancestral homeland near Watersmeet, Michigan. 25 U.S.C. § 1300h(1)-(2). Its status as an "independent tribal entity" has consistently been reaffirmed. See id. § 1300h-2(a). As a result, the Tribe is a sovereign entity that can create its own laws and regulations.

To that end, the Tribe adopted its current constitution on May 14, 1992 ("the LVD Constitution") for the Tribe's "government, protection and common welfare." ECF No. 23-1 at 1, 19. Among other things, the LVD Constitution established the Tribe's council ("the LVD Council"), granting it the authority to, inter alia, enact law, including ordinances and regulations; manage the Tribe's economic affairs; and "promote and protect the health, safety, education, and general welfare of the [Tribe] and its members." Id. art. IV, § 1(a)-(b), (f). The Council could also charter organizations and delegate them with

2

the authority to manage the Tribe's economic affairs. Id. § 1(j).

The Tribe initially pursued economic self-sufficiency by opening a casino in the late 1990s. The casino provided significant revenue for the Tribe until 2008, when the recession severely limited the casino's revenue stream and forced the Tribe to explore other avenues to improve its finances. One of these steps was to start tribal businesses in certain areas, such as online lending, that would yield profits for the Tribe. Hazen Aff. (ECF No. 34-1) ¶¶ 2-5.

On July 8, 2011, the LVD Council enacted the Tribal Consumer Financial Services Regulatory Code ("the Code"), which legalized online lending by the Tribe. July 8, 2011 Resolution (ECF No. 23-5) at 1; Nov. 18, 2011 Resolution (ECF No. 23-3) at 1-2. The purpose of the Code was, inter alia: (1) to "[d]iversify and expedite the development of the [Tribe's] economy" in order to "improve the Tribe's economic self-sufficiency [and] to enable the Tribe to better serve the social, economic, educational, and health and safety needs of its members and visitors"; (2) to "[e]nsure that all consumer financial services profits are used for the benefit of the Tribe and [it]s community"; and (3) to "[e]nsure that the Tribe provides a Tribal-based forum for the fair and orderly

3

resolution of consumer financial services disputes consistent with the Tribe's preservation of sovereign immunity." Code (ECF No. 23-4) §§ 1.1(a), 1.2(a), (c), (g). The Code required that all entities offering tribal consumer financial services obtain licenses through a particular licensing process, as part of which licensees had to certify that they would "abide by all applicable Tribal and Federal laws, regulations and policies." Id. §§ 1.3(d), 5-7, 5.2(b)(8). It also established specific rules for certain financial services transactions, including small loans transactions. See id. § 11.

The Code also created the Tribal Financial Services Regulatory Authority ("the TFSRA") to enforce the Code and regulate licensees. Id. § 4.1. As a governmental subdivision of the Tribe, the TFSRA was "under the direction and control of the [LVD] Council." Id. § 4.4. However, the Code granted the TFSRA certain independent powers, including, as relevant here, the powers: (1) to "promulgate, adopt, and enforce regulations and rules furthering the purpose and provisions of the th[e] Code"; (2) to discipline licensees and other persons "by ordering immediate compliance, issuing fines and sanctions, and suspending or revoking any [l]icense pursuant to the hearings and due process required by Section 4.18 of th[e] Code"; and (3) to investigate any licensee or person engaging in consumer

4

-153-

financial services within the Tribe's jurisdiction. Id. § 4.13(a)-(d), (h)-(i); id. §§ 4.14, 4.16, 4.18.

In addition, the Code placed the TFSRA at the center of a three-tiered dispute resolution process for loan borrowers from tribal licensees. First, consumers that are "aggrieved" by a licensee's action must submit a written complaint to the licensee. The licensee must respond in writing within thirty days, and if it does not, it may be fined by the TFSRA in an amount equivalent to the greater of the outstanding principal loan amount or $1,500. Id. § 9.2(a)-(b). Second, consumers dissatisfied with a licensee's response (or who receive no response at all) may submit a written request for administrative review to the TFSRA within ninety days of the licensee's determination. The TFSRA may then "investigate the dispute in any manner it chooses," including by granting an administrative hearing. If such a hearing occurs, consumers can be represented by counsel at their own expense, and the TFSRA can conduct matters before and during the hearing in a quasi-judicial manner. After any hearing, the TFSRA must issue a written decision that contains its factual findings and conclusions of law, and "may grant or deny any relief as the [TFSRA] determines

5

appropriate."[2] Consumers can then request rehearing, which the
TFSRA may grant or deny at its discretion. Id. § 9.3(a)-(g).
Finally, consumers may appeal adverse TFSRA decisions by filing
a written petition for review with the Tribal Court ("the LVD
Court") within ninety days of the TFSRA's decision. The LVD
Court's review is limited to the TFSRA's administrative record,
and the Court must give deference to the TFSRA's interpretations
and applications of the Code. It can only reverse a decision
that is "arbitrary and capricious, or that . . . is not
supported by the evidence," and must not reverse because of
"[m]ere disagreement with the [TFSRA]'s factual findings." The
LVD Court's subsequent opinion is final and cannot be appealed.
Id. § 9.4.

---

[2] Plaintiffs allege that the TFSRA's powers with regard to a
hearing are constrained by TFSRA Regulation 1.1. Compl. ¶¶ 79-
81. That regulation states that the TFSRA "will adhere to the
dispute resolution procedures set out under section 9.3 of the
Code." However, the regulation also indicates that the TFSRA:
(1) "[m]ay grant a fair opportunity to be heard about the
dispute if . . . the [TFSRA] finds the existence of a material
issue as to whether or not the alleged act or practice is unfair
or deceptive, or in violation of existing tribal consumer
finance laws or regulations"; (2) "[w]ill not grant the consumer
an opportunity to be heard if the only allegation contained in
[a] consumer complaint is an allegation that the consumer
finance service provided is illegal in a jurisdiction outside
the jurisdiction of the Tribe"; and (3) "[m]ay resolve the
dispute in favor of the consumer upon a finding that the
[l]icensee has violated a law or regulation of the Tribe."

6

The latest development in the Tribe's history of economic regulation occurred on August 26, 2014, when the LVD Council enacted the Business Entity Ordinance ("the Business Ordinance"). Aug. 28 Resolution (ECF No. 23-6) at 1-2. The Business Ordinance created comprehensive procedures for the creation, operation, and dissolution of various tribal entities, including limited liability companies ("LLCs"). See generally Business Ordinance (ECF No. 23-7). Relevant to this dispute, the Ordinance stated that a tribally-owned LLC with the Tribe as its sole member would "be considered a wholly owned and operated instrumentality of the Tribe and . . . have all the privileges and immunities of the Tribe, including but not limited to the Tribe's sovereign immunity from suit, except as explicitly waived by the [LVD] Council." Id. Ch. 5, § 8(E). The Ordinance further indicated that those LLCs would be subject to the LVD Court's jurisdiction, but that such provision would not waive any claim to sovereign immunity in state or federal court. Id. Ch. 1, § 3(A), (D).

## 2. Beginning of Tribal Lending Operations

Soon after the Code was enacted, the Tribe began operating in the online lending arena when the LVD Council organized Red Rock Tribal Lending, LLC ("Red Rock") as a tribally-owned LLC on September 14, 2011. See Sept. 14, 2011 Resolution (ECF No. 23-

7

-156-

8). The company was managed by two members of the Tribe, and the Tribe was Red Rock's sole member. Red Rock Arts. of Organization (ECF No. 23-9), Art. 7; Hazen Aff. ¶¶ 6-7. The Complaint alleges that Matt Martorello ("Martorello")—along with Bellicose Capital, LLC ("Bellicose")[3] and Bellicose's general counsel, Daniel Gravel ("Gravel")—associated with the Tribe to form Red Rock. Compl. (ECF No. 1) ¶¶ 13, 29. Martorello, however, states that he was never a manager or member of Red Rock, nor were any of the companies that he owned or managed. Martorello Decl. (ECF No. 106-1) ¶¶ 18-21. Red Rock provided loans to consumers from its offices on the Reservation, and its employees, computers, and records were all located there. Moreover, as a tribal business, Red Rock was regulated by the TFSRA. Hazen Aff. ¶¶ 8-9.

Red Rock subsequently decided to contract with an outside entity to better learn the lending industry. The Tribe had identified Martorello as a potential consultant in mid-2011, but he was not involved in the creation of Red Rock. Martorello Decl. ¶¶ 14, 17. Then, on October 25, 2011, Red Rock contracted with Bellicose VI, LLC ("Bellicose VI")—a subsidiary of Bellicose—for it to provide Red Rock with vendor management

---

[3] Martorello was the founder and chief executive officer of Bellicose. Compl. ¶ 14.

8

services, compliance management assistance, marketing material development, and risk modeling and data analytics development. Hazen Aff. ¶ 10; Servicing Agm't[4] (ECF No. 83-2) at 1. On April 15, 2012, Bellicose VI assigned its interest in the contract to SourcePoint VI, LLC ("SourcePoint"), another Bellicose subsidiary. Hazen Aff. ¶ 12; Servicing Agm't at 1.

The Servicing Agreement detailed the revenue distribution structure for Red Rock's lending business and each party's duties as to that business. Under the contract, revenues were distributed first to Red Rock, which received 2% of all gross revenues "plus bad debt recoveries minus the sum of charge backs and bad debt charge-offs." Servicing Agm't §§ 2.25, 6.4.1. The remainder was then distributed in the following order: (1) to SourcePoint, to reimburse it for advances made to Red Rock and for servicing expenses; (2) to any of Red Rock's creditors, to pay outstanding debt that was then due; and (3) to SourcePoint, to pay its monthly servicing fee. Id. § 6.4.2-.5. The servicing fee was a variable performance-based fee equivalent to whatever cash basis revenue remained after the distributions above, and was at a minimum $20,000. Id. § 3.5.1. Martorello claims that

---

[4] The parties have not provided the original servicing agreement between Red Rock and Bellicose VI, but there is no indication that its provisions were substantially different than those in the Servicing Agreement between Red Rock and SourcePoint.

the Tribe itself suggested this revenue split because it guaranteed monthly income for the Tribe's general fund while also incentivizing SourcePoint to help the Tribe grow its businesses. Martorello Decl. ¶ 36. In addition, aside from these distributions, Red Rock received and retained ownership of all intellectual property developed under the Servicing Agreement by SourcePoint. Id. ¶ 35.

The Agreement also assigned specific responsibilities to SourcePoint. For instance, after noting that SourcePoint was being engaged as Red Rock's "independent contractor" to perform the services noted, the Agreement granted to SourcePoint "the authority and responsibility over all communication and interaction whatsoever between [Red Rock] and each service provider, lender and other agents of [Red Rock]." Id. § 3.1. The contract also prevented Red Rock from operating its lending business anywhere without using SourcePoint to provide its management and consulting services for those operations. Id. § 3.3.1. In addition, the Servicing Agreement required SourcePoint to select a bank account to store all funds generated by Red Rock's lending, and gave SourcePoint—unless otherwise agreed between Red Rock and SourcePoint—the "sole signatory and transfer authority over such bank accounts," as well as "sole authority to sweep monies from such bank accounts"

10

to distribute revenues under the priority structure. Id. § 4.4.
Finally, the Agreement gave SourcePoint numerous other duties
concerning the day-to-day functioning of Red Rock's lending
business, such as: (1) "[s]creening of and selecting service
providers and lenders, and negotiating agreements with such
service providers and lenders on behalf of [Red Rock]"; (2)
"[d]evelopment and promotion of sound and positive business
relationships on behalf of [Red Rock] with the designated
service providers and lenders"; (3) preparation of regulatory,
compliance, training, education, financial reporting and
accounting, website content, and marketing standards; (4)
"providing pre-qualified leads to [Red Rock] and providing the
necessary credit-modeling data and risk assessment strategies"
to Red Rock; and (5) "training and monitoring [Red Rock]
employees . . . that operate [Red Rock]'s call center."
Id. § 4.2.1.[5]

However, the Servicing Agreement also limited the ultimate
authority of SourcePoint over Red Rock's management decisions.

---

[5] Based, presumably, on the Servicing Agreement, Plaintiffs
allege that: Bellicose funded and underwrote Red Rock's loans;
the money loaned was transferred from a bank account controlled
by Bellicose and Martorello, which tribal officials could not
access; Bellicose accepted consumer payments directly; and the
only funds that Red Rock, Big Picture, or the Tribe ever
received or handled was the specified revenue percentage under
the Servicing Agreement. Compl. ¶¶ 30-32, 36-37.

11

For instance, the provision allowing SourcePoint to provide
leads and credit-modeling data to Red Rock also said that "[t]he
criteria used to extend funds to individual borrowers will
remain within the sole and absolute discretion of [Red Rock] and
[Red Rock] shall execute all necessary loan documentation." Id.
§ 4.2.1(i). Similarly, SourcePoint "ha[d] no authority to engage
in origination activities, execute loan documentation, or
approve the issuance of loans to third parties. Final
determination as to whether to lend to a consumer rest[ed] with
[Red Rock]." Id. § 4.1.1. SourcePoint also needed the Tribe's
written consent "to do any of the following: (1) to borrow,
pledge, assign, convey, encumber, grant security interest in,
guaranty, or otherwise restrict the assets of [Red Rock]; (2) to
sell or otherwise dispose of all or substantially all of the
assets of [Red Rock]; [or] (3) to waive the sovereign immunity
of [Red Rock]." Id. § 4.1.2. In other words, SourcePoint's
duties, although numerous, were to be limited to providing
"reasonable measures for the orderly administration and
management" of Red Rock. Id. § 4.2.1.

Some evidence also indicates that Red Rock's role under the
Servicing Agreement was more substantial than Plaintiffs
suggest. Red Rock's co-manager, Michelle Hazen ("Hazen"), says
that, "[w]hile Red Rock received advice and consulted with

12

-161-

Bellicose about operations, all final decisions about operations were made by Red Rock's managers." Hazen Aff. ¶ 11; see also ECF No. 83-4 (e-mail from SourcePoint employee to tribal members recommending adoption of direct mail campaign prepared by SourcePoint). Similarly, Martorello indicates that, as a consultant,[6] he "made suggestions and offered advice to Red Rock's co-managers," but "Red Rock's co-managers were ultimately responsible for all decisions regarding Red Rock's operation." Furthermore, Martorello, Bellicose, and SourcePoint never, on Red Rock's behalf, made lending decisions; originated a consumer loan; purchased a loan originated by Red Rock; or took any action to collect a Red Rock loan. Instead, Red Rock always made the final decision to lend to a particular consumer, and Red Rock's co-managers, including Hazen, always reviewed and approved marketing materials, including the prescreening of credit reports.[7] Finally, Bellicose's and SourcePoint's access to

---

[6] As permitted by the Servicing Agreement, SourcePoint hired Bellicose employees, including Martorello, to perform certain services for Red Rock. Martorello Decl. ¶ 31.

[7] Plaintiffs cite Big Picture's interrogatory response to assert that Red Rock's role in the lending process was limited to "final verification of the applicant's information in the loan agreement," including "the applicant's e-signature, the due dates, the payment schedule, [and] the applicant's bank information." Big Picture Interrogatory Responses (ECF No. 91-4) ¶ 24. This statement is misleading. First, the response addressed Big Picture's loan evaluation procedure, and thus had

Red Rock's bank accounts was limited by deposit access control agreements provided by Red Rock, which Red Rock or the Tribe could terminate at any time. Furthermore, although Martorello was a signatory on certain Red Rock accounts, he claims that he was listed that way only "to facilitate accounts payable, and never without express contractual or delegated authority." Martorello Decl. ¶¶ 22-28.

Red Rock then began making loans to consumers, including some in New York. In February 2013, the New York Department of Financial Services ("the Department") sent cease-and-desist letters to a number of lending entities, including the Tribe, accusing them of "using the Internet to offer and originate illegal payday loans to New York consumers, in violation of New York's civil and criminal usury laws."[8] Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs., 974 F. Supp. 2d 353, 356 (S.D.N.Y. 2013) (internal quotations omitted). The Department also sent letters to third parties that credit and debit payday loan payments, advising them that the Department

---

nothing to do with Red Rock. Second, the response did not concern Big Picture's relationship with third parties, and even noted that "[n]o third party participates in Big Picture's [loan] evaluation." Id.

[8] New York prohibits annual interest above 16% on loans greater than $250,000, N.Y. Gen. Obligations Law § 5-501; N.Y. Banking Law § 14-a(1), and criminalizes annual interest above 25%, N.Y. Penal Law § 190.40.

14

would pursue enforcement actions against lenders that refused to
cease and desist. Id. at 356-57. This threat of regulatory
enforcement caused the lending entities' business partners to
limit or end their relationship with the entities, which in turn
led the entities to seek a preliminary injunction preventing the
Department from enforcing New York's anti-usury statutes against
them—in part because any regulation would infringe on the
entities' tribal sovereignty. See id. at 357-58. However, the
court denied the entities' request, finding that they had not
shown a likelihood of success on the merits because their online
lending to New York consumers constituted off-reservation
activity, and could therefore be properly regulated under New
York's non-discriminatory anti-usury laws. See id. at 360-61.
The Second Circuit affirmed this decision in October 2014. See
Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin.
Servs., 769 F.3d 105 (2d Cir. 2014). The Tribe's response to
these decisions is unknown.

### 3. Expansion of Tribal Lending Business

After 2011, through its operation of Red Rock and
relationship with Bellicose and Martorello, the Tribe gained
knowledge of the online lending industry. Hazen Aff. ¶ 13;
Martorello Decl. ¶¶ 47-48. The Tribe wanted to apply that
knowledge to expand its online lending platform and increase

15

profitability for the Tribe, employ more tribal members, and acquire its vendors' businesses so that the Tribe would earn more money. Hazen Aff. ¶ 13. As part of that strategy, the LVD Council organized Big Picture on August 26, 2014. Aug. 26, 2014 Resolution (ECF No. 23-10). Big Picture was formed "as a wholly owned and operated instrumentality of the Tribe," and was managed by two tribal members, Hazen and James Williams ("Williams"). Id. at 2-3. Big Picture was meant to serve as an independent tribal lending entity that would "ultimately consolidate the business" of the Tribe's other lending entities, Red Rock and Duck Creek Tribal Financial, LLC. Id. at 1.

On February 5, 2015, the LVD Council formed another entity, Tribal Economic Development Holdings, LLC ("TED"), to operate the Tribe's current and future lending companies. Feb. 5, 2015 TED Resolution (ECF No. 23-13). The Tribe was the sole member of TED, and Hazen and Williams were designated as its co-managers. Id. at 3; TED Arts. of Organization (ECF No. 23-14), Arts. 8-9. Big Picture's membership was also restructured so that TED became its sole member. Big Picture Arts. of Organization (ECF No. 23-13), Arts. 8-9. Then, also on February 5, the LVD Council formed Ascension as a subsidiary of TED "for the purpose of engaging in marketing, technological and vendor services" to support the Tribe's lending entities. Feb. 5, 2015 Ascension

16

Resolution (ECF No. 23-16) at 1. Ascension was created "as a wholly owned and operated instrumentality of the Tribe," with TED as its sole member, and was managed by Hazen and Williams. Id. at 2-3; Ascension Arts. of Organization (ECF No. 23-17), Arts. 8-9. Hazen and Williams named Brian McFadden ("McFadden") as Ascension's President. Feb. 5, 2015 Ascension Resolution at 3.

### 4. Tribe's Acquisition of Bellicose

Since 2012, Martorello and the Tribe had engaged in multiple conversations about the potential sale of Martorello's consulting companies to the Tribe, which would allow the Tribe to engage in online lending without relying on outside vendors for support services. The creation of TED and Ascension and reorganization of Big Picture in February 2015 were undertaken to enable the Tribe to more easily purchase Bellicose, in part because those steps added layers to protect the Tribe from liability. Martorello Decl. ¶¶ 49-50; Martorello Sept. 11, 2015 E-mail (ECF No. 83-8) at LVD-DEF00014697. In addition, around that time, the LVD Council formed Tribal Acquisition Company, LLC ("TAC"), with TED as its sole member and Hazen and Williams as co-managers, for the sole purpose of acquiring Bellicose without creating a nexus between TED and Delaware. Sept. 14,

17

2015 Merger Resolution (ECF No. 34-2) ("the Merger Resolution")
at 2; Martorello Sept. 11, 2015 E-mail at LVD-DEF00014697.

In early 2015, the parties agreed on the basic framework of
the merger: a seller-financed transaction with non-fixed
payments over a seven-year term, with any outstanding amount due
being forgiven at the end of that term. According to Martorello,
the Tribe requested this structure because it would enable the
Tribe to accomplish its goals of economic self-sufficiency more
easily. Martorello Decl. ¶ 51. The seller-financier would be
Eventide Credit Acquisitions, LLC ("Eventide"), a company
managed and majority-owned by multiple entities of which
Martorello was the president. Merger Resolution at 3; Eventide
Operating Agm't, Sched. A (ECF No. 91-11). Eventide would
provide a $300 million loan to TED, which TED would then use to
purchase Bellicose. Merger Resolution at 3. After this structure
was set, Martorello continued negotiating with the Tribe over
the next several months. Martorello Decl. ¶ 52. The parties
reached a final agreement on September 14, 2015, memorializing
the terms of the deal in a loan agreement ("the Loan Agreement")
and a promissory note ("the Note"). Merger Resolution at 7-9;
see generally Loan Agreement (ECF No. 83-17); Note (ECF No. 83-
11). As part of the transaction, the LVD Council approved a
limited waiver of TED's and Big Picture's sovereign immunity in

18

connection with TED's repayment of the Eventide loan during its
seven-year term. See Sept. 14, 2015 Immunity Waiver Resolution
(ECF No. 34-3) at 2-8. On January 26, 2016, the Tribe finally
completed its purchase of Bellicose, including subsidiaries like
SourcePoint, and acquired all of Bellicose's data, software, and
corporate goodwill. Martorello Decl. ¶ 53; Hazen Aff. ¶ 22.

Under the Note, revenues from Big Picture's lending
business are distributed monthly in several steps. First, Big
Picture makes a distribution to TED of Big Picture's gross
revenues. Note § 1.2(a); Martorello Decl. ¶ 57. TED then
distributes 2% of those gross revenues to the Tribe, until half
of the total loan amount has been paid, at which time the
distribution percentage increases from 2% to 4%.
Note § 1.2(b)(1). The parties agreed to increase the monthly
distribution from 2% to 3% in or around September 2016.[9] Note
Addendum (ECF No. 91-18); Martorello Decl. ¶ 57. If TED defaults
under the Loan Agreement, then the monthly distribution to the
Tribe reduces to zero. Note § 1.2(b)(1); see also Loan
Agreement § 6.1 (describing events triggering default). Second,
TED pays an additional 2% of gross revenues to the Tribe to be

---

[9] That agreement also indicated that the percentage distribution
would increase from 3% to 6% when half the loan had been repaid.
Note Addendum; Martorello Decl. ¶ 57.

19

reinvested "in growing the loan portfolio."[10] Note § 1.2(b)(2). That reinvestment amount must "stay in equity within [TED] or [Big Picture] conducting lending" until the Note and Loan Agreement terminate. As with the first distribution, this payment reduces to zero if TED defaults. Note § 1.2(b)(2). Third, TED and Big Picture must pay any interest and principal due to other creditors. Id. § 1.2(b)(3).

Fourth, an amount is deducted to pay "[o]rdinary and necessary business expenses" incurred in connection with Big Picture's lending business, including payments to tribal and non-tribal vendors.[11] Id. § 1.2(b)(4); Martorello Decl. ¶ 57. Those expenses may not exceed reasonable rates for particular services, and TED and Big Picture have a fiduciary duty to Eventide to ensure that they do not "undermine the [p]arties' intent to maximize the cash flows directed to retire the Note as soon as possible." Note § 1.2(b)(4). Accordingly, TED must

---

[10] The initial reinvestment amount was $1.3 million, but the amount was reduced to 2% of gross revenues for each month thereafter. Note § 1.2(b)(2).

[11] The Note also identifies certain "[n]on-deductible expenses," which are taken instead from the Tribe's 2% monthly distribution or the 2% reinvestment amount at TED's choice. These include: (1) any tax, fine, or licensing fee charged by the Tribe, except for certain regulatory fees or fines charged by the TFSRA; (2) any attorneys' fees award from a suit related to the Bellicose merger documents; or (3) any ordinary and necessary expenses that Eventide does not agree to pay and that, in the aggregate, exceed $25,000 per year. Note § 1.2(b)(5).

20

submit a monthly budget and expense report to Eventide, which
Eventide uses to ensure that the expenses are reasonable and not
inflated to deprive Eventide of payments it will receive under
the Note. Id. § 1.2(c); Martorello Decl. ¶ 59. The Note allows
expenses based on a "reasonable expansion" of Big Picture's
lending operations in light of "industry climate and norms."
Note § 1.2(b)(4)(b). Nonetheless, Eventide must approve a budget
for such expansion to ensure that TED's repayment of the loan is
not affected. Id. Martorello claims that Eventide has "never
unreasonably withheld its consent to expenses, nor has it
objected to the reasonable expansion of the business—even when
expansion created additional debt for Big Picture which meant
smaller (or no) payments to Eventide." Martorello Decl. ¶ 60.

Finally, TED pays to Eventide the "Net Cash Available"—that
is, Big Picture's gross revenues minus all the distributions and
deductions above. That amount is applied first to any unpaid
principal, and then to unpaid interest.[12] Note § 1.2. As
Martorello explains, because Eventide receives payments last
under the Note's distribution structure, it is possible that
Eventide will not receive a principal payment in some months

---

[12] The Note carries a fixed interest rate of 1.8% per year, Note
at 1, which Martorello claims is "significantly below the rate
at which [the Tribe] could go into the marketplace and borrow
funds," Martorello Decl. ¶ 64.

21

because TED has no net income from which to make a payment. This situation has occurred on at least five occasions. TED, on the other hand, has always received all of Big Picture's net income, and is guaranteed to receive its 3% distribution and reinvestment amount every month. Martorello Decl. ¶ 63.

Each payment to Eventide under the waterfall structure is accompanied by a payment schedule. Note § 1.2(c). Based on these schedules, and other financial statements, Martorello states that TED has consistently paid down its principal under the Note, such that the Tribe has been receiving an equity interest in the lending support services that it acquired through Bellicose. He notes that, since the close of the acquisition, Eventide's Note payments have amounted to $21,375,922.10, whereas the total economic consideration obtained by the Tribe under the Note has been $28,184,007.69. Martorello Decl. ¶ 63; McFadden Aff. (ECF No. 106-17) ¶ 17. However, the exact basis of those figures is unclear. In fact, Plaintiffs cite two documents with different numbers than those provided by Martorello. One indicates that, as of June 2017, the cumulative repayment to Eventide was $17,968,528.36, and the cumulative amount to TED was $4,924,930.94 ($1,963,708.81 in distributions, and $2,961,222.13 in reinvestments). Pls. Opp. (ECF No. 90) at 11, 21-22. The second shows slightly higher numbers than those

22

through December 2017. See id. Those figures are consistent with Big Picture's assertion that, by September 2017, TED had distributed approximately $20.5 million in loan payments to Eventide and nearly $5 million to the Tribe ($3,035,374.90 in distributions, and $1,948,999.53 in reinvestments). Big Picture Suppl. Interrogatory Responses (ECF No. 102-3) ¶ 1. Martorello's calculations might include amounts not accounted for in those spreadsheets, such as the economic value of Bellicose's data or corporate goodwill, but that is hard to discern. In any event, the Note is fixed to expire seven years after its execution date—thus, by September 14, 2022—at which time "the remaining balance is forgiven." Note § 1.3.

The Tribe finished restructuring its lending businesses soon after the Bellicose purchase. TAC dissolved in late January 2016 after control of Bellicose had been transferred to TED. Arts. of Dissolution (ECF No. 91-9). Around the same time, Bellicose's assets were assigned to Ascension ·and its liabilities were assigned to Big Picture, and Bellicose ceased to exist. Shortly thereafter, on February 16, 2016, Big Picture engaged Ascension as an independent contractor to provide Big Picture with the servicing support services that Ascension had carried over from Bellicose. Intratribal Servicing Agm't (ECF No. 91-17) § 3.1; see also McFadden Feb. 24, 2015 Letter (ECF

23

No. 91-30) (noting that all Bellicose VI positions and operations would be merged into Ascension).

The Intratribal Servicing Agreement is similar to the earlier Servicing Agreement between Red Rock and SourcePoint. In particular, the contract requires that Ascension "develop and recommend to [Big Picture] . . . reasonable measures for the orderly administration and management of [Big Picture] in the areas of financial reporting, financing, regulatory compliance, marketing, human resources, development of vendor relationships, collections and risk assessment," and then describes most of the same day-to-day operational responsibilities that SourcePoint had. Intratribal Servicing Agm't § 4.2.1; see also Servicing Agm't § 4.2.1. Ascension also receives a monthly fee, which is the sum of the following: (1) "[m]anpower charges," which are Ascension's salary costs, payroll taxes, and other employment expenses; (2) internal expenses, which are capped by Ascension's servicing budget; (3) overhead expenses, in different amounts based on whether Big Picture is the beneficiary of such expenses; and (4) a bonus plan for Ascension's employees. Intratribal Servicing Agm't § 3.4.

Big Picture, however, retains the same managerial authority as Red Rock. To that end, the Intratribal Servicing Agreement specifically provides that "[t]he criteria used to extend funds

24

to individual borrowers will remain within the sole and absolute discretion of [Big Picture] . . . and [Big Picture] . . . shall execute all necessary loan documentations." Id. § 4.2.1(k). Likewise, Ascension "has no authority to engage in origination activities, execute loan documentation, or approve the issuance of loans to consumers. Final determination as to whether to lend to a consumer rests with [Big Picture] . . . ." Id. § 4.1. In addition, even though McFadden and Simon Liang ("Liang"), Ascension's controller, were added as authorized signers for Big Picture's bank accounts, ECF No. 83-23, their authority is bound by deposit account control and lockbox agreements, Intratribal Servicing Agm't §§ 4.4, 4.7. The only real limitation on Big Picture's authority is the Loan Agreement, which prevents TED or Big Picture from amending or terminating the Intratribal Servicing Agreement during the loan's seven-year term without Eventide's written consent. Loan Agm't § 5.12.

On the same day that Big Picture contracted with Ascension, the LVD Council also authorized Red Rock to assign the majority of its consumer loans and obligations to Big Picture. Hazen Aff. ¶ 23; Feb. 16, 2016 Assignment Resolution (ECF No. 23-23) at 2-3; see generally Assignment Agm't (ECF No. 23-24). All unassigned loans were written off as bad debt, and Red Rock subsequently dissolved. Hazen Aff. ¶ 23; Red Rock Arts. of

25

Dissolution (ECF No. 23-27); Feb. 16, 2016 Dissolution
Resolution (ECF No. 23-26). Hazen, as co-manager of Red Rock,
gave the appropriate notice of dissolution to the TFSRA and to
any party that might have claims against Red Rock. See ECF Nos.
23-28, 23-29. Big Picture then sent a notice of assignment to
all consumers whose loans it had received, instructing them that
Big Picture would begin collecting their loan payments effective
February 17, 2016. ECF No. 23-25.

### 5. Current Management of Big Picture and Ascension

TED now oversees both Big Picture and Ascension. All three
entities have their headquarters on the Reservation. TED
Operating Agm't (ECF No. 23-33) § 1.3; Big Picture Operating
Agm't (ECF No. 23-30) § 1.3; Ascension Operating Agm't (ECF No.
23-18) § 1.3. Big Picture currently employs fifteen individuals
on the Reservation. Ascension employs thirty-one individuals,
most of whom work outside the Reservation at Ascension's
satellite offices, Hazen Aff. ¶¶ 24-25, which appear to be in
(at least) Atlanta, Mississippi, and Puerto Rico, Compl. ¶¶ 50-
53. Hazen and Williams, both LVD Council members, co-manage all
three companies. Hazen Aff. ¶¶ 2, 15, 18-20; Williams Aff. (ECF
No. 23-36) ¶¶ 1, 11-13. That position grants them the broad
authority to, in the case of Big Picture, "perform all actions
as may be necessary or appropriate to carry out the business of

26

[Big Picture] including but not limited to the power to enter into contracts for services, to manage vendor relationships, to manage personnel issues and affairs of [Big Picture]." Big Picture Operating Agm't § 5.1(a).[13] Where the managers' power is limited by the operating agreements, the ultimate authority resides in the LVD Council. See id. § 5.2. Similarly, all three entities must submit quarterly reports to either the LVD Council (for TED) or TED (for Big Picture and Ascension). Id. § 5.8; TED Operating Agm't § 4.7; Ascension Operating Agm't § 5.8.

Hazen has been Big Picture's CEO since December 2015. Hazen Aff. ¶ 20. However, as for Ascension, Hazen and Williams have delegated to McFadden: (1) the "approval of Ascension strategic direction," which must be communicated at least quarterly to the co-managers; (2) "authority to execute documents on behalf of Ascension"; (3) "authority to open and maintain bank accounts"; (4) "authority to adopt, terminate, or change employee benefit plans or programs"; and (5) "authority regarding all matters necessary for . . . day to day management." Ascension Delegation of Authority Policy (ECF No. 91-13) § 1.4. McFadden must report regularly to Hazen and Williams about the authority exercised

---

[13] Hazen and Williams are granted similarly broad management authority under nearly identical provisions in TED's and Ascension's operating agreements. See TED Operating Agm't § 5.1(a); Ascension Operating Agm't § 5.1(a).

27

under those provisions and any matters that might fall under their purview. Id. § 1.5. McFadden also must obtain co-manager approval "for changes in operations, personnel, and distributions." McFadden Aff. ¶ 8.

Martorello asserts that he has had limited contact with the Tribe since it purchased Bellicose in January 2016. As he states, he has never been involved in TED's operations, made any decisions on its behalf, provided any consulting services to it, or solicited any investors on its behalf. Likewise, he has never provided any consulting services to Big Picture or Ascension; suggested marketing strategies, underwriting criteria, or other policies to them; accessed any of their software systems, databases, bank accounts, or records; or hired or fired their employees. Martorello has interacted with Hazen and Williams when they have requested Eventide's permission to undertake expenses for Big Picture that exceeded budgeted expenses under the Note, but Martorello never proposed that they incur those expenses, nor did he object to their requests. Martorello Decl. ¶¶ 70-97; see also McFadden Aff. ¶¶ 13-16. Furthermore, says McFadden, neither Eventide nor Martorello participates in Ascension's day-to-day operations, and Ascension does not seek Eventide's or Martorello's consent for those operations, except if Ascension needs to expand its budget. Even in that case,

28

explains McFadden, he would first obtain Hazen's or Williams' approval before contacting Eventide. McFadden Aff. ¶¶ 10-12.

Big Picture operates in some ways as an independent financial entity. It maintains its operating account with a regional bank, where it funds all its loans, receives all consumer payments, pays all payroll and vendors, deposits all its investments, and makes distributions to TED and the Tribe.[14] Big Picture relies on private investors to fund its lending operation, including the loans themselves. These investments are made through traditional loan agreements and promissory notes, under which Big Picture is responsible to each investor. Hazen Aff. ¶¶ 26-27. The Tribe itself has invested over $7 million. Williams Aff. ¶ 8.

Moreover, Big Picture's lending operation has yielded concrete financial benefits for the Tribe. Any profits that Big Picture earns are allocated to its sole member, TED, which in turn allocates those profits to the Tribe. Big Picture Operating Agm't § 6.1; TED Operation Agm't § 6.1.[15] If Big Picture's cash

---

[14] As with Red Rock, Plaintiffs allege that Big Picture does not ever handle the money loaned to or paid by consumers. See Compl. ¶¶ 30-32, 36-37.

[15] Ascension has an identical provision in its operating agreement, Ascension Operating Agm't § 6.1, but Ascension does not generate any profit that it could allocate.

29

account balance exceeds $500, it must declare an immediate distribution and transfer the excess to TED. Big Picture Operating Agm't § 6.2. It is unclear if this always occurs, as e-mails from Liang to Martorello about repayment of Eventide's loan contain language indicating that Big Picture's cash balance was greater than $500, but that Big Picture "would like to keep [the balance] for lead acquisition and loan origination in future months." See, e.g., ECF No. 83-24 at MARTORELLO_000218. In any event, beyond the profits obtained through the Note's revenue distributions, the Tribe also receives interest payments as a substantial investor in Big Picture. Proceeds from Big Picture's business now comprise more than 10% of the Tribe's general fund, and those profits could possibly fund more than 30% of the Tribe's budget over the next few years. Williams Aff. ¶¶ 9-10.

The Tribe relies on Big Picture's funds for governmental programs and services. Id. ¶ 10. Specifically, Big Picture's revenues have been used to, in whole or in part: meet requirements necessary to secure $14.1 million in financing for the Tribe's new health clinic; refinance casino debt; fund college scholarships and pay for educational costs for members such as student housing, books, school supplies and equipment; create home ownership opportunities for members through

30

tribally-purchased homes; subsidize tribal members' home purchases and rentals; provide a bridge loan to complete the new tribal health clinic that offers services to the regional community; fund new vehicles for the Tribe's Police Department; fund an Ojibwe language program and other cultural programs; provide foster care payments for eligible children, propane purchase assistance, and assistance for family care outside of the community; cover burial and other funeral expenses for members' families; fund renovations and new office space for the Tribe's Social Services Department; fund youth activities; renovate a new space for the LVD Court and bring in telecom services for remote court proceedings; and fund tribal elder nutrition programs and tribal elder home care and transport services. Hazen Aff. ¶ 31.

### 6. Big Picture's Lending Process

As noted, Big Picture has its principal place of business on the Reservation, and its employees are all located there. The servers for Big Picture's websites are also stored on the Reservation. And, because all loan applications are approved by Big Picture employees on the Reservation, all consumer loans are originated there. Id. ¶¶ 28, 30(a).

To obtain a loan from Big Picture, consumers must log onto the company's website and complete and submit an application.

Big Picture then conducts a review using a software-based underwriting process and either accepts or denies the application. Id. ¶ 30(a)-(b). That software consolidates consumer credit data from third-party service providers to verify applicants' information and determine creditworthiness. Big Picture Interrogatory Responses ¶ 24. An applicant receives a notice of denial if the application is denied. Hazen Aff. ¶ 30(d).

Even if an application is accepted, the consumer must complete several more steps before the loan is finalized. First, the website prompts applicants to select their desired loan amount, which may be as high as $5,000. Second, applicants must select the term of the loan, and Big Picture in turn provides an estimated annual percentage rate ("APR") based on the underwriting software's determination of an applicant's repayment ability. Third, applicants must review Big Picture's standard loan agreement, which includes the loan's APR and repayment schedule. Fourth, applicants must acknowledge their review of, and agree to, the loan agreement—including the choice-of-law, forum-selection, and jury trial waiver clauses—and Big Picture's privacy disclosures. Finally, applicants must select their payment method. Id. ¶ 30(c)(1)-(6).

Once a consumer signs the loan agreement, the contract goes to Big Picture for its employees' review. Employees on the Reservation perform a final verification of the applicant's information in the loan agreement and other details. If there are no issues, the reviewing employee manually enters the date of disbursal of funds, which authorizes electronic approval of the agreement. This action also causes the loan to be originated and triggers the transmission of instructions for the particular application to a third-party payment processor, which then disburses the funds to the consumer. Id. ¶ 30(c)(7)-(8).

### 7. Tribe's Lending Activities in Virginia

The parties have not provided evidence regarding Red Rock's or Big Picture's lending activities in Virginia specifically. However, the Complaint alleges that Martorello and Gravel intentionally chose Virginia as a place where Red Rock and Big Picture would offer loans and collect payments, and they proceeded with this plan notwithstanding their knowledge that the loans would be illegal under Virginia's usury laws. Certain defendants then began marketing, initiating, and collecting loans in Virginia. Consumers were required to electronically sign the form loan agreement described above. Under the terms of that contract, the loans were subject to an APR that was much higher than 12%. However, neither the Tribe nor any of the

33

defendants had a consumer finance license permitting them to charge interest at such a high rate, and they never attempted to obtain such a license. Compl. ¶¶ 54-57, 60.

Lula Williams, Gloria Turnage ("Turnage"), George Hengle ("Hengle"), Dowin Coffy ("Coffy"), and Felix Gillison, Jr. ("Gillison"; with Lula Williams, Turnage, Hengle, and Coffy, collectively, "Plaintiffs") all entered into loans with Big Picture, and their loan agreements with Big Picture specified that interest would be charged at greater than 12% APR. Lula Williams' loan was subject to an APR of 649.8%; Turnage's loan was subject to an APR of 693.2%; Hengle's and Coffy's loans were subject to an APR of 607.5%; and Gillison's loan was subject to an APR of 627.2%. Based on those rates, Plaintiffs paid various amounts to Big Picture, most of which were credited as payment for interest or other loan-related fees. Id. ¶¶ 58-59, 62-65.

The loan agreements also contained the following provisions:

> GOVERNING LAW AND FORUM SELECTION: This Agreement will be governed by the laws of the Lac Vieux Desert Band of Lake Superior Chippewa Indians ("Tribal law"), including but not limited to the [Tribal Consumer Financial Services Regulatory] Code as well as applicable federal law. All disputes shall be solely and exclusively resolved pursuant to the Tribal Dispute Resolution Procedure set forth in Section 9 of the Code

and summarized below for your
convenience. . . .

TRIBAL DISPUTE RESOLUTION PROCEDURE: The
Tribe has established a Tribal Dispute
Resolution Procedure (the "Procedure") to
review and consider any and all types of
complaints made by You or on Your behalf
relating to or arising from this Agreement.
The Procedure is found at Section 9 of the
Code. You can find the Code at [Big
Picture's] website, . . . or You may request
a physical copy by written request
mailed . . . to the Tribal Financial
Services Regulatory Authority, P.O. Box 249,
Watersmeet, Michigan 49969. The Tribe and
[Big Picture] intend and require, to the
extent permitted by Tribal law, that any
complaint lodged, filed, or otherwise
submitted by you or on your behalf to follow
the Procedure. Under the Procedure, a
consumer who, in the course of his otherwise
lawful and proper use of [Big Picture]'s
business believes himself to be harmed by
some aspect of the operation of any part of
[Big Picture]'s business, shall direct his
concerns or dispute to [Big Picture] in
writing. A person's complaint to [Big
Picture] shall be considered similar in
nature to a petition for redress submitted
to a sovereign government, without waiver of
sovereign immunity and exclusive
jurisdiction, and does not create any
binding procedural or substantive rights for
a petitioner. [Big Picture] will investigate
the complaint and respond as soon as
reasonably practicable, but no later than
thirty (30) days from the receipt of the
complaint. In the event that the consumer is
dissatisfied with [Big Picture]'s
determination, he may initiate Formal
Dispute Resolution by requesting an
administrative review of [Big Picture]'s
determination by submitting such request in
writing to the Tribal Financial Services

35

> Regulatory Authority ("Authority"), P.O. Box
> 249, Watersmeet, MI 49969, no later than
> ninety (90) days after receiving [Big
> Picture]'s determination.

ECF No. 1-1 at 4-5; <u>see also</u> Compl. ¶¶ 70-71. These are the

choice-of-law and forum-selection provisions referenced above.

## B.  Procedural Background

On June 22, 2017, Plaintiffs brought suit against Big

Picture, Ascension, Martorello, Williams, Gertrude McGeshick,

Susan McGeshick, Giiwegiizhigookway Martin,[16] and Gravel. They

asserted five class claims:

(1)  COUNT ONE, Declaratory Judgment, against all

defendants, stating that the choice-of-law and forum-

selection provisions in all loan agreements made by

Big Picture or Red Rock to Virginia residents are void

and unenforceable;

(2)  COUNT TWO, Violations of the Racketeer Influenced and

Corrupt Organizations Act ("RICO"),

18 U.S.C. § 1962(c), against all defendants;

---

[16] Williams, the McGeshicks, and Martin (collectively, "the LVD
Officers") are all members of the LVD Council: Williams is the
Chairman, Gertrude McGeshick is the Secretary, Susan McGeshick
is the Treasurer, and Martin is the Vice-Chairwoman.
Compl. ¶¶ 17-20.

> (3)    COUNT THREE, Violations of RICO, 18 U.S.C. § 1962(d), against all defendants;[17]
>
> (4)    COUNT FOUR, Violations of Virginia Usury Laws, against Big Picture, Martorello, Ascension, and Gravel; and
>
> (5)    COUNT FIVE, Unjust Enrichment, against Big Picture, Martorello, Ascension, and Gravel.

Compl. ¶¶ 84-139.

After some defendants indicated that they would seek dismissal of the Complaint on the basis of, among other grounds, lack of subject matter jurisdiction and personal jurisdiction, the Court ordered the parties to conduct jurisdictional discovery. ECF No. 17. Following discovery disputes, the Court ordered Defendants to produce some documents that it had previously withheld as privileged. ECF No. 49. That same day, the Court granted Plaintiffs' and Gravel's joint motion to dismiss Gravel from the action without prejudice. ECF Nos. 46, 50. The Court later granted the LVD Officers' motion to dismiss the claims against them on Rule 12(b)(6) grounds, and Plaintiffs chose not to file an Amended Complaint. ECF Nos. 117, 122.

---

[17] For Counts Two and Three, Plaintiffs seek injunctive relief only as to the LVD Officers, and both damages and injunctive relief as to Big Picture, Ascension, and Martorello. Compl. ¶ 95 n.8.

37

Accordingly, Big Picture and Ascension are the only remaining defendants besides Martorello.

## DISCUSSION

### I. Legal Standard

Fed. R. Civ. P. 12(b)(1) tests whether the court has subject matter jurisdiction to resolve the claims before it.[18] Sovereign immunity issues are generally considered jurisdictional in nature and, as a result, are appropriately resolved in the context of a Rule 12(b)(1) motion. See United States v. Jones, 225 F.3d 468, 469 (4th Cir. 2000) ("Sovereign immunity deprives a court of jurisdiction."); Best Med. Belgium, Inc. v. Kingdom of Belgium, 913 F. Supp. 2d 230, 236 (E.D. Va. 2012) ("Subject matter jurisdiction encompasses the scope of sovereign immunity."). When a defendant seeks dismissal under Rule 12(b)(1), the plaintiff bears the burden of proving subject matter jurisdiction. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); see also Lucas v. Henrico Cty. School Bd., 822 F. Supp. 2d 589, 599 (E.D. Va. 2011). Nonetheless, as explained below, there is some

---

[18] Big Picture and Ascension also assert that the Court lacks personal jurisdiction over them, but they spend little time arguing this point given the Fourth Circuit's broad reading of RICO's nationwide service of process provision. See ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 627 (4th Cir. 1997). Thus, the Court will not address any personal jurisdiction issues in this opinion.

38

disagreement here about which party bears the burden with respect to tribal sovereign immunity.

Two types of Rule 12(b)(1) motions exist:

> First, a 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject matter jurisdiction can lie. In such a challenge, a court assumes the truth of the facts alleged by plaintiff, thereby functionally affording the plaintiff the same procedural protection he or she would receive under Rule 12(b)(6) consideration.

> However, a 12(b)(1) motion may also . . . challenge the existence of subject matter jurisdiction in fact, apart from the pleadings. In such a challenge, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Lucas, 822 F. Supp. 2d at 599 (internal citations omitted). Moreover, in the latter situation—including where, as here, a defendant asserts sovereign immunity—the court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005) (internal quotations omitted); see also Blitz v. Napolitano, 700 F.3d 733, 736 n.3 (4th Cir. 2012) ("[On] a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings . . . ." (second

39

alteration in original) (internal quotations omitted)). The court then must "weigh[] the evidence to determine its jurisdiction." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

## II. Tribal Sovereign Immunity

### A. Legal Standard

#### 1. In General

Federally-recognized Indian tribes are "separate sovereigns pre-existing the Constitution" that, "unless and until Congress acts, . . . retain their historic sovereign authority." Michigan v. Bay Mills Indian Cmty., 572 U.S. ___, 134 S. Ct. 2024, 2030 (2014) (internal quotations omitted). "Among the core aspects of sovereignty that tribes possess . . . is the common-law immunity from suit traditionally enjoyed by sovereign powers," which shields tribes from liability "absent congressional authorization (or a waiver)." Id. at 2030-31 (citing Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 756 (1998)). The Supreme Court has on multiple occasions refused to "confine [tribal] immunity . . . to transactions on reservations and to governmental activities." Kiowa, 523 U.S. at 754-55; see also Bay Mills Indian Cmty., 134 S. Ct. at 2036 (declining to revisit Kiowa and recognize "any exceptions for commercial or off-reservation conduct"). Thus, even though this broad scope of

40

immunity may have "unfortunate consequences," it is "settled law." Everette v. Mitchem, 146 F. Supp. 3d 720, 723 (D. Md. 2015) (citing Bay Mills Indian Cmty., 134 S. Ct. at 2052 (Thomas, J., dissenting) ("In the wake of Kiowa, tribal immunity has also been exploited in new areas that are often heavily regulated by States. For instance, payday lenders . . . often arrange to share fees or profits with tribes so they can use tribal immunity as a shield for conduct of questionable legality.")); see also Kiowa, 523 U.S. at 756 (acknowledging that tribal immunity is "settled law," even if "[t]here are reasons to doubt the wisdom of perpetuating the doctrine").[19]

Consistent with the idea that "an arm or instrumentality of the State generally enjoys the same immunity as the sovereign itself," Lewis v. Clarke, 581 U.S. ___, 137 S. Ct. 1285, 1290 (2017), courts in other circuits have universally held that "an

---

[19] The Supreme Court has not addressed whether, under Kiowa, "immunity should apply in the ordinary way if a tort victim, or other plaintiff who has not chosen to deal with a tribe, has no alternative way to obtain relief for off-reservation commercial conduct." Bay Mills Indian Cmty., 134 S. Ct. at 2036 n.8; see also Kiowa, 523 U.S. at 758 ("[I]mmunity can harm those who are unaware that they are dealing with a tribe, who do not know of tribal immunity, or who have no choice in the matter, as in the case of tort victims."). However, Plaintiffs willingly chose to contract with Big Picture when obtaining their loans, and Big Picture's association with the Tribe (and possible protection by sovereign immunity) was obvious from the face of Big Picture's loan agreements, so none of those hypothetical situations present themselves here.

41

entity that functions as an arm of a tribe shares in the tribe's immunity," Alabama v. PCI Gaming Auth., 801 F.3d 1278, 1287–88 (11th Cir. 2015); see also White v. Univ. of Cal., 765 F.3d 1010, 1025 (9th Cir. 2014); Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort, 629 F.3d 1173, 1183 (10th Cir. 2010); Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth., 207 F.3d 21, 29 (1st Cir. 2000); Hagen v. Sisseton-Wahpeton Cmty. Coll., 205 F.3d 1040, 1043 (8th Cir. 2000); In re IntraMTA Switched Access Charges Litig., 158 F. Supp. 3d 571, 575 (N.D. Tex. 2015). Although the Fourth Circuit has implicitly approved of this conclusion, it has never affirmatively adopted it. See United States v. Bly, 510 F.3d 453, 465 (4th Cir. 2007) (Motz, J., concurring); Aleman v. Chugach Support Servs., Inc., 485 F.3d 206, 213 (4th Cir. 2007). Nonetheless, several courts in the Fourth Circuit have taken the consensus approach. See Howard v. Plain Green, LLC, No. 2:17CV302, 2017 WL 3669565, at *3 (E.D. Va. Aug. 7, 2017), report and recommendation adopted, 2017 WL 3669096 (E.D. Va. Aug. 24, 2017); Everette, 146 F. Supp. 3d at 723; Madewell v. Harrah's Cherokee Smokey Mountains Casino, No. 2:10CV8, 2010 WL 2574079, at *3 (W.D.N.C. May 3, 2010), report and recommendation adopted, 730 F. Supp. 2d 485 (W.D.N.C. 2010).

42

The parties do not dispute that Big Picture and Ascension would be immune from suit if they qualify as arms of the Tribe, so the sole question here is whether they do so. Federal and state courts have employed several tests to determine if an entity is an arm of a tribe, but the most common was laid out in Breakthrough. See 629 F.3d at 1187-88 & n.10; Howard, 2017 WL 3669565, at *3 ("Federal courts have not settled on a uniform test, but the Tenth Circuit's analysis is the most comprehensive . . . ."). Under that framework, courts consider six factors to decide if the relationship between tribes and entities is close enough to justify immunity: "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities."[20] Breakthrough

---

[20] The court did "not conclude[] that those factors constitute an exhaustive listing or that they will provide a sufficient foundation in every instance for addressing the tribal-immunity question." Breakthrough Mgmt., 629 F.3d at 1187 n.10 (emphasis in original). However, the parties do not suggest that the Court should rely on any factors other than those listed, so this limitation is not meaningful here.

43

Mgmt., 629 F.3d at 1183, 1187-88. Courts should apply these factors only to the entity claiming tribal immunity, but the entity's "prior operations under [different] names may shed light on the inquiry." People ex rel. Owen v. Miami Nation Enters., 386 P.3d 357, 376 (Cal. 2016).[21] The central question "'is not whether the activity may be characterized as a business, which is irrelevant under Kiowa, but whether the entity acts as an arm of the tribe so that its activities are properly deemed to be those of the tribe.'" In re IntraMTA, 158 F. Supp. 3d at 576 (quoting Allen v. Gold Country Casino, 464 F.3d 1044, 1046 (9th Cir. 2006)). In resolving that issue, courts should "take[] into account both formal and functional considerations—in other words, not only the legal or organizational relationship between the tribe and the entity,

---

[21] Big Picture and Ascension criticize Plaintiffs' frequent citations to Miami Nation on the basis that the case's discussion of tribal immunity tried to align Breakthrough with California law, not federal law. But tribal immunity is a common-law immunity that operates the same way in state and federal court, so the location of the underlying lawsuit in Miami Nation does not make that case any less helpful here. Indeed, Breakthrough itself relied heavily on cases from state courts, including California courts. See 629 F.3d at 1187-88. Moreover, the Tenth Circuit, which authored Breakthrough, has agreed with Miami Nation's more practical view of tribal immunity (albeit to require more jurisdictional discovery, and not to decide the ultimate immunity question). See Finn v. Great Plains Lending, LLC, 689 F. App'x 608, 611 (10th Cir. 2017). Thus, Miami Nation can help explain the Breakthrough factors even if the tests in those cases are different.

44

but also the practical operation of the entity in relation to the tribe." Miami Nation, 386 P.3d at 365. "These functional considerations illuminate the degree to which imposition of liability on the entity would practically impair tribal self-governance." Id. at 371.

### 2. Burden of Proof

Before turning to the merits of the jurisdictional dispute, the Court must first address which party bears the burden of proof as to a tribal arm's entitlement to sovereign immunity. Big Picture and Ascension contend that this question is easily answered because, in the Fourth Circuit, a plaintiff responding to a Rule 12(b)(1) motion must prove that subject matter jurisdiction exists. Richmond, Fredericksburg & Potomac R. Co., 945 F.2d at 768. However, this cursory assertion ignores the complexity of the jurisdictional issues raised by sovereign immunity. It is well-settled that the plaintiff bears the burden of showing subject matter jurisdiction, and that tribal immunity—like any sovereign immunity—"'deprives a court of jurisdiction'" over a defendant. Everette, 146 F. Supp. 3d at 723 (quoting Jones, 225 F.3d at 469). But those statements do not necessarily imply that tribal immunity is a matter of subject matter jurisdiction in the traditional sense—like, for instance, diversity of citizenship—or, instead, a factual issue

45

with jurisdictional implications. In fact, "the jurisdictional nature of tribal immunity has never been definitively settled," and has sometimes been discussed in terms of personal jurisdiction, at least in California courts. Miami Nation, 386 P.3d at 370. Federal courts have also reached differing conclusions on the point. Compare Miner Elec., Inc. v. Muscogee (Creek) Nation, 505 F.3d 1007, 1009 (10th Cir. 2007) ("Tribal sovereign immunity is a matter of subject matter jurisdiction . . . .") with In re Prairie Island Dakota Sioux, 21 F.3d 302, 305 (8th Cir. 1994) (tribal immunity "is a jurisdictional consideration separate from subject matter jurisdiction"). This categorization is important: pure subject matter jurisdictional issues, unlike tribal immunity, cannot be waived, and must be raised sua sponte by a court if it might lack the ability to hear a case. See Miami Nation, 386 P.3d at 370. Given these contrasts, it is possible that the burden for tribal immunity issues should be allocated differently than the burden for subject matter jurisdictional issues.

Moreover, even assuming that tribal immunity is a question of subject matter jurisdiction, that should not necessarily put the burden on Plaintiffs to prove that Big Picture and Ascension are not entitled to sovereign immunity. Such placement would effectively assume the truth of Big Picture's and Ascension's

46

assertion that they should be immune from suit in the same way
as the Tribe itself. "Arm-of-the-tribe cases, however, require
the court to decide an antecedent question: whether [the
entities] can claim sovereign immunity in the first instance."
Id. (alteration in original) (internal quotations omitted). Big
Picture and Ascension may be right that Plaintiffs, having
received extensive information from jurisdictional discovery,
can prove that Big Picture and Ascension are not entitled to
tribal immunity just as easily as those entities can prove that
they are entitled to it. At the same time, even if the parties
can access the same evidence, one side must present it in a way
that convinces the Court to make a particular decision, and
there is no reason that Big Picture and Ascension should be
freed from having to do so before the Court finds that they are
entitled to tribal immunity. Stated differently, it would be odd
to treat Big Picture and Ascension as immune entities without
making them show it first. See id. at 371 ("An entity that is
formally distinct from the tribe will be immune from suit only
insofar as it benefits from the tribe's own immunity. . . . But
until the entity has proven it should be treated as an extension
of the tribe, it is no more entitled to a presumption of
immunity than any other party.").

47

With these considerations in mind, most courts have concluded that an entity seeking tribal immunity must show by a preponderance of the evidence that it is entitled to that immunity, either as an arm of the tribe or as the tribe itself. See Gristede's Foods, Inc. v. Unkechuage Nation, 660 F. Supp. 2d 442, 465 (E.D.N.Y. 2009); City of N.Y. v. Golden Feather Smoke Shop, Inc., No. 08-CV-3966, 2009 WL 705815, at *4 (E.D.N.Y. Mar. 16, 2009); Miami Nation, 386 P.3d at 371. But see Cash Advance & Preferred Cash Loans v. State, 242 P.3d 1099, 1113 (Colo. 2010) (requiring plaintiff to prove by a preponderance of the evidence that tribal entities are not entitled to immunity because tribal immunity "bears a substantial enough likeness to subject matter jurisdiction to be treated as such for procedural purposes"). Besides the practical aspects noted above, those courts found considerable support in cases involving arms of the state, in which courts have held that the governmental entity invoking the Eleventh Amendment must show that it qualifies as an arm of the state. See, e.g., Golden Feather, 2009 WL 705815, at *4; see also U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 147 (4th Cir. 2014) (Traxler, C.J., concurring in judgment in part and dissenting in part) ("[T]he circuits that have considered similar assertions of arm-of-state status have uniformly concluded that it is an affirmative defense to be

48

-197-

raised and established by the entity claiming to be an arm of the state."). Because the arm-of-the-tribe and the arm-of-the-state analyses are functionally identical in the sovereign immunity context, it is illogical to place the burden on different parties in each situation.

The problem here is that the Fourth Circuit has not addressed which party bears the burden on the arm-of-the-state question. Plaintiffs claim that the Fourth Circuit has held that "'arm-of-state status . . . must be treated as an affirmative defense.'" Pls. Opp. at 17 (quoting Oberg, 745 F.3d at 148 (Traxler, C.J., concurring in judgment in part and dissenting in part)). That contention is plainly wrong, as the language quoted is from Chief Judge Traxler's opinion concurring in the judgment and dissenting, which is not precedent. The majority in Oberg, however, did acknowledge that "arm-of-the-state status may well constitute an affirmative defense in the related Eleventh Amendment context." 745 F.3d at 136. Relying on that brief statement, another judge in the Court has concluded that the entity asserting sovereign immunity bears the burden of demonstrating that it is an arm of the state. Pele v. Pa. Higher Educ. Assistance Agency, 13 F. Supp. 3d 518, 522 (E.D. Va. 2014); see also Pope v. Barnwell Cty. Sch. Dist. No. 19, No. 1:16-CV-01627-JMC, 2017 WL 1148741, at *4 (D.S.C. Mar. 28,

49

2017). Accordingly, the arm-of-the-state framework is just as influential here in determining which side has the burden in the arm-of-the-tribe inquiry as it was in Miami Nation and Golden Feather. As a result, the Court will join those courts in concluding that the entities claiming tribal sovereign immunity—here, Big Picture and Ascension—bear the burden of establishing by a preponderance of the evidence that they are entitled to that immunity as arms of the tribe.

### B. Application of Breakthrough Factors

Reviewing the six Breakthrough factors in the context of the parties' jurisdictional discovery, the Court concludes that Big Picture and Ascension have not met their burden of proof and, therefore, are not entitled to sovereign immunity.

### 1. Method of Creation

The first factor "focuse[s] on the law under which the entity was formed. Formation under tribal law weighs in favor of immunity, whereas formation under state law has been held to weigh against immunity." Miami Nation, 386 P.3d at 372 (internal citations omitted). Consistent with that statement, courts have found that this factor supports sovereign immunity where entities' formation documents showed that they were organized under and operated pursuant to tribal law. See White, 765 F.3d at 1025; Breakthrough Mgmt., 629 F.3d at 1191–92; Allen, 464

50

-199-

F.3d at 1046; Howard, 2017 WL 3669565, at *3; Everette, 146 F. Supp. 3d at 724; In re IntraMTA, 158 F. Supp. 3d at 576; Miami Nation, 386 P.3d at 376. In contrast, this factor has weighed against sovereign immunity where it was clear that the purported tribal entities were incorporated under state law. See Somerlott v. Cherokee Nation Distributors, Inc., 686 F.3d 1144, 1149 (10th Cir. 2012); J.L. Ward Assocs., Inc. v. Great Plains Tribal Chairmen's Health Bd., 842 F. Supp. 2d 1163, 1176 (D.S.D. 2012).

Applying that rationale here, this factor weighs in favor of immunity. Big Picture and Ascension were both organized through resolutions by the LVD Council, which was itself exercising the power given to it by the LVD Constitution, and the entities operated pursuant to the Tribe's Business Ordinance. See Aug. 26, 2014 Resolution at 1-2 (Big Picture); Big Picture Arts. of Organization at 1; Feb. 5, 2015 Ascension Resolution at 1-2; Ascension Arts. of Organization at 1. The same is true of Red Rock, the loans of which were assigned to Big Picture after TED acquired Bellicose. Sept. 14, 2011 Resolution at 1; Red Rock Arts. of Organization at 1. As in the cases noted above, these tribal formation documents justify Big Picture's and Ascension's claims to sovereign immunity.

Plaintiffs contend that looking only to the documents under which Big Picture and Ascension were organized fails to account

51

for other circumstances surrounding their formation—namely, the cease-and-desist letter issued to Red Rock by the New York Department of Financial Services, the "mounting pressure" against rent-a-tribe schemes, and Hazen's inability to explain who decided to create Big Picture. Pls. Opp. at 18. It is true that "[t]he circumstances under which the entity's formation occurred, including whether the tribe initiated or simply absorbed an operational commercial enterprise," may be relevant to this factor. Miami Nation, 386 P.3d at 372. Here, it is telling that Big Picture and Ascension were not formed until after the Tribe was denied an injunction against the New York cease-and-desist. See Otoe-Missouria, 974 F. Supp. 2d at 353. Plaintiffs have presented credible evidence that, following that decision, Martorello and the Tribe looked for ways to restructure Red Rock's lending operation in order to reduce exposure to liability. Indeed, several steps in February 2015— the formation of TED and Ascension, the reorganization of Big Picture with TED as its sole member, and the initiation of the Tribe's Bellicose purchase—were apparently taken with that very goal in mind. Moreover, although Red Rock was formed as a tribal entity, Bellicose and its subsidiaries, like SourcePoint, were a critical part of Red Rock's business. Thus, by creating Big Picture and Ascension, the Tribe was not starting an independent

52

lending operation but rather facilitating the absorption of Red Rock's fully-functioning lending enterprise—which had a decidedly non-tribal character, given Bellicose's involvement. Big Picture and Ascension may be right that Hazen's lack of knowledge about the decision to create Big Picture is not meaningful on its own. But, viewed in context, Hazen's unawareness teaches that the impetus behind the formation of Big Picture and Ascension was Martorello and Bellicose's desire to avoid liability, more so than the Tribe's interest in starting its own business. Consequently, these circumstances limit the extent to which this factor weighs in favor of sovereign immunity. Moreover, the real significance of this evidence is in the second Breakthrough factor: the purpose factor.

However, Plaintiffs' second assertion—that Ascension's registration as a foreign LLC in Puerto Rico also affects the formation factor—is much less persuasive. Somerlott held that the Breakthrough factors are "inapplicable to entities which are legally distinct from their members and which voluntarily subject themselves to the authority of another sovereign which allows them to be sued." Somerlott, 686 F.3d at 1149-50. Plaintiffs point out that, although Ascension may be organized under tribal law, it subjected itself to the laws and the possibility of being sued in Puerto Rico by registering as a

53

foreign LLC there. See P.R. Laws tit. 14, §§ 3522(a), 3806(b), 4021(a)(1). But Somerlott's holding was premised entirely on the entity's incorporation under state law, which distinguished the case from others in which entities claiming to be arms of a tribe were "organized, in some form or another, under tribal law." 686 F.3d at 1149; see also J.L. Ward, 842 F. Supp. 2d at 1176 (entity was "created by incorporation under South Dakota, rather than tribal, law" (emphasis added)). Plaintiffs' attempt to skirt this limitation is unsupported by Somerlott, which demonstrated its holding by explaining that a corporation owned by the United States but incorporated under New York law would not share the United States' sovereign immunity. 686 F.3d at 1150. Ascension's background is obviously different, as it is both owned by the Tribe and incorporated under its laws. See Rassi v. Fed. Program Integrators, LLC, 69 F. Supp. 3d 288, 291 (D. Me. 2014) (distinguishing Somerlott where tribe formed subordinate entity under similar circumstances). Thus, this argument misses the mark. As a result, the first Breakthrough factor supports a finding of sovereign immunity for both Big Picture and Ascension, albeit with the caveat noted above.

### 2. Purpose of Entities

The second factor "encompasses both the stated purpose for which the entity was created and the degree to which the entity

54

actually serves that purpose." Miami Nation, 386 P.3d at 372;
see also Breakthrough Mgmt., 629 F.3d at 1192-93 (considering
both elements). The initial question is whether the entity has a
stated purpose that "relates to broader goals of tribal self-
governance" separate from the entity's commercial activities,
like developing the tribe's economy or funding governmental
services, or whether "the entity was created solely for business
purposes and without any declared objective of promoting the
tribe's general tribal or economic development." Miami Nation,
386 P.3d at 372 (internal quotations omitted). If such a purpose
exists, the inquiry then turns to the entity's "execution" of
that purpose; the "fit . . . need not be exact, but the closer
the fit," the more it supports tribal immunity. Id. For
instance, evidence of "the number of jobs [the entity] creates
for tribal members or the amount of revenue it generates for the
tribe" suggests that it is an arm of the tribe, but "evidence
that the entity engages in activities unrelated to its stated
goals or that [it] actually operates to enrich primarily persons
outside of the tribe or only a handful of tribal leaders" shows
the opposite.[22] Id. at 373.

---

[22] Miami Nation cites no case law in support of this required
"fit" between purpose and execution. See 386 P.3d at 372-73.
Nonetheless, Miami Nation's conclusion makes sense logically,
and Breakthrough supports the more exacting inquiry called for

55

The stated purposes of both Big Picture and Ascension relate to the Tribe's goal of economic self-sufficiency. Big Picture's stated purpose is "[t]o engage in the business of operating one or more Tribal lending business(es)," Big Picture Arts. of Organization, Art. 5, which it does as part of the LVD Council's "strategic economic development efforts" that are aimed at "diversify[ing] the economy of the Tribe's reservation in order to improve the Tribe's economic self-suffiency," Aug. 26, 2014 Resolution at 1. Similarly, Ascension's stated purpose is "[t]o engage in the business of operating one or more Tribal marketing, technology and vendor service business(es)," Ascension Arts. of Organization, Art. 5, which helps fulfill the same tribal economic development efforts, see Feb. 5, 2015 Ascension Resolution at 1. Those stated purposes must also be read in conjunction with that of TED, the sole member of both entities, which works "[t]o promote the economic development of the Tribe through the development of business opportunities." TED Arts. of Organization, Art. 5. Along the same lines, TED's management activities are intended "to further the economic development of the Tribe." Feb. 5, 2015 TED Resolution at 1. These goals—development and execution of an online lending

---

by Miami Nation. See Breakthrough Mgmt., 629 F.3d at 1192-93 (examining entity's revenue allocation in considering purpose).

business to gain revenue for the Tribe's economic benefit—are
extremely similar to those that other courts have found relate
to tribal self-governance. See Breakthrough Mgmt., 629 F.3d at
1192 (casino was created to "further[] the economic prosperity
of the Tribe"); Howard, 2017 WL 3669565, at *3 (stated purposes
included "increase[ing] [sic] Tribal revenues and enhance[ing]
[sic] the Tribe's economic self-sufficiency and self-
determination" (alterations in original)); Everette, 146 F.
Supp. 3d at 724 (entity's purpose was "to engage in lending
related activities that will generate additional revenues for
the Tribe"); Gavle v. Little Six, Inc., 555 N.W.2d 284, 294
(Minn. 1996) (stated purpose was "improv[ing] the business,
financial or general welfare" of the entity and tribe
(alteration in original)).

On the surface, these stated purposes seem to favor Big
Picture and Ascension. However, as set out in Section II.B.1
above, the record shows that the formation of Big Picture and
Ascension, and indeed, much of the tribal restructuring, was for
the real purpose of helping Martorello and Bellicose to avoid
liability, rather than to help the Tribe start a business. And,
that finding means that Big Picture and Ascension have not
carried their burden on the purpose factor.

57

Plaintiffs also contend that Big Picture and Ascension do not fulfill their stated purposes in practice. First, they say, Big Picture and Ascension have not provided any information about the number of jobs created for the Tribe or the amount of revenue received by the Tribe from their business. Second, they note that Ascension does not employ any tribal members and generates no revenue for the Tribe. Third, they assert that Big Picture is structured such that the primary beneficiaries are Hazen (who is paid more than the other tribal employees of Big Picture) and Martorello (given that TED uses most of Big Picture's revenue to make loan payments to Eventide).[23]

All three arguments have merit. First, Plaintiffs are wrong to claim that Big Picture and Ascension have provided no information about the revenue generated for the Tribe; Williams has explained that money from Big Picture constitutes more than 10% of the Tribe's general fund, and may contribute more than 30% of the fund within the next few years. Williams Aff. ¶ 10.

---

[23] Plaintiffs also argue that Red Rock's distribution of limited revenue to the Tribe in 2014 and 2015 should influence the Court's decision. However, Red Rock is a defunct entity that made distributions pursuant to a servicing agreement with another entity, SourcePoint, that also no longer exists, and that agreement has no bearing on the parties asserting tribal immunity (the relationship of which is governed by an entirely different contract). Given those differences, Red Rock's situation does not "shed light on the [purpose] inquiry" and will not affect the Court's consideration of this factor. Miami Nation, 386 P.3d at 375.

58

---

The Tribe obtains these funds both through TED's monthly 3% distributions, and as interest on its substantial investment in Big Picture's enterprise. See id. ¶¶ 8-10. Nonetheless, courts assessing an entity's execution of purpose have examined how much revenue the tribe actually received from the entity. See Breakthrough, 629 F.3d at 1192-93 (concluding that entity's business "clearly benefit[ed] the Tribe" based on percentage allocation of revenue to certain tribal governmental functions); Everette, 146 F. Supp. 3d at 724 (noting that revenue was used "to fund various tribal governmental, educational, and social services" and to provide specified "essential services"). In that regard, Hazen's statement that those funds "support LVD governmental essential services and support the LVD community" in numerous ways, Hazen Aff. ¶ 31, is far too general, as it sheds no light on how much Big Picture's revenue helped fund those services. That money might, for instance, constitute only a small, insignificant part of the funding for the services that Hazen has identified. If that is true, then Big Picture would not be effectively serving the Tribe's economic development. The evidence provided by Big Picture and Ascension, which bear the burden of proof here, is too vague to eliminate that possibility.

59

Furthermore, even if Big Picture's revenue is a meaningful portion of the Tribe's general fund, the revenue received by the Tribe is a sliver of Big Picture's total earnings. The entity seeking immunity in Breakthrough provided 100% of its revenue to various tribal services. 629 F.3d at 1192-93. Here, in contrast, the Note expressly limits the funds available to the Tribe to 5% of Big Picture's monthly revenue—the 3% monthly distribution and the 2% reinvestment amount, if the latter is treated as a current benefit to the Tribe.[24] See Note § 1.2. Breakthrough did not specify any revenue allocation percentage that must be reached to reflect an adequate fit between purpose and execution, but Miami Nation noted that a similarly small revenue distribution—a monthly payment of either 1% of the entity's revenue or $25,000—would not economically benefit the tribe. See 386 P.3d at 377-78. The evidence here further indicates that Big Picture has, over time, given the Tribe a little less than $5 million, whereas TED has made loan repayments to Eventide of

---

[24] Plaintiffs assert that this amount is not a current benefit because TED will not receive any reinvestment amount if it defaults on the loan. No evidence shows that TED is likely to default in the near future, and the Big Picture balance sheets cited by Plaintiffs appear to treat that reinvestment amount as a current asset. Plaintiffs' assertion thus relies on the wholly speculative premise that TED will, at some future date, take some action that qualifies as an event of default. See Loan Agm't § 6.1. The Court will not base its conclusion about Big Picture's purpose on a guess about the future.

60

about $20 million.[25] Big Picture Suppl. Interrogatory
Responses ¶ 1. In other words, even under this broader view—
which accounts for the months in which Eventide has not received
any distribution—the Tribe has only received about 20% of Big
Picture's total revenue, still a relatively small percentage.
That imbalance shows that Big Picture has not served its stated
purpose very well. And, even if Big Picture will not owe
Eventide anything after the Note terminates in several years,
Note § 1.3, the revenue distribution disparity will almost
certainly have increased in that period, assuming Big Picture's
revenue stream remains similar to what it has been since the
parties entered into the Note.

Ascension is in a very similar position. That company
supports Big Picture's lending operations and generates no
revenue itself, see Intratribal Servicing Agm't § 3.4, so the
purpose analysis for Big Picture applies to Ascension in much
the same way. Some evidence also demonstrates that Ascension

---

[25] As noted, Martorello claims that the Tribe has actually
obtained more economic consideration than Eventide since the
Bellicose purchase. Martorello Decl. ¶ 63. However, that
assertion is based on his valuation of equity consideration from
some unknown "audited financial statements." Id. Because Big
Picture and Ascension have not provided those statements here,
it is impossible to verify the accuracy of Martorello's
statement in the face of conflicting evidence showing that the
Tribe's actual economic benefit under the Note has been dwarfed
by Eventide's.

fulfills its nominal purpose even less effectively than Big Picture. Whereas Big Picture's employees primarily belong to the Tribe and work on its reservation, Ascension does not employ any non-tribal members, instead relying mostly on employees that previously worked at Bellicose. That composition may have been justified when Ascension was formed in 2015 because the company needed individuals with certain technical knowledge for the required support services, and Bellicose's employees were the perfect candidates. But, in the several years since, Hazen's and Williams' testimony instructs that the Tribe has done little more than encourage tribal members to pursue educational opportunities that would allow them to work for Ascension and Big Picture in the future.[26] Thus, Ascension has failed to contribute much to the Tribe's self-governance, either directly (by supporting Big Picture's minimal revenue generation) or indirectly (by hiring tribal employees).

Finally, Big Picture's and Ascension's compensation structures underscore the companies' poor execution of their purposes. Despite what Plaintiffs claim, the evidence does not

---

[26] Plaintiffs' assertion that Ascension or the Tribe has not started any training programs for tribal members to work at the company assumes, without any apparent basis in the evidence, that the Tribe has both the capacity and the funds to do so. This failure to pursue some possibly unachievable hypothetical goal does not count against Ascension in the purpose analysis.

62

indicate that Martorello himself has received any substantial economic benefit from Big Picture, certainly not in the same sense as the non-tribal individuals in Miami Nation. See 386 P.3d at 363, 378 (noting that individuals used alleged tribal entities' checks to pay for their personal expenses). However, Plaintiffs' breakdown of the compensation of Hazen, other tribal employees of Big Picture, all employees of Ascension, and the total amount paid to Ascension by Big Picture clearly illustrates two things: (1) Hazen has profited from Big Picture's lending operation far more than any other tribal members, and (2) Ascension's employees are paid handsomely compared to Big Picture's employees. These compensation differences lead to the conclusion that Big Picture and Ascension primarily benefit individuals and entities outside the Tribe, or only one tribal leader, both of which are inconsistent with the goal of economic development. See id. at 373.

Given these circumstances—and even granting that the fit between purpose and execution need not be exact, id. at 372—Big Picture and Ascension have largely failed to fulfill their stated purposes. Accordingly, this factor weighs against sovereign immunity for both entities.

63

-212-

### 3. Structure, Ownership, and Management of Entities, Including Amount of Tribe's Control

This factor focuses primarily on the leadership of the entity claiming immunity. See Breakthrough Mgmt., 629 F.3d at 1193. "Relevant considerations include the entity's formal governance structure, the extent to which it is owned by the tribe, and the entity's day-to-day management." Miami Nation, 386 P.3d at 373. However, an entity's "outsourc[ing] management to a nontribal third party is not enough, standing alone, to tilt this factor against immunity." Id.; see also Gavle, 555 N.W.2d at 295 ("[C]ontrol of a corporation need not mean control of business minutiae; the tribe can be enmeshed in the direction and control of the business without being involved in the actual management."). In that case, the inquiry turns to the tribe's involvement despite the nontribal leadership. "Evidence that the tribe actively directs or oversees the operation of the entity weighs in favor of immunity; evidence that the tribe is a passive owner, neglects its governance roles, or otherwise exercises little or no control or oversight weighs against immunity." Miami Nation, 386 P.3d at 373.

Big Picture is an LLC that is 100% owned and operated by its sole member, TED, which in turn is 100% owned and operated by its sole member, the Tribe. Big Picture Arts. of

64

Organization, Arts. 8-9; TED Arts. of Organization, Arts. 8-9.
Big Picture is also managed by two tribal members, Hazen and
Williams, who were appointed by majority vote of the LVD Council
and must be removed in the same way. Hazen Aff. ¶ 15; Williams
Aff. ¶ 12; Big Picture Operating Agm't § 5.1(a), (d). As co-
managers, Hazen and Williams are granted the broad authority to
"bind [Big Picture] individually," and "to do and perform all
actions as may be necessary or appropriate to carry out the
business of [Big Picture] including but not limited to the power
to enter into contracts for services, to manage vendor
relationships, [and] to manage personnel issues and affairs of
[Big Picture}." Big Picture Operating Agm't § 5.1(a). They are
precluded only from restricting or selling Big Picture's assets
or waiving its sovereign immunity, for which they must obtain
TED's consent (by majority vote of the LVD Council). Id. § 5.2.
Furthermore, to the extent that Hazen and Williams are not
involved in the day-to-day operations of Big Picture, the Tribe
has a substantial role in those operations, as the entity
employs a number of tribal members and conducts all of its
operations on the Reservation. Hazen Aff. ¶ 24. Finally, the
executive leadership of Big Picture preserves the Tribe's
influence, as Hazen is the company's CEO. Id. ¶ 20; see also
Breakthrough, 629 F.3d at 1193 (factor weighed both for and

65

against immunity where directors of entity were all tribal members but some executive officers were non-tribal members). This general structure is to assure that Big Picture is answerable to the Tribe at every level, which supports immunity. See Howard, 2017 WL 3669565, at *4; Everette, 146 F. Supp. 3d at 724-25; In re IntraMTA, 158 F. Supp. 3d at 577; J.L. Ward, 842 F. Supp. 2d at 1176-77.

Plaintiffs claim, however, that Big Picture's formal structure is overcome in practice by Ascension's substantial role. In support of this assertion, Plaintiffs highlight the Intratribal Servicing Agreement,[27] which, they contend, confers significant day-to-day responsibilities on Ascension and permits little oversight by Big Picture. They acknowledge that the Agreement does not grant Ascension the authority to "engage in origination activities, execute loan documentation, or approve the issuance of loans to consumers." Intratribal Servicing Agm't § 4.1. However, they note, the Agreement assigns to Ascension the duties to give "pre-qualified leads" to Big Picture and to provide "the necessary credit-modeling data and

---

[27] Plaintiffs are correct that the Intratribal Servicing Agreement and the Servicing Agreement delegate nearly identical responsibilities to Ascension and SourcePoint, respectively. See Intratribal Servicing Agm't § 4.2.1; Servicing Agm't § 4.2.1. However, it is unclear how this similarity affects the control inquiry, as Plaintiffs do not explain how the Servicing Agreement limited the Tribe's control over Red Rock.

66

risk assessment strategies" used by Big Picture to decide whether to issue a loan. Id. § 4.2.1(k). Because Ascension generally identifies potential loan applicants by prescreening credit reports and then directs mass mailings to those consumers, Plaintiffs say, Big Picture's role is limited to verifying details at the loan approval stage. This minimal involvement is further shown by Williams' lack of knowledge about entities owned by Big Picture.

Plaintiffs' argument relies on two underlying contentions: (1) that the Tribe's formal oversight of Big Picture is meaningless given Ascension's dominant role in Big Picture's lending operations; and (2) that, assuming Ascension has such a role, that entity is not controlled by the Tribe. Both arguments are persuasive. As to the first assertion, it is true that the Intratribal Servicing Agreement also states that "[t]he criteria used to extend funds to individual borrowers will remain within the sole and absolute discretion" of Big Picture, and that Big Picture "shall execute all necessary loan documentation." Id. Nonetheless, considering that Ascension's responsibilities allow it to identify borrowers based on Ascension's own credit-modeling system and then prepare mass mailings to those consumers, it does not appear that Big Picture has much discretion to exercise when it receives recommendations or

67

-216-

documents from Ascension. Indeed, Ascension's actions in effect reduce Hazen's and William's responsibilities in the loan process to pro forma review and approval of key business decisions. See ECF No. 91-3; see also Big Picture Interrogatory Responses ¶ 24. Viewed in conjunction with Ascension's numerous other responsibilities under Section 4.2.1, this control is too limited to support a finding of tribal immunity. See Miami Nation, 386 P.3d at 373.

Moreover, evidence that Williams is not familiar with three Big Picture subsidiaries shows that Hazen and Williams do little to oversee Big Picture's operations as co-managers. Big Picture and Ascension point to several documents that, they say, suggest just the opposite: that those individuals "actively direct[] or oversee[] the operation of [Big Picture]." Id. For instance, Hazen and Williams have discussed items like Big Picture's operating budget and employee handbook, ECF Nos. 102-15, 102-16; and approved forms sent by employees concerning, inter alia, company policies and procedures, compliance management, and personnel decisions, ECF No. 106-13. This evidence reflects that Hazen and Williams exercise some managerial oversight over Big Picture's operations. However, Williams' testimony about other issues, like his non-involvement in Big Picture's day-to-day and lack of knowledge about customer service representatives'

68

responsibilities operations, demonstrates that such oversight is narrow in both scope and depth. Consequently, Big Picture has not shown by a preponderance of the evidence that the Tribe, through Hazen and Williams, controls Big Picture, so this factor weighs against immunity for that entity.

The question of Ascension's tribal control is not as close. Just like Big Picture, Ascension is an LLC that is 100% owned and operated by its sole member, TED. Ascension Arts. of Organization, Arts. 8-9. Hazen and Williams also manage Ascension, and the operating agreement gives them the same broad powers as with Big Picture and requires an LVD Council vote for their appointment and removal. Hazen Aff. ¶ 19; Williams Aff. ¶ 13; Ascension Operating Agm't §§ 5.1-5.2. At the same time, as in Breakthrough, the Tribe's control is diminished by the appointment of a non-tribal member, McFadden, as Ascension's president. See 629 F.3d at 1193. Likewise, Ascension conducts most activities outside the Reservation and employs only non-tribal members. In light of this non-tribal management, the Court must consider whether the Tribe is an active or passive owner. See Miami Nation, 386 P.3d at 373. Here, that inquiry revolves around the extent of Hazen and Williams' oversight of Ascension and the influence of non-tribal actors on Ascension's decisions.

69

Ascension has presented evidence that McFadden must obtain Hazen's or Williams' approval for "changes in operations, personnel, or distributions," McFadden Aff. ¶ 8, and that Ascension employees have submitted request and approval forms to Hazen and Williams for certain business decisions, ECF No. 106-13. Ascension's operating agreement also reserves primary oversight of the company's actions for Hazen and Williams. See Ascension Operating Agm't § 5.1(a). Nonetheless, those assertions of oversight are undercut materially because Hazen and Williams have delegated to McFadden the authority to approve Ascension's "strategic direction, goals and targets"; execute documents on the company's behalf; open and maintain Ascension's bank accounts; adopt, terminate, or change employee benefit plans; and oversee "all matters necessary for the day to day management of Ascension." Ascension Delegation of Authority Policy § 1.4. These actions are all important managerial ones that can significantly affect an entity's directions and its decisions. And, the evidence tends to show that the real management function lies not with Hazen and Williams, but with McFadden. On balance, that evidence augurs against Ascension's immunity claim.

Plaintiffs make much of provisions in the Loan Agreement that prevent TED and Ascension from modifying the Intratribal

70

-219-

Servicing Agreement or terminating or replacing any managers or officers of Ascension, among other entities, without Eventide's consent. Loan Agreement §§ 5.12, 5.14. Although there is no evidence that these rights have been exercised, their mere presence is evidence that goes against a finding of immunity because they confer on Eventide, and hence Martorello, significant control mechanisms over significant aspects of Ascension's operations. On balance, the control factor slightly favors a finding against immunity. At best for Big Picture and Ascension, it is neutral, and thus does not aid them in meeting their burden of proof.

### 4. Tribe's Intent with Respect to Sharing of Sovereign Immunity

Big Picture's and Ascension's formation documents show that the Tribe intended for both entities to share its immunity. The resolutions organizing each company state:

> [T]he [LVD] Council believes it to be in the best interest of the Tribe to create such an entity which, as a wholly owned and operated instrumentality of the Tribe, shall be possessed of all the privileges of the Tribe, including but not limited to the sovereign immunity of the Tribe which shall not be waived unless authorized by the [LVD] Council . . . .

Aug. 26 2014 Resolution at 2; Feb. 5, 2015 Ascension Resolution at 2. Each entity's articles of organization reiterate that

71

-220-

"[t]he sovereign immunity of the [entity] shall remain intact unless waived by [TED] pursuant to a duly authorized resolution of the [LVD] Council." Big Picture Arts. of Organization, Art. 7; Ascension Arts. of Organization, Art. 7. Other courts have found similar language sufficient for this factor to support tribal immunity. See Breakthrough, 629 F.3d at 1193-94; Howard, 2017 WL 3669565, at *4; Everette, 146 F. Supp. 3d at 725.

Plaintiffs concede that this factor weighs in Big Picture's and Ascension's favor, but argue that the Court should accord it the least weight out of all the factors. Plaintiffs are right that the intent factor "reveals little about 'whether the entity acts as an arm of the tribe so that its activities are properly deemed to be those of the tribe,'" Miami Nation, 386 P.3d at 379 (emphasis in original) (quoting Allen, 464 F.3d at 1046), but they mistake the significance of that statement. Miami Nation simply held that tribal intent "cannot, without more, . . . tip the balance in favor of immunity" where that factor is the only one to point "unequivocally" in that direction. Id. (internal quotations omitted). Big Picture and Ascension do not ascribe to this factor such outsized importance in the immunity analysis; indeed, they discuss it the least of any Breakthrough factor. Moreover, neither Miami Nation nor any other case holds that the

72

intent factor should be given any less weight. Therefore, the
Court will consider this factor as it would any other.

But here the intent factor must be assessed in perspective
of the context in which Big Picture and Ascension were created.
As explained above, the record shows that those entities were
intended to be vehicles that would shield Martorello and
Bellicose from liability. Then, on this record, the intent
factor weighs against a finding of immunity because to do
otherwise is to ignore the driving force for the Tribe's intent
to share its immunity. Here, the Tribe's intent no doubt was, in
part, to help the Tribe, but to do so by providing its immunity
to shelter outsiders from the consequences of their otherwise
illegal actions.

### 5. Financial Relationship Between Tribe and Entities

The "starting point" for this factor is "whether a judgment
against the entity would reach the tribe's assets." Miami
Nation, 386 P.3d at 373; see also J.L. Ward, 842 F. Supp. 2d at
1176 (factor weighed against immunity because "[a] suit against
[the entity] would not appear to affect, at least not directly,
any particular tribe's fiscal resources"). However, "direct
tribal liability . . . is neither a threshold requirement for
immunity nor a predominant factor in the overall analysis."
Miami Nation, 386 P.3d at 373; see also Breakthrough Mgmt., 629

73

-222-

F.3d at 1187 ("Although . . . the financial relationship between a tribe and its economic entities is a relevant measure of the closeness of their relationship, . . . it is not a dispositive inquiry.").[28] After all, "[s]ome tribes rely on [an entity's] business revenues to an extent that a judgment against the entity could effectively strike a blow against the tribal treasury, regardless of whether the tribe is directly liable." Miami Nation, 386 P.3d at 373. Consequently, courts consider the extent of the tribe's dependence on the entity "'for revenue to fund its governmental functions, its support of tribal members, and its search for other economic development opportunities.'" Id. (quoting Breakthrough Mgmt., 629 F.3d at 1195). Accordingly, "[i]f a significant percentage of the entity's revenue flows to the tribe, or if a judgment against the entity would significantly affect the tribal treasury, this factor will weigh in favor of immunity even if the entity's liability is formally limited." Id.

---

[28] Miami Nation specifically rejected holdings by other state courts that the tribe's direct liability (or lack thereof) was dispositive of the financial relationship factor. See 386 P.3d at 373 (citing Sue/Perior Concrete & Paving, Inc. v. Lewiston Golf Course Corp., 25 N.E.3d 928, 935 (N.Y. 2014); Runyon ex rel. B.R. v. Ass'n of Vill. Council Presidents, 84 P.3d 437, 440-41 (Alaska 2004)). Given that Sue/Perior and Runyon represent the minority approach on this issue, the Court will not follow them here.

74

The Tribe would not be directly affected by any judgment against Big Picture or Ascension. Each entity's operating agreement contains a liability limitation provision that makes the entity's "debts, liabilities, and obligations" its own. Big Picture Operating Agm't § 4.3; Ascension Operating Agm't § 4.3. The entities' interrogatory responses confirm that the Tribe would not be liable for any judgment against the entities because they are LLCs. Big Picture Interrogatory Responses ¶ 23; Ascension Interrogatory Responses (ECF No. 83-13) ¶ 18. Accordingly, neither company can satisfy this aspect of the financial relationship factor.

Other evidence further establishes that Big Picture and Ascension lack a strong financial connection to the Tribe. The structure of the Note ensures that the Tribe's monthly gains will only consist of, at most, 5% of Big Picture's revenue. Thus, as described above, the Tribe has received a little less than 20% of the total revenue distributed under the Note. Because the Tribe receives a very small part of Big Picture's revenue, this factor does not cut the same way as in cases where "all of [the entity's] profits inure[d] to the benefit of the Tribe." Howard, 2017 WL 3669565, at *4; see also Breakthrough Mgmt., 629 F.3d at 1195 ("One hundred percent of the Casino's revenue goes to the Authority and then to the Tribe.").

75

Furthermore, the other evidence that Big Picture and Ascension claim weighs in favor of immunity is unconvincing. First, notwithstanding the interest payments that the Tribe receives as an investor in Big Picture, Williams Aff. ¶¶ 8-9, the total distributions to the Tribe under the Note are limited. Consequently, although it might be true in theory that "any reduction in [Big Picture]'s revenue that could result from an adverse judgment against it would therefore reduce the Tribe's income," Breakthrough Mgmt., 629 F.3d at 1195, the actual effect on the Tribe appears to be insubstantial. Second, Big Picture's revenue does not play as important a role in the Tribe's general fund as in other cases where this factor supported immunity. See Breakthrough Mgmt., 629 F.3d at 1195 (tribe "depend[ed] heavily on the [entity]" for funding); Everette, 146 F. Supp. 3d at 724. As noted, Big Picture has not provided an exact breakdown of revenue allocation to different tribal services, so it is impossible to discern how the Tribe would be affected, if at all, if a judgment harmed Big Picture's operations. Third, there is evidence that Big Picture does not comply with its operating agreement's mandatory cash distribution requirement when balances exceed $500. See, e.g., ECF No. 83-24 at MARTORELLO_000218; see also Big Picture Operating Agmt' § 6.2. If Big Picture does not transfer its funds to TED when it

76

-225-

should, then the Tribe likely does not need that money on a timely basis. Given these circumstances, this factor weighs against Big Picture.

Ascension's financial relationship with the Tribe is not very different. By its own admission, Ascension does not generate revenue for itself or for the Tribe, so a judgment against Ascension could not possibly affect the Tribe's revenue directly. However, given that Ascension performs critical services for Big Picture, any judgment that limited Ascension's operations or forced it to close would, by extension, drastically reduce Big Picture's revenue. This potential indirect effect on the Tribe's general fund is important in the financial relationship framework. See Breakthrough Mgmt., 629 F.3d at 1195; Miami Nation, 386 P.3d at 373. Yet, for the reasons detailed above, any reduction in Big Picture's revenue would not be felt strongly by the Tribe itself. Consequently, this factor also weighs against immunity for Ascension.

### 6. Fulfillment of Purposes Underlying Tribal Immunity

The final factor assesses "the policies underlying tribal sovereign immunity and its connection to tribal economic development, and whether those policies are served by granting immunity to the economic entities." Breakthrough Mgmt., 629 F.3d at 1187. "Those policies include protection of the tribe's

77

monies, as well as preservation of tribal cultural autonomy, preservation of tribal self-determination, and promotion of commercial dealings between Indians and non-Indians." Id. at 1188 (internal citations and quotations omitted); cf. Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla., 498 U.S. 505, 510 (1991) (federal statutes affirming tribal immunity "reflect Congress' desire to promote the goal of Indian self-government, including its overriding goal of encouraging tribal self-sufficiency and economic development" (internal quotations omitted)).

At first glance, granting sovereign immunity to Big Picture and Ascension would appear to serve these purposes. As noted, more than 10% of the Tribe's general fund comes from Big Picture's revenue, and that percentage will increase to more than 30% in the next few years. In addition, Hazen has stated that those funds "are used to provide a variety of social services and other benefits for the Tribe." Howard, 2017 WL 3669565, at *4. Even though Ascension does not make any money itself, it necessarily contributes to Big Picture's revenues by providing crucial technical and marketing services. As a result, both entities seem to "promote and fund the Tribe's self-determination through revenue generation and the funding of

78

-227-

diversified economic development." Breakthrough Mgmt., 629 F.3d at 1195; see also Everette, 146 F. Supp. 3d at 725.

However, a closer look reveals that neither Big Picture nor Ascension fulfills those goals very well, if at all. The inadequacies of Hazen's general statements about the Tribe's use of Big Picture's revenues are detailed above. Because the extent to which the Tribe has actually used Big Picture's funds for the services noted by Hazen is unclear, the Court cannot tell whether granting immunity here "directly protects the . . . Tribe's treasury, which is one of the historic purposes of sovereign immunity in general." Allen, 464 F.3d at 1047. Moreover, even assuming that Big Picture's lending operation and Ascension's support have contributed to the Tribe's economic self-development to some extent, those entities' actions have primarily enriched non-tribal entities like Eventide and, possibly, individuals like Martorello. The Bellicose purchase, and the resulting Note and Loan Agreement, have undoubtedly yielded some benefits for the Tribe. Yet, by limiting the Tribe's monthly distribution to a very small percentage of Big Picture's revenue, the Note forces the Tribe to receive those benefits at substantial cost—a reality that is illustrated by the sharp disparity in distributions received by the Tribe and Eventide since TED began repaying the loan.

79

-228-

Consequently, as Plaintiffs note, granting immunity here might have the unintended consequence of preventing the Tribe from obtaining favorable terms in future business transactions, as non-tribal entities would not be inclined to offer repayment above a certain rate. Thus, even if the Tribe is not bound by the Note's distribution structure forever, the example will have been set. Therefore, although Big Picture and Ascension serve the core purposes of tribal immunity to some extent, these circumstances cause this factor to weigh against immunity for both entities.

### C. Weight of Factors

For the reasons discussed above, Big Picture and Ascension have the burden to prove arm-of-the-tribe immunity by a preponderance of the evidence. That means the weighing of factors must permit a finding of immunity. On this record, that balance actually falls the other way, and weighing everything on the balance, the Court finds that neither entity qualifies as an arm of the Tribe. Therefore, Big Picture and Ascension are not immune from suit here.

80

**CONCLUSION**

For the foregoing reasons, DEFENDANTS BIG PICTURE LOANS AND
ASCENSION TECHNOLOGIES' MOTION TO DISMISS FOR LACK OF SUBJECT
MATTER JURISDICTION (ECF No. 22) was denied.

It is so ORDERED.

/s/                _REP_
_____
Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date:  July **27**, 2018

81